**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CENGAGE LEARNING, INC., *et al.*, | ) | Case No. 13-44106 (ESS) |
| | ) | Case No. 13-44105 (ESS) |
| | ) | Case No. 13-44107 (ESS) |
| | ) | Case No. 13-44108 (ESS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

### DEBTORS' JOINT PLAN OF REORGANIZATION
### PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

**Nothing contained herein shall constitute an offer, acceptance, or a legally binding obligation of the Debtors or any other party in interest.  This Plan is subject to approval of the Bankruptcy Court and other customary conditions.  This Plan is not an offer with respect to any securities.  Acceptances or rejections with respect to the Plan may not be solicited until a disclosure statement has been approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.  Such a solicitation will only be made in compliance with applicable provisions of securities and bankruptcy laws.  YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

Jonathan S. Henes
Christopher Marcus
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

James H.M. Sprayregen
Ross M. Kwasteniet (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
300 N. LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

Counsel to the Debtors and Debtors in Possession

    Dated:  August 16, 2013

**TABLE OF CONTENTS**

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,  COMPUTATION OF TIME, AND GOVERNING LAW**................................................................................................................**4**
    A.    Defined Terms ...............................................................................................................4
    B.    Rules of Interpretation ................................................................................................18
    C.    Appendices and Plan Documents................................................................................18
    D.    Computation of Time ..................................................................................................18
    E.    Governing Law ...........................................................................................................18
    F.    Reference to Monetary Figures ...................................................................................18

**ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS**.....................................**19**
    A.    Administrative Claims ................................................................................................19
    B.    Accrued Professional Compensation Claims .............................................................19
    C.    Priority Tax Claims.....................................................................................................20
    D.    U.S. Trustee Statutory Fees.........................................................................................20

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**...........................**20**
    A.    Summary of Classification .........................................................................................20
    B.    Treatment of Claims and Interests .............................................................................21
    C.    Non-Substantive Consolidation .................................................................................31
    D.    Allowance of the First Lien Claims ...........................................................................31
    E.    Confirmation of All Cases ..........................................................................................31
    F.    Special Provision Governing Unimpaired Claims .....................................................31
    G.    Elimination of Vacant Classes ...................................................................................31
    H.    Voting Classes; Presumed Acceptance by Non-Voting Classes .................................32
    I.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .................32

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** .................................................**32**
    A.    Sources of Consideration for Plan Distributions........................................................32
    B.    Exit Revolver Facility ................................................................................................32
    C.    New Debt Facility .......................................................................................................32
    D.    Issuance of New Equity ..............................................................................................33
    E.    New Corporate Governance Documents.....................................................................33
    F.    New Shareholders Agreement.....................................................................................33
    G.    General Settlement of Claims .....................................................................................33
    H.    Section 1145 Exemption .............................................................................................33
    I.    Listing of New Equity; Reporting Obligations ..........................................................33
    J.    Reporting Obligations .................................................................................................34
    K.    Release of Liens..........................................................................................................34
    L.    Cancellation of Securities and Agreements ...............................................................34
    M.    First Lien Credit Facility Existing Letters of Credit. .................................................35
    N.    Restructuring Transactions .........................................................................................35
    O.    Corporate Action.........................................................................................................35
    P.    Effectuating Documents; Further Transactions..........................................................36
    Q.    Exemption from Certain Taxes and Fees ...................................................................36
    R.    Corporate Existence ....................................................................................................36
    S.    Vesting of Assets in the Reorganized Debtors ...........................................................37
    T.    Assumption of Directors and Officers Insurance Policies .........................................37
    U.    Indemnification Provisions in New Corporate Governance Documents......................37
    V.    Directors and Officers of Reorganized Cengage and the Other Reorganized Debtors .................37
    W.    Management Incentive Plan.........................................................................................38
    X.    Preservation of Causes of Action................................................................................38

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...................38
    A.    Assumption of Executory Contracts and Unexpired Leases ...........................................38
    B.    Rejection of Executory Contracts and Unexpired Leases ..............................................38
    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases...................39
    D.    Claims Based on Rejection of Executory Contracts and Unexpired Leases ...................40
    E.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases ..........40
    F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements........................40
    G.    Reservation of Rights......................................................................................................40
    H.    Nonoccurrence of Effective Date....................................................................................40

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** .............................................................41
    A.    Timing and Calculation of Amounts to Be Distributed ................................................41
    B.    Distributions Generally; Disbursing Agent ...................................................................41
    C.    Rights and Powers of Disbursing Agent ........................................................................41
    D.    Distributions on Account of Claims Allowed After the Effective Date.........................41
    E.    Apax Distribution Holdback ...........................................................................................42
    F.    Delivery of Distributions and Undeliverable or Unclaimed Distributions.....................42
    G.    Compliance with Tax Requirements/Allocations...........................................................43
    H.    Claims Paid or Payable by Third Parties .......................................................................43

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
DISPUTED CLAIMS**................................................................................................................................44
    A.    Resolution of Disputed Claims ......................................................................................44
    B.    Disallowance of Claims .................................................................................................45
    C.    Amendments to Claims ..................................................................................................45

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**.....................46
    A.    Discharge of Claims and Termination of Interests; Compromise and Settlement of
        Claims, Interests, and Controversies ..............................................................................46
    B.    Subordinated Claims ......................................................................................................46
    C.    Debtor Release ...............................................................................................................46
    D.    Third-Party Release ........................................................................................................47
    E.    Exculpation ....................................................................................................................48
    F.    Injunction .......................................................................................................................48
    G.    Setoffs ............................................................................................................................48
    H.    Special Provision Governing Accrued Professional Compensation Claims and Final Fee
        Applications ...................................................................................................................48

**ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION & CONSUMMATION OF
THE PLAN** ...............................................................................................................................................49
    A.    Conditions Precedent to Consummation of the Plan......................................................49
    B.    Waiver of Conditions .....................................................................................................49
    C.    Effective Date ................................................................................................................49
    D.    Effect of Non-Occurrence of Conditions to the Effective Date ....................................49

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**.............................50
    A.    Modification and Amendments........................................................................................50
    B.    Effect of Confirmation on Modifications.......................................................................50
    C.    Revocation or Withdrawal of the Plan ...........................................................................50

**ARTICLE XI. RETENTION OF JURISDICTION** .................................................................................50

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ...............................................................................52
    A.    Immediate Binding Effect...............................................................................................52
    B.    Additional Documents ....................................................................................................52
    C.    Payment of Statutory Fees ..............................................................................................52

K&E

D.      Dissolution of the Committee; Post-Effective Date Unsecured Creditor Representatives
        Committee.............................................................................................................................52
E.      Payment of Restructuring Support Agreement Professional Fees...................................53
F.      Reservation of Rights........................................................................................................53
G.      Successors and Assigns.....................................................................................................53
H.      Service of Documents .......................................................................................................53
I.      Term of Injunctions or Stays.............................................................................................54
J.      Entire Agreement ..............................................................................................................54
K.      Severability of Plan Provisions ........................................................................................54

K&E

## INTRODUCTION

Cengage Learning, Inc. and the other Debtors in the above-captioned Chapter 11 Cases respectfully propose the following joint plan for the resolution of outstanding claims against, and interests in, the Debtors (as defined herein) pursuant to the Bankruptcy Code (as defined herein). Holders of claims and interests may refer to the Disclosure Statement (as defined herein) for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, accomplishments during these Chapter 11 Cases (as defined herein), and projections of future operations, as well as a description and summary of the Plan (as defined herein) and certain related matters. The Debtors are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used herein, capitalized terms have the meanings set forth below.

1.    "*Accrued Professional Compensation Claims*" means, at any given moment, all Claims for accrued fees and expenses (including transaction or sale fees) for services rendered by a Professional through and including the Confirmation Date, to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Accrued Professional Compensation Claim.

2.    "*Ad Hoc First Lien Group*" refers to certain parties to the Restructuring Support Agreement, solely in their capacity as Holders of First Lien Claims that are represented by Milbank, Tweed, Hadley & McCloy LLP.

3.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Accrued Professional Compensation Claims (to the extent Allowed by the Bankruptcy Court); (c) all fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code, including but not limited to the U.S. Trustee Fees; and (d) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in these Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

4.    "*Administrative Claims Bar Date*" means the first Business Day that is 30 days following the Effective Date, subject to any exceptions specifically set forth in the Plan or a Final Order which shall serve as the deadline for filing and service of a request for payment of an administrative claim, other than a claim arising under section 503(b)(9) of the Bankruptcy Code, which shall be subject to the Claims Bar Date.

5.    "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

6.    "*Affiliated Lender*" and "*Affiliated Institutional Lender*" shall have the meanings ascribed to such terms in the First Lien Credit Agreement.

7.    "*Allowed*" means with respect to Claims: (a) any Claim, proof of which is timely Filed by the applicable Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a Proof of Claim is not or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided, that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time, as may be extended by the Bankruptcy Court from time to time, fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order. Any Claim that has been or is hereafter

listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable.  "Allow" and "Allowing" shall have correlative meanings.

8.     "*Apax*" means Apax Partners, L.P. and the funds affiliated with Apax Partners, L.P. that indirectly hold Interests in the Debtors, each of their respective co-investment funds and affiliates,  any Person or Entity that has a direct or indirect interest in any of the foregoing Persons or Entities.

9.     "*Apax Director*" means any Director that is a principal of Apax.

10.     "*Avoidance Actions*" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 502, 542, 544, 545, 547, 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

11.     "*Ballot*" means the form of ballot approved by the Bankruptcy Court and distributed to holders of Impaired Claims entitled to vote on the Plan on which is to be indicated the acceptance or rejection of the Plan.

12.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–et seq., as may be amended from time to time.

13.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of New York having jurisdiction over these Chapter 11 Cases, and, to the extent of the withdrawal of any reference under section 157 of the Judicial Code and/or Administrative Order #264 of the District Court, the United States District Court for the Eastern District of New York.

14.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to these Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

15.     "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

16.     "*Cash*" means the legal tender of the United States of America and/or equivalents thereof.

17.     "*Cash Collateral Orders*" means the *Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, and (III) Scheduling a Final Hearing*, entered July 3, 2013 [Docket No. 40], and as may be amended, modified or supplemented by the Bankruptcy Court from time to time and the [*Final Order (I) Authorizing the Use of Cash Collateral and (II) Granting Adequate Protection to Prepetition Secured Parties*,] entered August [ ], 2013 [Docket No. __], and as may be amended, modified, or supplemented by the Bankruptcy Court from time to time.

18.     "*Causes of Action*" means any Claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counter claims, and crossclaims (including, but not limited to, all claims for breach of fiduciary duty, negligence, malpractice, breach of contract, aiding and abetting, fraud, inducement, avoidance, recovery, subordination, and all Avoidance Actions) of any of the Debtors and/or the Estates that are pending or may be asserted against any Person or Entity on or after the date hereof, whether known, unknown, suspected or unsuspected, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured including, but not limited to under the Bankruptcy Code, and whether asserted or assertable directly or derivatively, in contract or in tort, in law, equity or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

19.     "*Cengage Interests*" means Interests in Cengage Learning Holdings II, L.P. (or such entity, as reorganized, that is the first-tier holding company of the assets of the Debtors).

20.     "*Chapter 11 Cases*" means the jointly administered Chapter 11 Cases commenced by the Debtors and styled <u>In re Cengage Learning, Inc., et al.</u>, Chapter 11 Case No. 13-44106 (ESS), which are currently pending before the Bankruptcy Court.

21.     "*Charging Lien*" means any Lien or other priority in payment to which a Prepetition Indenture Trustee is entitled under the terms of a Prepetition Indenture to assert against distributions to be made to Holders of Claims under such Prepetition Indenture.

22.     "*CL Holdco*" means Cengage Learning Holdco, Inc.

23.     "*CL Holdco Interests*" means Interests in CL Holdco.

24.     "*CL Holdings*" means Cengage Learning Holdings II, L.P.

25.     "*CL Holdings Interests*" means Interests in CL Holdings.

26.     "*CLA C.V.*" means Cengage Learning Acquisitions C.V., the Debtors' first-tier non-Debtor foreign subsidiary.

27.     "*CLA C.V. 35% Equity*" means 35% of the Interests (or evidence of such Interests) in CLA C.V.

28.     "*CLAI*" means Cengage Learning Acquisitions, Inc.

29.     "*CLAI Interests*" means Interests in CLAI.

30.     "*Claim*" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

31.     "*Claims Bar Date*" means the date by which a Proof of Claim must be or must have been Filed, as established by (a) the [*Order (I) Setting Bar Dates for Filing Proofs of Claim, (II) Approving Procedures for Filing Proofs of Claim and (III) Approving Notice Thereof*] [Docket No. __] entered on [_____] or (b) a Final Order of the Bankruptcy Court.

32.     "*Claims Objection Bar Date*" means the deadline for objecting to a Claim, which shall be the date that is the later of (a) one year after the Effective Date and (b) such later period of limitation as may be specifically fixed by an order of the Bankruptcy Court for cause shown pursuant to Bankruptcy Rule 9006(b)(1), which may be further extended from time to time, on notice of the motion seeking such order to, among others, all Holders of Disputed Claims as of the date of such motion.

33.     "*Claims Register*" means the official register of Claims maintained by the Notice, Claims, and Solicitation Agent.

34.     "*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

35.     "*CLI*" means Cengage Learning, Inc.

36.     "*CLI Interests*" means Interests in CLI.

37.     "*Committee*" means the official committee of unsecured creditors appointed in these Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code on July 10, 2013 as may be reconstituted from time to time.

38.     "*Committee Members*" means:  (a) Wilmington Trust National Association; (b) Wells Fargo Bank National Association; (c) The Booksource; (d) Benneit Management Corporation; (e) RR Donnelley &

Sons Company; (f) Gary B. Shelly; (g) Carl S. Warren; (h) BOKF, NA d/b/a Bank of Oklahoma; and (i) Central National-Gottesman Inc., each solely in its capacity as a member of the Committee at Confirmation.

39.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Bankruptcy Court in these Chapter 11 Cases.

40.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on its docket in these Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

41.      "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code as such hearing may be adjourned or continued from time to time.

42.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

43.     "*Consummation*" means the occurrence of the Effective Date.

44.     "*Cure Cost*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

45.     "*Debtor Release*" means the release provision set forth in Article VIII.C hereof.

46.     "*Debtors*" means, as applicable: (a) CLI, (b) CL Holdings, (c) CL Holdco, and (d) CLAI.

47.     "*Description of Transaction Steps*" means the description of the Restructuring Transactions as set forth in the Plan Supplement.

48.     "*Director*" means any director of the Debtors or the Debtors' General Partner.

49.     "*Disbursing Agent*" means, on the Effective Date, the Debtors or their agent or any other Entity or Entities designated by the Debtors with the reasonable consent of the Required Consenting Lenders to make or facilitate distributions that are to be made on or after the Effective Date pursuant to the Plan.

50.     "*Disclosure Statement*" means the *Disclosure Statement for the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated August 16, 2013, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

51.     "*Disputed*" means, with respect to any Claim or Interest, any portion (including, when appropriate, the whole) of any Claim or Interest that is not yet Allowed or deemed Allowed pursuant to this Plan.

52.     "*Disputed Cash*" means the amount of Cash of the Debtors, if any, remaining on the Effective Date in the Debtors' investment in the Federated Treasury Obligations Fund, TOIXX Fund No. 68, that has not otherwise been determined by Final Order to be subject to the non-avoidable Liens of the Holders of the First Lien Claims.

53.     "*Disputed Copyrights*" means all copyrights that were registered by the Debtors with the United States Copyright Office prior to the Petition Date and (a) with respect to which copyrights no recording was made with the United States Copyright Office for the benefit of Holders of either the First Lien Claims or the Second Lien Claims or, (b) if they were recorded with the United States Copyright Office for the benefit of the Holders of either the First Lien Claims or the Second Lien Claims, they were recorded within the 90 days prior to the Petition Date, that has not otherwise been determined by Final Order to be subject to the non-avoidable Liens of the Holders of the First Lien Claims.

54.     "*Distribution Record Date*" means the date for determining which Holders of Allowed Claims or Interests, other than Holders of Claims or Interests related to public securities, are eligible to receive distributions hereunder, which shall be (a) the Confirmation Date or (b) such other date as designated in a Bankruptcy Court order.  Distributions to Holders of Claims or Interests related to public securities shall be made to such Holders in exchange for such securities, subject to the terms and conditions of this Plan, which shall be deemed cancelled as of the Effective Date.

55.     "*D&O Liability Insurance Policies*" means all insurance policies of any of the Debtors for directors', managers', and officers' liability.

56.     "*Effective Date*" means the date selected by the Debtors that is a Business Day after the Confirmation Date on which:  (a) no stay of the Confirmation Order is in effect; and (b) all conditions precedent specified in Article IX.A hereof have been satisfied or waived (in accordance with Article IX.B hereof).

57.     "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

58.     "*Equity Term Sheet*" means that certain Cengage Learning — Equity Term Sheet attached as **Exhibit D** to the Restructuring Support Agreement.

59.     "*Estate*" means, as to each Debtor, the estate created for the Debtor on the Petition Date pursuant to section 541 of the Bankruptcy Code.

60.     "*Excess Cash*" means any Cash other than the Disputed Cash remaining on any of the Debtors' balance sheets as of the Effective Date after funding all payments and reserves required under the Plan, less $50 million (subject to certain working capital adjustments to be agreed to by the Debtors and the Required Consenting Lenders and described in the Disclosure Statement or Plan Supplement).

61.     "*Exculpated Parties*" means (a) each Debtor and Reorganized Debtor; (b) the Debtors' current Directors (other than the Apax Directors); (c) the Debtors' current officers; (d) each Holder of a First Lien Claim; (e) the First Lien Credit Facility Agents; (f) the First Lien Notes Indenture Trustee; (g) the Committee; (h) the Committee Members; (i) the Exit Revolver Facility Agent; (j) the Exit Revolver Facility Arrangers; (k) the lenders under the Exit Revolver Facility; (l) the New Debt Facility Agent; (m) the New Debt Facility Arrangers; (n) the lenders under the New Debt Facility; and (o) each of the foregoing entities' respective successors and assigns, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, in each case in their capacity as such.  For the avoidance of doubt, none of Apax, any Apax Director, any Affiliated Lenders, or any Affiliated Institutional Lenders shall be an Exculpated Party.[1]

62.     "*Exculpation*" means the exculpation provision set forth in Article VIII.E hereof.

63.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

64.     "*Exit Revolver Facility*" means that new revolving credit facility in the amount of $[__] to be entered into by the Debtors pursuant to the Exit Revolver Facility Agreement, including any Exit Revolver Facility Documents, each of which shall be in form and substance acceptable to the Debtors, the Exit Revolver Facility Agent, the Exit Revolver Facility Arrangers, and the lenders and the Required Consenting Lenders and shall be on terms consistent with the Restructuring Support Agreement and RSA Term Sheets in all respects and otherwise acceptable to the Required Consenting Lenders.

65.     "*Exit Revolver Facility Agent*" means the administrative agent under the Exit Revolver Facility, or any successor thereto.

66.     "*Exit Revolver Facility Agreement*" means those certain credit agreements effectuating the Exit Revolver Facility to be entered into as of and subject to the occurrence of the Effective Date, by and among certain of the Reorganized Debtors, as borrowers, the Exit Revolver Facility Agent, the lenders named therein,

---

[1]     Nothing in this Plan is intended to prejudge issues related to whether the Debtors or other parties possess potential claims, against Apax, imply the actual existence of any such claims, or prejudge the ultimate resolution of any such potential claims as the Debtors remain in the process of completing their investigation of such potential claims.

and the other parties thereto, as amended, supplemented or otherwise modified from time to time, which shall be in form and substance consistent with the Restructuring Support Agreement and RSA Term Sheets in all respects and otherwise acceptable to the Required Consenting Lenders.

67.  "*Exit Revolver Facility Arrangers*" means the joint lead arrangers of the Exit Revolver Facility.

68.  "*Exit Revolver Facility Documents*" means the Exit Revolver Facility Agreement and, collectively, all related agreements, documents, or instruments to be executed or delivered in connection with the Exit Revolver Facility, the forms of which shall be included as an exhibit to the Plan Supplement and which shall be in form and substance consistent with the Restructuring Support Agreement and RSA Term Sheets in all respects and otherwise acceptable to the Required Consenting Lenders.

69.  "*Extended Revolver*" means the approximately $293.2 million in obligations under the revolving credit facility maturing April 10, 2017 issued under the First Lien Credit Facility Agreement.

70.  "*Extended Term Loan*" means the approximately $1,292.8 million in obligations under the term loan facility maturing July 5, 2017 issued under the First Lien Credit Facility Agreement.

71.  "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in these Chapter 11 Cases with the Bankruptcy Court, or other court of competent jurisdiction, or, with respect to the filing of a Proof of Claim or proof of Interest, the Notice, Claims, and Solicitation Agent.

72.  "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter which has not been reversed, stayed, modified, or amended, as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; *provided*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

73.  "*First Lien Claim*" means any First Lien Credit Facility Claim, First Lien Notes Claim, or First Lien Swap Claim.

74.  "*First Lien Secured Claim Distribution*" means (a) 100% of the New Equity less any amount of New Equity that is part of the Unsecured CLAI Recovery or Unsecured CLI Recovery (and subject to dilution for the Management Incentive Plan), (b) the New Debt Facility Consideration, (c) the Excess Cash.

75.  "*First Lien Credit Facility*" means that certain credit facility, including a letter of credit facility, entered into pursuant to the First Lien Facility Credit Agreement.

76.  "*First Lien Credit Facility Administrative Agent*" means JPMorgan Chase Bank, N.A., in its capacity as, successor administrative agent and successor collateral agent under the First Lien Credit Facility.

77.  "*First Lien Credit Facility Agents*" means, collectively, (a) the First Lien Credit Facility Administrative Agent, (b) Citigroup Global Markets Inc., UBS Securities LLC, and Mizuho Corporate Bank, Ltd., each in its capacity as documentation agent under the First Lien Credit Facility, (c) JPMorgan Chase Bank, N.A., in its capacity as syndication agent under the First Lien Credit Facility, (d) J.P. Morgan Securities Inc., Citigroup Global Markets Inc., and UBS Securities LLC, each in its capacity as joint lead arranger and bookrunner under the First Lien Credit Facility and (e) J.P. Morgan Securities LLC, in its capacity as amendment agreement lead arranger.

78.  "*First Lien Credit Facility Agreement*" means that certain credit agreement, dated as of July 5, 2007, as amended by the Incremental Amendment, dated as of May 30, 2008, and the Amendment Agreement, dated as of April 10, 2012, by and among certain of the Debtors, JPMorgan Chase Bank, N.A., as administrative agent, and the other lenders party thereto.

9

K&E

79.     "*First Lien Credit Facility Claim*" means any Claim against any Debtor arising under or related to the First Lien Credit Facility or the First Lien Credit Facility Documents, including all accrued and unpaid interest, fees, costs, expenses, indemnities, and other charges thereunder.

80.     "*First Lien Credit Facility Documents*" means the First Lien Credit Facility Agreement and each of the other documents, agreements, and instruments (including, without limitation, all collateral documents) executed and delivered from time to time in connection with the First Lien Credit Facility.

81.     "*First Lien Credit Facility Existing Letters of Credit*" means all outstanding and undrawn letters of credit under the First Lien Credit Facility.

82.     "*First Lien Credit Facility Issuing Bank*" means JPMorgan Chase Bank, N.A., in its capacity as an issuer of letters of credit under the First Lien Credit Facility, and any affiliate thereof that issued any letter of credit under the First Lien Credit Facility.

83.     "*First Lien Credit Facility Lenders*" means collectively, the lenders under the First Lien Credit Facility, including those lenders party to the Unextended Revolver, Extended Revolver, Unextended Term Loan, Incremental Term Loan, and Extended Term Loan.

84.     "*First Lien Deficiency Claim*" means any First Lien Claim or portion thereof that is not an Allowed First Lien Secured Claim.

85.     "*First Lien Documents*" means (a) the First Lien Credit Facility Documents, (b) the First Lien Notes Documents, and (c) the First Lien Swap Documents.

86.     "*First Lien Indenture*" means that certain indenture, dated as of April 10, 2012, by and among CLAI, the guarantors party thereto, and the First Lien Indenture Trustee, providing for the issuance of 11.50% senior secured notes due 2020.

87.     "*First Lien Indenture Trustee*" means The Bank of New York Mellon, in its capacity as trustee under the First Lien Indenture.

88.     "*First Lien Notes*" means those certain notes issued pursuant to the First Lien Notes Indenture.

89.     "*First Lien Notes Claim*" means any claim against any Debtor arising under or related to the First Lien Notes or First Lien Indenture, including all accrued and unpaid interest, fees, costs, expenses, indemnities, and other charges thereunder.

90.     "*First Lien Notes Documents*" means the First Lien Notes Indenture and each of the other documents, agreements, and instruments (including, without limitation, all collateral documents) executed and delivered from time to time in connection with the First Lien Notes.

91.     "*First Lien Secured Claim*" means any First Lien Claim that is Secured.

92.     "*First Lien Swap Claim*" means any claim against any Debtor arising under or related to the First Lien Swaps.

93.     "*First Lien Swap Documents*" means:  (a) that certain confirmation of the swap transaction between CLAI and Citibank N.A., dated as of April 21, 2010; (b) that certain confirmation of the swap transaction between CLAI and Goldman Sachs Bank USA, dated as of April 16, 2010; (c) that certain confirmation of the swap transaction between CLAI and UBS AG, London Branch, dated as of March 5, 2010; (d) that certain confirmation of the swap transaction between CLAI and The Royal Bank of Scotland plc, dated as of March 1, 2010; (e) that certain confirmation of the swap transaction between CLAI and UBS AG, London Branch, dated as of February 17, 2010; and (f) that certain confirmation of the swap transaction between CLAI and Morgan Stanley Capital Services Inc., dated as of March 19, 2010, and, in each case, all ancillary documents and schedules related thereto.

94.     "*First Lien Swaps*" means those certain swap transactions entered into by certain of the Debtors, the terms of which are set forth in the First Lien Swap Documents.

95.     "*General Unsecured Claim*" means a Claim against the specified entity that is not Secured and that is not:  (a) a Superpriority Claim; (b) an Administrative Claim; (c) a Priority Tax Claim; (d) an Other Priority Claim; (e) a First Lien Deficiency Claim; (f) a Second Lien Claim; (g) a Senior Notes Claim; (h) a PIK Notes Claim; (i) a Subordinated Notes Claim; or (j) a Section 510(b) Claim.  For the avoidance of doubt, General Unsecured Claims shall include any claims of any Debtor against another Debtor or any non-Debtor subsidiary against any Debtor.

96.     "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

97.     "*Holder*" means any Entity holding a Claim or an Interest.

98.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

99.     "*Incremental Term Loan*" means the approximately $549.5 million in obligations under the term loan facility maturing July 5, 2014 issued under the First Lien Credit Facility Agreement.

100.    "*Indemnification Provision*" means each of the Debtors' indemnification provisions currently in place whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, or contracts.

101.    "*Initial Distribution Date*" means the Effective Date or as soon as practicable thereafter.

102.    "*Intercompany Interests*" means, collectively, the CL Holdco Interests, the CLAI Interests, and the CLI Interests.

103.    "*Interests*" means the common stock, limited partnership interests, limited liability company interests, and any other equity, ownership, or profits interests issued by any Debtor and options, warrants, rights, or other securities or agreements to acquire the common stock, limited partnership interests, limited liability company interests, or other equity, ownership, or profits interests issued by any Debtor (whether or not arising under or in connection with any employment agreement).

104.    "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 285], entered on August 15, 2013, as the same may be modified by a Bankruptcy Court order approving the retention of a specific Professional or otherwise.

105.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

106.    "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

107.    "*Management Incentive Plan*" means that certain post-Effective Date management equity incentive plan, which is attached hereto as Exhibit A; provided that any changes to such plan shall require the consent of the Debtors, the Debtors' management, and the Required Consenting Lenders.

108.    "*New Board*" means the board of directors, board of managers or equivalent governing body of each of the Reorganized Debtors, as applicable, as initially comprised, which shall be consistent with the Restructuring Support Agreement and RSA Term Sheets in all respects and as comprised thereafter in accordance with the terms of the applicable New Corporate Governance Documents.

109.    "*New Bylaws*" means the bylaws, limited liability company agreement, or functionally equivalent document, as applicable, of the Reorganized Debtors, the form of which shall be included in the Plan Supplement, in form and substance consistent with the Restructuring Support Agreement and RSA Term Sheets in all respects and otherwise acceptable to the Required Consenting Lenders.

110.    "*New Certificates of Incorporation*" means the certificates of incorporation, certificate of formation, or functionally equivalent document, as applicable, of each of the Reorganized Debtors, the form of which shall be included in the Plan Supplement, in form and substance consistent with the Restructuring

11

K&E

Support Agreement and RSA Term Sheets in all respects and otherwise acceptable to the Required Consenting Lenders.

111.    "*New Corporate Governance Documents*" means, as applicable, (a) the New Certificates of Incorporation, (b) the New Bylaws, and (c) the New Shareholders Agreement, in each case, substantially in the form set forth as an exhibit to the Plan Supplement.

112.    "*New Debt Alternative Facility*" means, if the Reorganized Debtors do not enter into the New Debt Rollover Facility, a term loan facility in the amount of $[1,500 - $1,750] million to be entered into by the Reorganized Debtors as of and subject to the occurrence of the Effective Date in form and substance consistent with the Restructuring Support Agreement and RSA Term Sheets in all respects and otherwise acceptable to the Required Consenting Lenders.

113.    "*New Debt Alternative Facility Documents*" means, collectively, all related agreements, documents, or instruments to be executed or delivered in connection with the New Debt Alternative Facility, the form of which shall be included as an exhibit to the Plan Supplement and shall be in form and substance consistent with the Restructuring Support Agreement and RSA Term Sheets in all respects and otherwise acceptable to the Required Consenting Lenders, and in each case, the material terms of which shall be as set forth in an exhibit to the Plan Supplement.

114.    "*New Debt Facility*" means the New Debt Rollover Facility or the New Debt Alternative Facility, as applicable.

115.    "*New Debt Facility Agent*" means the administrative agent under the New Debt Facility, or any successor thereto.

116.    "*New Debt Facility Agreement*" means that certain credit agreement effectuating the New Debt Facility to be entered into as of and subject to the occurrence of the Effective Date, by and among certain of the Reorganized Debtors, as borrowers, the New Debt Facility Agent, the lenders named therein, and the other parties thereto, as amended, supplemented or otherwise modified from time to time and shall be in form and substance consistent with the Restructuring Support Agreement and RSA Term Sheets.

117.    "*New Debt Facility Consideration*" means the New Debt Rollover Facility or cash received from the Reorganized Debtors' entry, on the Effective Date, into the New Debt Alternative Facility.

118.    "*New Debt Facility Documents*" means the New Debt Alternative Facility Documents or the New Debt Rollover Facility Documents, as applicable.

119.    "*New Debt Rollover Facility*" means, if the Reorganized Debtors do not enter into the New Debt Alternative Facility, a term loan facility in the amount of $1,500 million to be entered into by the Reorganized Debtors as of and subject to the occurrence of the Effective Date in form and substance consistent with the Restructuring Support Agreement and RSA Term Sheets in all respects and otherwise acceptable to the Required Consenting Lenders.

120.    "*New Debt Rollover Facility Documents*" means, collectively, all related agreements, documents, or instruments to be executed or delivered in connection with the New Debt Rollover Facility, the material terms of which shall be included as an exhibit to the Plan Supplement and shall be in form and substance consistent with the Restructuring Support Agreement and RSA Term Sheets in all respects and otherwise acceptable to the Required Consenting Lenders.

121.    "*New Equity*" means the common stock, limited partnership interests, or limited liability company interests, as applicable, of Reorganized Cengage.

122.    "*New Shareholders Agreement*" means the shareholders agreement (or functionally equivalent document, as applicable) of the Reorganized Debtors with respect to the New Equity to be effective on the Effective Date, and binding on all Holders of New Equity, in form and substance consistent with the Restructuring Support Agreement and RSA Term Sheets in all respects and otherwise acceptable to the Required Consenting Lenders.

K&E

123.    "*Non-Wholly Owned Subsidiaries Interests*" means the Interests owned by CLI in The Hampton Brown Company LLC and CourseSmart LLC.

124.    "*Notice, Claims, and Solicitation Agent*" means Donlin, Recano & Company, Inc., in its capacity as notice, claims, and solicitation agent for the Debtors.

125.    "*Other Priority Claim*" means any Claim against any Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than (a) a Superpriority Claim, (b) an Administrative Claim, or (c) a Priority Tax Claim.

126.    "*Other Secured Claim*" means any Secured Claim against any Debtor that is not a First Lien Claim or a Secured Tax Claim.

127.    "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

128.    "*Petition Date*" means July 2, 2013, the date on which the Debtors filed their petitions for relief commencing these Chapter 11 Cases.

129.    "*PIK Notes*" means those certain 13.75% Senior PIK Notes due 2015 issued under the PIK Notes Indenture.

130.    "*PIK Notes Claim*" means any Claim against any Debtor arising from or based upon the PIK Notes or the PIK Notes Indenture, including all accrued and unpaid interest, fees, costs, expenses, indemnities, and other charges thereunder.

131.    "*PIK Notes Indenture*" means that certain indenture dated October 31, 2008, by and among CL Holdco, CL Holdings, as guarantor, and Wells Fargo Bank National Association, as trustee, providing for the issuance of 13.75% Senior PIK Notes due 2015.

132.    "*PIK Notes Indenture Trustee*" means Wells Fargo Bank National Association, in its capacity as trustee under the PIK Notes Indenture.

133.    "*Plan*" means this *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, as amended, supplemented, or modified from time to time, including the Plan Supplement, which is incorporated herein by reference and made part of the Plan as if set forth herein.

134.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, all materially consistent with the Restructuring Support Agreement, the Restructuring Term Sheet, and the Equity Term Sheet, to be Filed 10 days prior to the Voting Deadline, or as soon as reasonably practicable thereafter but in no event later than five days prior to the Confirmation Hearing, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, including: (a) the identity of the members of the New Board and the nature and compensation for any member of the New Board who is an "insider" under section 101(31) of the Bankruptcy Code; (b) the Schedule of Assumed Executory Contracts and Unexpired Leases; (c) the Schedule of Rejected Executory Contracts and Unexpired Leases; (d) the form of the Exit Revolver Facility Documents; (e) the form of the New Debt Facility Documents; (f) the applicable New Corporate Governance Documents; (g) a list of retained Causes of Action; (h) the management employment agreements, as amended; (i) the Management Incentive Plan; (j) the Trust Documents (if applicable); and (k) the Description of Transaction Steps.

135.    "*Post-Effective Date Unsecured Creditor Representatives Committee*" means the committee of representatives of unsecured creditors subject to the jurisdiction of the Bankruptcy Court and formed on the Effective Date for the limited purposes set forth in Article XII.D herein.

136.    "*Prepetition Indentures*" means, collectively, the First Lien Indenture, the Second Lien Indenture, the Senior Notes Indenture, the PIK Notes Indenture, and the Subordinated Notes Indenture.

137.    "*Prepetition Indenture Trustees*" means, collectively, the First Lien Indenture Trustee, the Second Lien Indenture Trustee, the Senior Notes Indenture Trustee, the PIK Notes Indenture Trustee, and the Subordinated Notes Indenture Trustee.

K&E

138. "*Prepetition Notes*" means, collectively, the First Lien Notes, the Second Lien Notes, the Senior Notes, the PIK Notes, and the Subordinated Notes.

139. "*Priority Tax Claim*" means any Claim of a Governmental Unit against a Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

140. "*Pro Rata*" means the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion to the aggregate amount that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

141. "*Professional*" means an Entity:  (a) retained in these Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code; excluding those Entities entitled to compensation for services rendered after the Petition Date in the ordinary course of business pursuant to the *Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business*, entered August 15, 2013 [Docket No. 284], as may be amended, modified, or supplemented by the Bankruptcy Court from time to time.

142. "*Professional Fee Escrow Account*" means an interest-bearing account to hold and maintain an amount of Cash equal to the Professional Fee Reserve Amount funded by the Debtors on the Effective Date solely for the purpose of paying all Allowed and unpaid Accrued Professional Compensation Claims.

143. "*Professional Fee Reserve Amount*" means the aggregate Accrued Professional Compensation Claims through the Effective Date as estimated in accordance with Article II.B.3 hereof.

144. "*Proof of Claim*" means a proof of Claim, including on account of any Claim arising under section 503(b)(9) of the Bankruptcy Code, Filed against any of the Debtors in these Chapter 11 Cases.

145. ["*Purchaser*" means each limited liability company to be formed or caused to be formed by the Debtors that purchases and is vested with all the assets (other than the Retained Assets) of the Debtors pursuant to the Plan.]

146. "*Qualified Public Offering*" means a Qualified Public Offering as such term is defined in the Restructuring Support Agreement.

147. "*Reinstated*" means: (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or Interest so as to leave such Claim or Interest not Impaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default:  (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim or Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensating the Holder of such Claim or Interest (other than the Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim or Interest entitles the Holder.

148. "*Releasee*" means, collectively, in each case in their capacity as such:  (a) each Debtor and Reorganized Debtor; (b) the Debtors' current Directors (other than the Apax Directors); (c) the Debtors' current officers who will serve in such capacity on and after the Effective Date; (d) the First Lien Credit Facility Agents; (e) the First Lien Notes Indenture Trustee; (f) each Holder of a First Lien Claim; (g) the Committee; (h) the Exit Revolver Facility Agent; (i) the Exit Revolver Facility Arrangers; (j) the lenders under the Exit Revolver Facility; (k) the New Debt Facility Agent; (l) the New Debt Facility Arrangers; (m) the lenders under the New Debt Facility; and (n) each of the foregoing entities' respective predecessors, successors and assigns, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, in each case in their

14

capacity as such.  For the avoidance of doubt, none of Apax, any Apax Director, any Affiliated Lenders, or any Affiliated Institutional Lenders shall be a Releasee.

149.    "*Releasing Parties*" means, collectively:  (a) the Debtors; (b) the Debtors' current Directors (other than the Apax Directors) and officers; (c) the Committee; and (d) all Holders of Claims and Interests who submit a Ballot and elect to opt in to the Third-Party Release on their Ballot by marking the appropriate box on the Ballot.

150.    "*Reorganized Debtors*" means each of the Debtors, on or after the Effective Date, as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation, or otherwise.

151.    "*Reorganized Cengage*" means either (a) CL Holdings as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation, or otherwise or (b) a new corporation or limited liability company that may be formed or caused to be formed by the Debtors to, among other things, directly or indirectly acquire substantially all of the assets and/or stock of the Debtors and issue the New Equity to be distributed or sold pursuant to the Plan as determined by the Debtors with the consent of the Required Consenting Lenders.

152.    "*Required Consenting Lenders*" has the meaning set forth in the Restructuring Support Agreement.

153.    "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement dated as of July 2, 2013, and all exhibits attached thereto, including the RSA Term Sheets, by and between the Debtors and certain Holders of First Lien Claims, and as otherwise amended, supplemented, or otherwise modified from time to time.

154.    "*Restructuring Term Sheet*" means that certain Cengage Learning Holdings II, L.P., et al. Restructuring Term Sheet, dated July 2, 2013, attached as **Exhibit A** to the Restructuring Support Agreement.

155.    "*Restructuring Transactions*" means one or more transactions pursuant to section 1123(a)(5)(D) of the Bankruptcy Code to occur on the Effective Date or as soon as reasonably practicable thereafter, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, subject to the consent of the Required Consenting Lenders, including (a) the execution and delivery of appropriate agreements or other documents of merger, sale, consolidation, equity issuance, certificates of incorporation, operating agreements, bylaws, or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of sale, equity issuance, transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (c) if implemented pursuant to the Plan, all transactions necessary to provide for the purchase of substantially all of the assets or Interests of any of the Debtors, which purchase may be structured as a taxable transaction for United States federal income tax purposes; and (d) all other actions that the Debtors determine are necessary or appropriate.

156.    "*Retained Assets*" shall have the meaning ascribed to such term in the Description of Transaction Steps.

157.    "*Rollover Facility Term Sheet*" means that certain Senior Secured Rollover Exit Term Loan Facility Summary of Proposed Terms and Conditions attached to the Restructuring Support Agreements as **Exhibit B**.

158.    "*RSA Term Sheets*" means the Restructuring Term Sheet, the Rollover Facility Term Sheet, and the Equity Term Sheet, collectively.

159.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule of certain Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, including any Cure Costs related thereto, in the form filed as part of the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

160.    "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule of certain Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan in the form

K&E

filed as part of the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

161.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

162.    "*Second Lien Notes*" means those certain 12.00% Senior Secured Second Lien Notes due 2019 issued under the Second Lien Indenture.

163.    "*Second Lien Claim*" means any Claim against any Debtor arising from or based upon the Second Lien Notes or the Second Lien Indenture, including all accrued and unpaid interest, fees, costs, expenses, indemnities, and other charges thereunder.

164.    "*Second Lien Documents*" means the Second Lien Indenture and each of the other documents, agreements, and instruments (including, without limitation, all collateral documents) executed and delivered from time to time in connection with the Second Lien Notes.

165.    "*Second Lien Indenture*" means that certain indenture dated July 5, 2012, by and among CLAI, the guarantors party thereto, and The Bank of New York Mellon, as trustee and collateral agent, providing for the issuance of 12.00% Senior Secured Second Lien Notes due 2019.

166.    "*Second Lien Indenture Trustee*" means CSC Trust Company of Delaware, in its capacity as successor trustee under the Second Lien Indenture.

167.    "*Second Lien Intercreditor Agreement*" means that certain Second Lien Intercreditor Agreement, dated as of July 5, 2012.

168.    "*Section 510(b) Claims*" means any Claim against any Debtor arising from rescission of a purchase or sale of a security of any Debtor or an Affiliate of any Debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

169.    "*Secured*" means when referring to a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

170.    "*Secured Tax Claims*" means any Secured Claim against any Debtor that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

171.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, or any similar federal, state or local law.

172.    "*Securities Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78nn, as amended.

173.    "*Senior Notes*" means those certain 10.50% Senior Notes due 2015 issued under the Senior Notes Indenture.

174.    "*Senior Notes Claim*" means any Claim against any Debtor arising from or based upon the Senior Notes or the Senior Notes Indenture, including all accrued and unpaid interest, fees, costs, expenses, indemnities, and other charges thereunder.

K&E

175.    "*Senior Notes Indenture*" means that certain indenture dated July 5, 2007, by and among TL Acquisitions, Inc., the guarantors party thereto, and The Bank of New York Mellon, as trustee, providing for the issuance of 10.50% Senior Notes due 2015.

176.    "*Senior Notes Indenture Trustee*" means Wilmington Trust Company, in its capacity as successor trustee under the Senior Notes Indenture.

177.    "*Subordinated Notes*" means those certain 13.25% Senior Subordinated Discount Notes due 2015, issued under the Subordinated Notes Indenture.

178.    "*Subordinated Notes Claim*" means any Claim against any Debtor arising from or based upon the Subordinated Notes or the Subordinated Notes Indenture, including all accrued and unpaid interest, fees, costs, expenses, indemnities, and other charges thereunder.

179.    "*Subordinated Notes Indenture*" means that certain indenture dated July 5, 2007, by and among TL Acquisitions, Inc., the guarantors party thereto, and The Bank of New York Mellon, as trustee, providing for the issuances of 13.25% Senior Subordinated Discount Notes due 2015.

180.    "*Subordinated Notes Indenture Trustee*" means Wilmington Trust N.A. in its capacity as successor trustee under the Subordinated Notes Indenture.

181.    "*Superpriority Claim*" means a Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code with priority over any and all Administrative Claims against the Debtors, including amounts owing pursuant to the Cash Collateral Orders.

182.    "*Third-Party Release*" means the release provision set forth in Article VIII.D hereof.

183.    "*Trust*" means a trust(s) that may be established on the Effective Date for the purpose of implementing the provisions of the Plan, which, if established, shall be subject to the Trust Documents.

184.    "*Trust Documents*" means, if and to the extent a trust(s) is established for the purpose of implementing the provisions of the Plan, the documents and agreements that set forth the terms and conditions of administering such trust(s), which documents and agreements shall be set forth in the Plan Supplement.

185.    "*Unsecured CLAI Recovery*" means the distribution under the Plan to be provided to Holders of Unsecured Claims against CLAI on account of that portion of the Disputed Cash determined by Final Order to be unencumbered and the CLA C.V 35% Equity, which shall be in the form of either: (a) Cash and/or New Equity in an amount to be determined by the Bankruptcy Court, which will be distributed on the Effective Date or adequately reserved for pursuant to a Final Order of the Bankruptcy Court or (b) interests in a Trust established on the Effective Date holding (i) Cash and/or New Equity in an amount to be determined by the Bankruptcy Court or (ii) the CLA C.V. 35% Equity and Disputed Cash.

186.    "*Unsecured CLI Recovery*" means the distribution under the Plan to be provided to Holders of Unsecured Claims against CLI on account of that portion of the Disputed Copyrights determined by Final Order to be unencumbered and the Non-Wholly Owned Subsidiaries, which shall be in the form of either: (a) Cash and/or New Equity in an amount to be determined by the Bankruptcy Court, which will be distributed on the Effective Date or adequately reserved for pursuant to a Final Order of the Bankruptcy Court or (b) interests in a Trust established on the Effective Date holding (i) Cash and/or New Equity in an amount to be determined by the Bankruptcy Court or (ii) the Disputed Copyrights and the Non-Wholly Owned Subsidiaries.

187.    "*Unsecured Claims*" means the First Lien Deficiency Claims, the Second Lien Claims, the Senior Notes Claims, the Subordinated Notes Claims, and the General Unsecured Claims.

188.    "*U.S. Trustee*" means the United States Trustee for the Southern District of New York.

189.    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

190.    "*Unexpired Lease*" means an unexpired lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

191.    "*Unextended Revolver*" means the approximately $222.5 million in obligations under the revolving credit facility matured July 5, 2013 issued under the First Lien Credit Facility Agreement.

192.    "*Unextended Term Loan*" means the approximately $1,522.7 million in obligations under the term loan facility maturing July 5, 2014 issued under the First Lien Credit Facility Agreement.

193.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

194.    "*Voting Deadline*" means 4:00 p.m., prevailing Eastern Time, on **[DATE]**.

195.    "*Voting Record Date*" means **[TIME]**, prevailing Eastern Time, on **[DATE]**.

B.    *Rules of Interpretation*

For purposes herein:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the terms hereof; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.    *Appendices and Plan Documents*

The Plan Supplement and any exhibits, appendices, supplements, annexes to the Plan or any Plan Supplement document are incorporated into the Plan by reference and are a part of the Plan as if set forth herein.

D.    *Computation of Time*

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

E.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York, without giving effect to the principles of conflict of laws (except for Sections 5-1401 and 5-1402 of the General Obligations Law of the State of New York), shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); <u>provided</u>, that corporate or limited liability company governance matters relating to the Debtors or the Reorganized Debtors shall be governed by the laws of the state of incorporation or formation (if applicable) of the applicable Debtor or applicable Reorganized Debtor.

F.    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

18

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

A.    *Administrative Claims*

Unless the Holder of an Allowed Administrative Claim agrees to less-favorable treatment, each Holder of an Allowed Administrative Claim (other than of an Accrued Professional Compensation Claim), will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim:  (1) on the Effective Date or as soon as practicable thereafter, or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter;  (2) if the Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order of the Bankruptcy Court Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; (3) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims; (4) at such other time that is agreed to by the Debtors and the Holders of such Allowed Administrative Claim; or (5) at such other time and on such other terms set forth by an order of the Bankruptcy Court.

Except for Claims arising pursuant to section 503(b)(9) of the Bankruptcy Code, Claims of Professionals and Claims of Governmental Units, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtors no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Confirmation Date.  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the Debtors and the requesting party by the later of (a) 180 days after the Effective Date and (b) 180 days after the Filing of the applicable request for payment of Administrative Claims, if applicable, in each case, unless otherwise extended by the Bankruptcy Court, at the request of the Reorganized Debtors.

Any requests for payment of Administrative Claims that are not properly Filed and served by the Administrative Claims Bar Date shall not appear on the Claims Register and shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors or any action by the Bankruptcy Court.

B.    *Accrued Professional Compensation Claims*

1.    <u>Final Fee Applications</u>

All final requests for payment of Claims of a Professional shall be filed no later than 45 days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by the Bankruptcy Court.

2.    <u>Professional Fee Escrow Account</u>

In accordance with Article II.B.3 hereof, on the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount for all Professionals.  The Professional Fee Escrow Account shall be maintained in trust for the Professionals.  Such funds shall not be considered property of the Debtors' Estates or of the Reorganized Debtors.  The amount of Accrued Professional Compensation Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by a Final Order.  When all Allowed Professional Compensation Claims are paid in full in Cash, amounts remaining in the Professional Fee Escrow Account, if any, shall revert to the Debtors for distribution in accordance with the Plan.

3.    <u>Professional Fee Reserve Amount</u>

19

K&E

To receive payment for unbilled fees and expenses incurred through the Effective Date, the Professionals shall estimate their Accrued Professional Compensation Claims prior to and as of the Confirmation Date, along with an estimate of fees and expenses to be incurred through the Effective Date, and shall deliver such estimate to the Debtors, counsel to the Ad Hoc First Lien Group, counsel to the First Lien Credit Facility Administrative Agent and counsel to the Committee no later than five days prior to the anticipated Confirmation Date; provided, that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional or otherwise binding on such Professional. If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional. The total amount so estimated as of the Confirmation Date shall comprise the Professional Fee Reserve Amount.

4.      Post-Effective Date Fees and Expenses

Without limiting Sections XIII(D) and (E) of the Plan, on and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, Professional (with the exception of Professionals retained by or on the behalf of the Committee), or other fees and expenses related to implementation and Consummation of the Plan incurred by the Debtors on or after the Effective Date. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      *Priority Tax Claims*

Unless the Holder of an Allowed Priority Tax Claim agrees to less-favorable treatment, each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, on the Initial Distribution Date, at the option of the Debtors, one of the following treatments: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an aggregate amount of such Allowed Priority Tax Claim plus, to the extent provided for by section 511 of the Bankruptcy Code, interest at the rate determined under applicable non-bankruptcy law, payable in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; or (3) such other treatment as may be agreed upon by such Holder and the Debtors or otherwise determined upon an order of the Bankruptcy Court. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

D.      *U.S. Trustee Statutory Fees*

The Debtors shall pay all U.S. Trustee Fees for each quarter (including any fraction thereof) until these Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in this Article III.

A.      *Summary of Classification*

All Claims and Interests, other than Administrative Claims (including Accrued Professional Compensation Claims) and Priority Tax Claims, are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

K&E

1.      Class Identification

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as set forth below.  The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.  All of the potential Classes for the Debtors are set forth herein.  For all purposes under the Plan, Class 1 and Class 2 will contain sub-Classes for each of the Debtors (*i.e.*, there will be four sub-Classes in each of Class 1 and Class 2, certain of which may be vacant).  Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article III.G hereof.

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3 | First Lien Secured Claims against CL Holdings | Impaired | Entitled to Vote |
| 4 | First Lien Deficiency Claims against CL Holdings | Impaired | Deemed to Reject |
| 5 | Second Lien Claims against CL Holdings | Impaired | Deemed to Reject |
| 6 | Senior Notes Claims against CL Holdings | Impaired | Deemed to Reject |
| 7 | PIK Notes Claims against CL Holdings | Impaired | Deemed to Reject |
| 8 | Subordinated Notes Claims against CL Holdings | Impaired | Deemed to Reject |
| 9 | General Unsecured Claims against CL Holdings | Impaired | Deemed to Reject |
| 10 | Section 510(b) Claims | Impaired | Deemed to Reject |
| 11 | CL Holdings Interests | Impaired | Deemed to Reject |
| 12 | First Lien Secured Claims against CL Holdco | Impaired | Entitled to Vote |
| 13 | First Lien Deficiency Claims against CL Holdco | Impaired | Deemed to Reject |
| 14 | Second Lien Claims against CL Holdco | Impaired | Deemed to Reject |
| 15 | Senior Notes Claims against CL Holdco | Impaired | Deemed to Reject |
| 16 | PIK Notes Claims against CL Holdco | Impaired | Deemed to Reject |
| 17 | Subordinated Notes Claims against CL Holdco | Impaired | Deemed to Reject |
| 18 | General Unsecured Claims against CL Holdco | Impaired | Deemed to Reject |
| 19 | Section 510(b) Claims against CL Holdco | Impaired | Deemed to Reject |
| 20 | CL Holdco Interests | Unimpaired | Presumed to Accept |
| 21 | First Lien Secured Claims against CLAI | Impaired | Entitled to Vote |
| 22 | First Lien Deficiency Claims against CLAI | Impaired | Entitled to Vote |
| 23 | Second Lien Claims against CLAI | Impaired | Entitled to Vote |
| 24 | Senior Notes Claims against CLAI | Impaired | Entitled to Vote |
| 25 | Subordinated Notes Claims against CLAI | Impaired | Deemed to Reject |
| 26 | General Unsecured Claims against CLAI | Impaired | Entitled to Vote |
| 27 | Section 510(b) Claims against CLAI | Impaired | Deemed to Reject |
| 28 | CLAI Interests | Unimpaired | Presumed to Accept |
| 29 | First Lien Secured Claims against CLI | Impaired | Entitled to Vote |
| 30 | First Lien Deficiency Claims against CLI | Impaired | Entitled to Vote |
| 31 | Second Lien Claims against CLI | Impaired | Entitled to Vote |
| 32 | Senior Notes Claims against CLI | Impaired | Entitled to Vote |
| 33 | Subordinated Notes Claims against CLI | Impaired | Deemed to Reject |
| 34 | General Unsecured Claims against CLI | Impaired | Entitled to Vote |
| 35 | Section 510(b) Claims against CLI | Impaired | Deemed to Reject |
| 36 | CLI Interests | Unimpaired | Presumed to Accept |

B.      *Treatment of Claims and Interests*

The treatment and voting rights provided to each Class for distribution purposes is specified below:

1.      Class 1 - Other Priority Claims

(a)      *Classification*:  Class 1 consists of all Other Priority Claims.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall be paid in full in Cash on (i) the Effective Date or as soon as practicable thereafter, (ii) if after the Effective

Date, the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or (iii) such other date as may be ordered by the Bankruptcy Court.

(c)     *Voting*:  Class 1 is Unimpaired, and Holders of Class 1 Other Priority Claims conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

2.     Class 2 - Other Secured Claims

(a)     *Classification*:  Class 2 consists of all Other Secured Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall be paid in full in Cash on (i) the Effective Date or as soon as practicable thereafter, (ii) if after the Effective Date, the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, or (iii) such other date as may be ordered by the Bankruptcy Court.

(c)     *Voting*:  Class 2 is Unimpaired, and Holders of Class 2 Other Secured Claims conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.     Class 3 - First Lien Secured Claims against CL Holdings

(a)     *Classification*:  Class 3 consists of all First Lien Secured Claims against CL Holdings.

(b)     *Treatment*:  Holders of First Lien Secured Claims against CL Holdings shall be entitled to receive the assets of CL Holdings, if any, on account of such Claims.

(c)     *Voting*:  Class 3 is Impaired. Therefore, Holders of Class 3 First Lien Secured Claims against CL Holdings are entitled to vote to accept or reject the Plan.

4.     Class 4 - First Lien Deficiency Claims against CL Holdings

(a)     *Classification*:  Class 4 consists of all First Lien Deficiency Claims against CL Holdings.

(b)     *Treatment*:  Holders of First Lien Deficiency Claims against CL Holdings shall not receive any distribution on account of such Claims, and First Lien Deficiency Claims against CL Holdings shall be discharged, cancelled, released, and extinguished as of the Effective Date.

(c)     *Voting*:  Class 4 is Impaired, and Holders of First Lien Deficiency Claims against CL Holdings are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 4 First Lien Deficiency Claims against CL Holdings are not entitled to vote to accept or reject the Plan.

5.     Class 5 - Second Lien Claims against CL Holdings

(a)     *Classification*:  Class 5 consists of all Second Lien Claims against CL Holdings.

(b)     *Treatment*:  Holders of Second Lien Claims against CL Holdings shall not receive any distribution on account of such Claims, and Second Lien Claims against CL Holdings shall be discharged, cancelled, released, and extinguished as of the Effective Date, provided that any distributions to Holders of Second Lien Claims

against CL Holdings shall be subject to the turnover provisions of the Second Lien Intercreditor Agreement.

(c)      *Voting*:   Class 5 is Impaired, and Holders of Second Lien Claims against CL Holdings are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 5 Second Lien Claims against CL Holdings are not entitled to vote to accept or reject the Plan.

6.      Class 6 - Senior Notes Claims against CL Holdings

(a)      *Classification*:  Class 6 consists of all Senior Notes Claims against CL Holdings.

(b)      *Treatment*:  Holders of Senior Notes Claims against CL Holdings shall not receive any distribution on account of such Claims, and Senior Notes Claims against CL Holdings shall be discharged, cancelled, released, and extinguished as of the Effective Date.

(c)      *Voting*:   Class 6 is Impaired, and Holders of Senior Notes Claims against CL Holdings are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 6 Senior Notes Claims against CL Holdings are not entitled to vote to accept or reject the Plan.

7.      Class 7- PIK Notes Claims against CL Holdings

(a)      *Classification*:  Class 7 consists of all PIK Notes Claims against CL Holdings.

(b)      *Treatment*:  Holders of PIK Notes Claims against CL Holdings shall not receive any distribution on account of such Claims, and PIK Notes Claims against CL Holdings shall be discharged, cancelled, released, and extinguished as of the Effective Date.

(c)      *Voting*:  Class 7 is Impaired, and Holders of PIK Notes Claims against CL Holdings are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 7 PIK Notes Claims against CL Holdings are not entitled to vote to accept or reject the Plan.

8.      Class 8 - Subordinated Notes Claims against CL Holdings

(a)      *Classification*:   Class 8 consists of all Subordinated Notes Claims against CL Holdings.

(b)      *Treatment*:  Holders of Subordinated Notes Claims against CL Holdings shall not receive any distribution on account of such Claims, and Subordinated Notes Claims against CL Holdings shall be discharged, cancelled, released, and extinguished as of the Effective Date.

(c)      *Voting*:   Class 8 is Impaired, and Holders of Subordinated Notes Claims against CL Holdings are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 8 Subordinated Notes Claims against CL Holdings are not entitled to vote to accept or reject the Plan.

9.      Class 9 - General Unsecured Claims against CL Holdings

(a)      *Classification*:   Class 9 consists of all General Unsecured Claims against CL Holdings.

(b)      *Treatment*:  Holders of General Unsecured Claims against CL Holdings shall not receive any distribution on account of such Claims, and General Unsecured Claims against CL Holdings shall be discharged, cancelled, released, and extinguished as of the Effective Date.

      (c)    *Voting*:  Class 9 is Impaired, and Holders of General Unsecured Claims against CL Holdings are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 9 General Unsecured Claims against CL Holdings are not entitled to vote to accept or reject the Plan.

10.      <u>Class 10 - Section 510(b) Claims against CL Holdings</u>

      (a)    *Classification*:  Class 10 consists of all Section 510(b) Claims against CL Holdings.

      (b)    *Treatment*:  Holders of Section 510(b) Claims against CL Holdings shall not receive any distribution on account of such Claims, and Section 510(b) Claims against CL Holdings shall be discharged, cancelled, released, and extinguished as of the Effective Date.

      (c)    *Voting*:  Class 10 is Impaired, and Holders of Section 510(b) Claims against CL Holdings are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 10 Section 510(b) Claims against CL Holdings are not entitled to vote to accept or reject the Plan.

11.      <u>Class 11 - CL Holdings Interests</u>

      (a)    *Classification*:  Class 11 consists of all CL Holdings Interests.

      (b)    *Treatment*:  Holders of CL Holdings Interests shall not receive any distribution on account of such CL Holdings Interests, and CL Holdings Interests shall be discharged, cancelled, released, and extinguished as of the Effective Date, and shall be of no further force or effect.

      (c)    *Voting*:  Class 11 is Impaired, and Holders of CL Holdings Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of CL Holdings Interests are not entitled to vote to accept or reject the Plan.

12.      <u>Class 12 - First Lien Secured Claims against CL Holdco</u>

      (a)    *Classification*:  Class 12 consists of all First Lien Secured Claims against CL Holdco.

      (b)    *Treatment*:  Holders of First Lien Secured Claims against CL Holdco shall be entitled to receive the assets of CL Holdco, if any, on account of such Claims.

      (c)    *Voting*:  *Voting*:  Class 12 is Impaired. Therefore, Holders of Class 12 First Lien Secured Claims against CL Holdings are entitled to vote to accept or reject the Plan.

13.      <u>Class 13 - First Lien Deficiency Claims against CL Holdco</u>

      (a)    *Classification*:  Class 13 consists of all First Lien Deficiency Claims against CL Holdco.

      (b)    *Treatment*:  Holders of First Lien Deficiency Claims against CL Holdco shall not receive any distribution on account of such Claims, and First Lien Deficiency Claims against CL Holdco shall be discharged, cancelled, released, and extinguished as of the Effective Date.

      (c)    *Voting*:  Class 13 is Impaired, and Holders of First Lien Deficiency Claims against CL Holdco are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 13 First Lien Deficiency Claims against CL Holdco are not entitled to vote to accept or reject the Plan.

14.    Class 14 - Second Lien Claims against CL Holdco

    (a)    *Classification*:  Class 14 consists of all Second Lien Claims against CL Holdco.

    (b)    *Treatment*:  Holders of Second Lien Claims against CL Holdco shall not receive any distribution on account of such Claims, and Second Lien Claims against CL Holdco shall be discharged, cancelled, released, and extinguished as of the Effective Date, provided that any distribution to the holder of Second Lien Claims against CL Holdco shall be subject to the turnover provisions of the Second Lien Intercreditor Agreement.

    (c)    *Voting*:  Class 14 is Impaired, and Holders of Second Lien Claims against CL Holdco are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 14 Second Lien Claims against CL Holdco are not entitled to vote to accept or reject the Plan.

15.    Class 15 - Senior Notes Claims against CL Holdco

    (a)    *Classification*:  Class 15 consists of all Senior Notes Claims against CL Holdco.

    (b)    *Treatment*:  Holders of Senior Notes Claims against CL Holdco shall not receive any distribution on account of such Claims, and Senior Notes Claims against CL Holdco shall be discharged, cancelled, released, and extinguished as of the Effective Date.

    (c)    *Voting*:  Class 15 is Impaired, and Holders of Senior Notes Claims against CL Holdco are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 15 Senior Notes Claims against CL Holdco are not entitled to vote to accept or reject the Plan.

16.    Class 16 - PIK Notes Claims against CL Holdco

    (a)    *Classification*:  Class 16 consists of all PIK Notes Claims against CL Holdco.

    (b)    *Treatment*:  Holders of PIK Notes Claims against CL Holdco shall not receive any distribution on account of such Claims, and PIK Notes Claims against CL Holdco shall be discharged, cancelled, released, and extinguished as of the Effective Date.

    (c)    *Voting*:  Class 16 is Impaired, and Holders of PIK Notes Claims against CL Holdco are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 16 PIK Notes Claims against CL Holdco are not entitled to vote to accept or reject the Plan.

17.    Class 17 - Subordinated Notes Claims against CL Holdco

    (a)    *Classification*:  Class 17 consists of all Subordinated Notes Claims against CL Holdco.

    (b)    *Treatment*:  Holders of Subordinated Notes Claims against CL Holdco shall not receive any distribution on account of such Claims, and Subordinated Notes Claims against CL Holdco shall be discharged, cancelled, released, and extinguished as of the Effective Date.

    (c)    *Voting*:  Class 17 is Impaired, and Holders of Subordinated Notes Claims against CL Holdco are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 17 Subordinated Notes Claims against CL Holdco are not entitled to vote to accept or reject the Plan.

18.    <u>Class 18 - General Unsecured Claims against CL Holdco</u>

(a)    *Classification*:  Class 18 consists of all General Unsecured Claims against CL Holdco.

(b)    *Treatment*:  Holders of General Unsecured Claims against CL Holdco shall not receive any distribution on account of such Claims, and General Unsecured Claims against CL Holdco shall be discharged, cancelled, released, and extinguished as of the Effective Date.

(c)    *Voting*:  Class 18 is Impaired, and Holders of General Unsecured Claims against CL Holdco are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 18 General Unsecured Claims against CL Holdco are not entitled to vote to accept or reject the Plan.

19.    <u>Class 19 - Section 510(b) Claims against CL Holdco</u>

(a)    *Classification*:  Class 19 consists of all Section 510(b) Claims against CL Holdco.

(b)    *Treatment*:  Holders of Section 510(b) Claims against CL Holdco shall not receive any distribution on account of such Claims, and Section 510(b) Claims against CL Holdco shall be discharged, cancelled, released, and extinguished as of the Effective Date.

(c)    *Voting*:  Class 19 is Impaired, and Holders of Section 510(b) Claims against CL Holdco are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 19 Section 510(b) Claims against CL Holdco are not entitled to vote to accept or reject the Plan.

20.    <u>Class 20 - CL Holdco Interests</u>

(a)    *Classification*:  Class 20 consists of all CL Holdco Interests.

(b)    *Treatment*:  To the extent not otherwise transferred by CL Holdings to Reorganized Cengage, CL Holdco Interests shall be Reinstated on the Effective Date.

(c)    *Voting*:  Class 20 is Unimpaired, and Holders of CL Holdco Interests conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of CL Holdco Interests are not entitled to vote to accept or reject the Plan.

21.    <u>Class 21 - First Lien Secured Claims against CLAI</u>

(a)    *Classification*:  Class 21 consists of all First Lien Secured Claims against CLAI.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed First Lien Secured Claim against CLAI agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed First Lien Secured Claim against CLAI, each Holder of an Allowed First Lien Secured Claim against CLAI shall receive its Pro Rata share of (i) the First Lien Seared Claim Distribution, (ii) any amount of the Unsecured CLAI Recovery that is allocable to value that is determined by Final Order to be subject to the non-avoidable Liens of the Holders of the First Lien Claims, and (iii) the distribution received by CLAI under the Plan, if any, on account of intercompany obligations owed by CLI to CLAI that were pledged under the First Lien Documents.  Distributions received under the Plan by Holders of Allowed First Lien Secured Claims on account of First Lien Notes Claims held by such Holder against CLAI shall be subject to the application of the Charging Lien of the First Lien Indenture Trustee for payment of unpaid fees and costs of the First Lien Indenture Trustee.

26

(c)     *Voting*:  Class 21 is Impaired.  Therefore, Holders of Class 21 First Lien Secured Claims against CLAI as of the Voting Record Date are entitled to vote to accept or reject the Plan.

22.     Class 22 - First Lien Deficiency Claims against CLAI

(a)     *Classification*:  Class 22 consists of all First Lien Deficiency Claims against CLAI.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed First Lien Deficiency Claim against CLAI agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed First Lien Deficiency Claims against CLAI, each Holder of an Allowed First Lien Deficiency Claim against CLAI shall receive on the Effective Date its Pro Rata share of the Unsecured CLAI Recovery.  Distributions received under the Plan by Holders of Allowed First Lien Deficiency Claims on account of First Lien Note Claims held by such Holder against CLAI shall be subject to the application of the Charging Lien of the First Lien Indenture Trustee for payment of unpaid fees and costs of the First Lien Indenture Trustee.

(c)     *Voting*:  Class 22 is Impaired.  Therefore, Holders of Class 22 First Lien Deficiency Claims against CLAI as of the Voting Record Date are entitled to vote to accept or reject the Plan.

23.     Class 23 - Second Lien Claims against CLAI

(a)     *Classification*:  Class 23 consists of all Second Lien Claims against CLAI.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Second Lien Claim against CLAI agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed Second Lien Claim against CLAI, each Holder of an Allowed Second Lien Claim against CLAI shall receive on the Effective Date its Pro Rata share of the Unsecured CLAI Recovery that is not otherwise subject to the turnover provisions of the Second Lien Intercreditor Agreement.  Any distribution subject to the turnover provisions of the Second Lien Intercreditor Agreement shall be distributed on a ratable basis directly to the Holders of Allowed First Lien Deficiency Claims in accordance with the terms and conditions of the Second Lien Intercreditor Agreement.  Distributions received under the Plan by Holders of Allowed Second Lien Claims against CLAI shall be subject to the application of the Charging Lien of the Second Lien Indenture Trustee for payment of unpaid fees and costs of the Second Lien Indenture Trustee.

(c)     *Voting*:  Class 23 is Impaired.  Therefore, Holders of Class 23 Second Lien Claims against CLAI as of the Voting Record Date are entitled to vote to accept or reject the Plan.

24.     Class 24 - Senior Notes Claims against CLAI

(a)     *Classification*:  Class 24 consists of all Senior Notes Claims against CLAI.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Senior Notes Claim against CLAI agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed Senior Notes Claim against CLAI, each Holder of an Allowed Senior Notes Claim against CLAI shall receive on the Effective Date its Pro Rata share of the Unsecured CLAI Recovery.  Distributions received under the Plan by Holders of Allowed Senior Notes Claims against CLAI shall be subject to the application of the Charging Lien of the Senior Notes Indenture Trustee for payment of unpaid fees and costs of the Senior Notes Indenture Trustee.

    (c)      *Voting*:  Class 24 is Impaired.  Therefore, Holders of Class 24 Senior Notes Claims against CLAI as of the Voting Record Date are entitled to vote to accept or reject the Plan.

25.      Class 25 - Subordinated Notes Claims against CLAI

    (a)      *Classification*:  Class 25 consists of all Subordinated Notes Claims against CLAI.

    (b)      *Treatment*:  After giving effect to the subordination and turnover provisions of the Subordinated Notes Indenture, the Pro Rata share of the Unsecured CLAI Recovery shall be distributed on a ratable basis directly to Holders of First Lien Deficiency Claims, Second Lien Claims, and Senior Notes Claims in accordance with the terms and conditions of the Subordinated Notes Indenture.

    (c)      *Voting*: Class 25 is Impaired, and Holders of Subordinated Notes Claims against CLAI are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 25 Subordinated Notes Claims against CLAI are not entitled to vote to accept or reject the Plan.

26.      Class 26 - General Unsecured Claims against CLAI

    (a)      *Classification*:  Class 26 consists of all General Unsecured Claims against CLAI.

    (b)      *Treatment*:  Except to the extent that a Holder of an Allowed Class 26 General Unsecured Claim against CLAI agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed General Unsecured Claim against CLAI, each Holder of an Allowed General Unsecured Claim against CLAI shall receive on the Effective Date its Pro Rata share of the Unsecured CLAI Recovery.

    (c)      *Voting*:  Class 26 is Impaired.  Therefore, Holders of Class 26A General Unsecured Claims against CLAI as of the Voting Record Date are entitled to vote to accept or reject the Plan.

27.      Class 27 - Section 510(b) Claims against CLAI

    (a)      *Classification*:  Class 27 consists of all Section 510(b) Claims against CLAI.

    (b)      *Treatment*:  Holders of Section 510(b) Claims against CLAI shall not receive any distribution on account of such Claims, and Section 510(b) Claims against CLAI shall be discharged, cancelled, released, and extinguished as of the Effective Date.

    (c)      *Voting*:  Class 27 is Impaired, and Holders of Section 510(b) Claims against CLAI are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 27 Section 510(b) Claims against CLAI are not entitled to vote to accept or reject the Plan.

28.      Class 28 - CLAI Interests

    (a)      *Classification*:  Class 28 consists of all CLAI Interests.

    (b)      *Treatment*:  To the extent not otherwise transferred by CL Holdings to Reorganized Cengage, CLAI Interests shall be Reinstated on the Effective Date.

    (c)      *Voting*:  Class 28 is Unimpaired, and Holders of CLAI Interests conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of CLAI Interests are not entitled to vote to accept or reject the Plan.

29.    <u>Class 29 - First Lien Secured Claims against CLI</u>

   (a)    *Classification*:  Class 29 consists of all First Lien Secured Claims against CLI.

   (b)    *Treatment*:  Except to the extent that a Holder of an Allowed First Lien Secured Claim against CLI agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed First Lien Secured Claim against CLI, each Holder of an Allowed First Lien Secured Claim against CLI shall receive its Pro Rata share of (i) the First Lien Seared Claim Distribution, (ii) any amount of the Unsecured CLI Recovery that is allocable to value that is determined by Final Order to be subject to the non-avoidable Liens of the Holders of the First Lien Claims, and (iii) the distribution received by CLI under the Plan, if any, on account of intercompany obligations owed by CLAI to CLI that were pledged under the First Lien Documents.  Distributions received under the Plan by Holders of Allowed First Lien Secured Claims on account of First Lien Note Claims against CLI shall be subject to the application of the Charging Lien of the First Lien Indenture Trustee for payment of unpaid fees and costs of the First Lien Indenture Trustee.

   (c)    *Voting*:  Class 29 is Impaired.  Therefore, Holders of Class 29 First Lien Secured Claims against CLI as of the Voting Record Date are entitled to vote to accept or reject the Plan.

30.    <u>Class 30 - First Lien Deficiency Claims against CLI</u>

   (a)    *Classification*:  Class 30 consists of all First Lien Deficiency Claims against CLI.

   (b)    *Treatment*:  Except to the extent that a Holder of an Allowed First Lien Deficiency Claim against CLI agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed First Lien Deficiency Claim against CLI, each Holder of an Allowed First Lien Deficiency Claim against CLI on the Effective Date shall receive its Pro Rata share of the Unsecured CLI Recovery.  Distributions received under the Plan by Holders of Allowed First Lien Deficiency Claims on account of the First Lien Note Claims against CLI shall be subject to the application of the Charging Lien of the First Lien Indenture Trustee for payment of unpaid fees and costs of the First Lien Indenture Trustee.

   (c)    *Voting*:  Class 30 is Impaired.  Therefore, Holders of Class 30 First Lien Deficiency Claims against CLI as of the Voting Record Date are entitled to vote to accept or reject the Plan.

31.    <u>Class 31 - Second Lien Claims against CLI</u>

   (a)    *Classification*:  Class 31 consists of all Second Lien Claims against CLI.

   (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Second Lien Claim against CLI agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed Second Lien Claim against CLI, each Holder of an Allowed Second Lien Claim against CLI shall receive on the Effective Date its Pro Rata of the Unsecured CLI Recovery; <u>provided</u> that, after giving effect to the provisions of the Second Lien Intercreditor Agreement, distributions of the Unsecured CLI Recovery on account of the Disputed Copyrights or any other assets subject to the applicable provisions of the Second Lien Intercreditor Agreement that otherwise would have been made to Holders of Second Lien Claims against CLI shall be distributed on a ratable basis directly to the Holders of Allowed First Lien Deficiency Claims in accordance with the terms and conditions of the Second Lien Intercreditor Agreement.  Distributions received under the Plan by Holders of Allowed Second Lien Claims against CLI shall be subject to the

application of the Charging Lien of the Second Lien Indenture Trustee for payment of unpaid fees and costs of the Second Lien Indenture Trustee.

    (c)    *Voting*: Class 31 is Impaired. Therefore, Holders of Class 31 Second Lien Claims against CLI as of the Voting Record Date are entitled to vote to accept or reject the Plan.

32.    <u>Class 32 - Senior Notes Claims against CLI</u>

    (a)    *Classification*: Class 32 consists of all Senior Notes Claims against CLI.

    (b)    *Treatment*: Except to the extent that a Holder of an Allowed Senior Notes Claim against CLI agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed Senior Notes Claim against CLI, each Holder of an Allowed Senior Notes Claim against CLI shall receive on the Effective Date its Pro Rata share of the Unsecured CLI Recovery. Distributions received under the Plan by Holders of Allowed Senior Notes Claims against CLI shall be subject to the application of the Charging Lien of the Senior Notes Indenture Trustee for payment of unpaid fees and costs of the Senior Notes Indenture Trustee.

    (c)    *Voting*: Class 32 is Impaired. Therefore, Holders of Class 32 Senior Notes Claims against CLI as of the Voting Record Date are entitled to vote to accept or reject the Plan.

33.    <u>Class 33 - Subordinated Notes Claims against CLI</u>

    (a)    *Classification*: Class 33 consists of all Subordinated Notes Claims against CLI.

    (b)    *Treatment*: After giving effect to the subordination and turnover provisions of the Subordinated Notes Indenture, the Pro Rata share of the Unsecured CLI Recovery that otherwise would have been distributed to each Holder of an Allowed Subordinated Notes Claim against CLI shall be distributed on a ratable basis directly to Holders of First Lien Deficiency Claims, Second Lien Claims, and Senior Notes Claims in accordance with the terms and conditions of the Subordinated Notes Indenture.

    (c)    *Voting*: Class 33 is Impaired, and Holders of Subordinated Notes Claims against CLI are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 33 Subordinated Notes Claims against CLI are not entitled to vote to accept or reject the Plan.

34.    <u>Class 34 - General Unsecured Claims against CLI</u>

    (a)    *Classification*: Class 34 consists of all General Unsecured Claims against CLI.

    (b)    *Treatment*: Except to the extent that a Holder of an Allowed Class 34 General Unsecured Claim against CLI agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed Class 34 General Unsecured Claim against CLI, each Holder of an Allowed Class 34 General Unsecured Claim against CLI shall receive on the Effective Date its Pro Rata share of the Unsecured CLI Recovery.

    (c)    *Voting*: Class 34 is Impaired. Therefore, Holders of Class 34A General Unsecured Claims against CLI as of the Voting Record Date are entitled to vote to accept or reject the Plan.

35.    <u>Class 35 - Section 510(b) Claims against CLI</u>

    (a)    *Classification*: Class 35 consists of all Section 510(b) Claims against CLI.

(b) *Treatment*: Holders of Section 510(b) Claims against CLI shall not receive any distribution on account of such Claims, and Section 510(b) Claims against CLI shall be discharged, cancelled, released, and extinguished as of the Effective Date.

(c) *Voting*: Class 35 is Impaired, and Holders of Section 510(b) Claims against CLI are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 35 Section 510(b) Claims against CLI are not entitled to vote to accept or reject the Plan.

36. <u>Class 36 - CLI Interests</u>

(a) *Classification*: Class 36 consists of all CLI Interests.

(b) *Treatment*: To the extent not otherwise transferred by CL Holdings to Reorganized Cengage, CLI Interests shall be reinstated on the Effective Date.

(c) *Voting*: Class 36 is Unimpaired, and Holders of CLI Interests conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of CLI Interests are not entitled to vote to accept or reject the Plan.

C.    *Non-Substantive Consolidation*

Although the Plan is presented as a joint plan of reorganization, this Plan does not provide for the substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for any reason. Except as specifically set forth herein, nothing in this Plan or the Disclosure Documents shall constitute or be deemed to constitute an admission that any one or all of the Debtors is subject to or liable for any Claims against any other Debtor. A Claim against multiple Debtors will be treated as a separate Claim against each Debtor's Estate for all purposes including, but not limited to, voting and distribution; provided, however, that no Claim will receive value in excess of 100% of the Allowed amount of such Claim.

D.    *Allowance of the First Lien Claims*

The First Lien Secured Claims and the First Lien Deficiency Claims shall be deemed Allowed Claims in their entirety in the amount of $[__] against each of CL Holdings, CL Holdco, CLAI, and CLI.

E.    *Confirmation of All Cases*

If the Plan is not confirmed as to one or more of the Debtors but the other Debtors determine to proceed with the Plan, then the Debtors as to which the Plan may not be confirmed shall be severed from, and the Plan shall not apply to, such Debtor(s).

F.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

G.    *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

K&E

H.      *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

I.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Sources of Consideration for Plan Distributions*

The Confirmation Order shall be deemed to authorize, among other things, the Restructuring Transactions.  All amounts and securities necessary for the Debtors (on the Effective Date) or the Reorganized Debtors or the Disbursing Agent (after the Effective Date) to make payments or distributions pursuant hereto shall be obtained from the New Equity, the New Debt Facility, Cash of the Debtors, interests in the Trust (if established), or other assets of the Debtors.

B.      *Exit Revolver Facility*

The Confirmation Order shall include approval of the Exit Revolver Facility (including the transactions contemplated thereby, such as any supplementation or additional syndication of the Exit Revolver Facility, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein) and authorization for the Reorganized Debtors to enter into and execute the Exit Revolver Facility Documents and such other documents as may be required to effectuate the treatment afforded to the lenders under the Exit Revolver Facility pursuant to the Exit Revolver Facility Documents.  The Reorganized Debtors may use the Exit Revolver Facility for any purpose permitted thereunder, including the funding of obligations under the Plan and satisfaction of ongoing working capital needs.

Upon the Confirmation Date, (1) the Reorganized Debtors are authorized to execute and deliver the Exit Revolver Facility Documents and perform their obligations thereunder including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages, or indemnities, and (2) subject to the occurrence of the Effective Date, the Exit Revolver Facility Documents shall constitute the legal, valid, and binding obligations of the Reorganized Debtors and be enforceable in accordance with their respective terms.

C.      *New Debt Facility*

The Confirmation Order shall include approval of the New Debt Facility (including the transactions contemplated thereby, such as any supplementation or additional syndication of the New Debt Facility, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein) and authorization for the Reorganized Debtors to enter into and execute the New Debt Facility Documents and such other documents as may be required to effectuate the treatment afforded to the lenders under the New Debt Facility pursuant to the New Debt Facility Documents.  The Reorganized Debtors may use the New Debt Facility for any purpose permitted thereunder, including the funding of obligations under the Plan and satisfaction of ongoing working capital needs.

Upon the Confirmation Date, (1) the Reorganized Debtors are authorized to execute and deliver the New Debt Facility Documents and perform their obligations thereunder including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages, or indemnities, and (2) subject to the occurrence of the Effective Date, the New Debt Facility Documents shall constitute the legal, valid, and binding obligations of the Reorganized Debtors and be enforceable in accordance with their respective terms.

D.      *Issuance of New Equity*

Cengage Interests shall be cancelled and Reorganized Cengage shall issue the New Equity for distribution to Holders of Claims entitled to receive the New Equity pursuant to the Plan.  New Equity shall also be reserved for the Management Incentive Plan in accordance with Article IV.W herein.

Each share of the New Equity issued and distributed pursuant to the Plan shall be duly authorized, validly issued, and fully paid and non-assessable.  Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, and which shall be in form and substance acceptable to the Required Consenting Lenders, which terms and conditions shall bind each Entity receiving such distribution or issuance.

E.      *New Corporate Governance Documents*

On the Effective Date, Reorganized Cengage and the Reorganized Debtors, as applicable, shall enter into the New Corporate Governance Documents.  The New Corporate Governance Documents shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each Holder of New Equity shall be deemed to be bound thereby, in each case without the need for execution by any party thereto other than Reorganized Cengage, and such other Reorganized Debtors as applicable.

F.      *New Shareholders Agreement*

On the Effective Date, Reorganized Cengage shall enter into and deliver the New Shareholders Agreement in substantially the form included in the Plan Supplement.  The New Shareholders Agreement shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each Holder of New Equity shall be deemed to be bound thereby, in each case without the need for execution by any party thereto other than Reorganized Cengage.

G.      *General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies resolved pursuant to the Plan.  Distributions made to Holders of Allowed Claims are intended to be final.

H.      *Section 1145 Exemption*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Equity, including interests in the Trust (if applicable), shall be exempt from, among other things, the registration and prospectus delivery requirements of Section 5 of the Securities Act and any other applicable state and federal law requiring registration and/or delivery of a prospectus prior to the offering, issuance, distribution, or sale of securities.  In addition, under section 1145 of the Bankruptcy Code, any securities contemplated by the Plan and any and all agreements incorporated therein, including, the New Equity and the interests in the Trust (if applicable), shall be subject to (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (2) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (3) the restrictions, if any, on the transferability of such securities and instruments, including those set forth in the New Corporate Governance Documents; and (4) applicable regulatory approval, if any.

I.      *Listing of New Equity; Reporting Obligations*

On the Effective Date, none of the New Equity will be listed on a national securities exchange, the Reorganized Debtors will not be reporting companies under the Securities Exchange Act, the Reorganized Debtors shall not be required to file reports with the Securities and Exchange Commission or any other entity or party, and the Reorganized Debtors shall not be required to file monthly operating reports, or any other type of report, with the Bankruptcy Court after the Effective Date; provided, that notwithstanding anything to the contrary contained herein, each of the Reorganized Debtors shall provide to the U.S. Trustee a calculation of

their disbursements on a quarterly basis until the entry of a final decree pursuant to Bankruptcy Rule 3022 to close the chapter 11 case of such Reorganized Debtor.  In order to prevent the Reorganized Debtors from becoming subject to the reporting requirements of the Securities Exchange Act, except in connection with a public offering, the New Corporate Governance Documents may impose certain trading restrictions, and the New Equity will be subject to certain transfer and other restrictions pursuant to the New Corporate Governance Documents.

### J.      Reporting Obligations

In addition to any reporting requirements under the New Debt Facility Documents, at all times prior to the Reorganized Debtors completing an underwritten public offering of the New Equity, which qualifies as a Qualified Public Offering, the Reorganized Debtors shall provide to any Holder of New Equity and any prospective investor (who is not a direct competitor of the Debtors or Reorganized Debtors), that has entered into a confidentiality agreement on customary terms and for purposes of evaluating the investment ("Qualified Prospective Investor"), on a reputable password-protected online data system, such as Intralinks, annual reports, quarterly reports, proxy statements and other periodic reports that would be required pursuant to Section 13 or 15(d) of the Securities Exchange Act, prepared as if the Reorganized Debtors were a reporting company under the Securities Exchange Act. The Reorganized Debtors shall hold live quarterly conference calls (with a question and answer period) for shareholders and Qualified Prospective Investors, with dates and dial-in information announced on the password-protected online data system utilized by the Reorganized Debtors at least three (3) days prior to such quarterly calls.

### K.      Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, discharged, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledge, or other security interests against any property of the Estates shall revert to the Reorganized Debtors and their successors and assigns. The Reorganized Debtors shall be authorized to file any necessary or desirable documents to evidence such release in the name of such Secured Party.  Notwithstanding anything in the Plan to the contrary, the Liens of the Holders of First Lien Claims shall not be released with respect to any assets, or the proceeds of any assets, that remain subject to any dispute as to whether such assets are subject to the Liens of the Holders of the First Lien Claims or are transferred on the Effective Date to the Trust (if any) until such time as a Final Order has been entered avoiding such Liens.

### L.      Cancellation of Securities and Agreements

On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the obligations of the Debtors under the Prepetition Indentures and any other certificate, share, note, bond, indenture, purchase right, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or profits interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest (except the Intercompany Interests and such other certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan), shall be cancelled as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder; (2) the obligations of the Debtors under the First Lien Credit Facility Documents shall be fully released, settled, and compromised as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (3) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, and compromised except as expressly provided herein; provided, that notwithstanding Confirmation or the occurrence of the Effective Date, any such agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of allowing such Holders to receive distributions under the Plan as provided herein; provided, further, that notwithstanding the foregoing and anything else contained in the Plan:

1.      the First Lien Credit Facility shall continue in effect solely for the purpose of (a) allowing Holders of First Lien Credit Facility Claims to receive the distributions provided for hereunder, (b) allowing the first lien disbursing agent to receive distributions from the Debtors and to make further distributions, as necessary, to the holders of First Lien Credit Facility Claims, (c) the payment of the reasonable and documented fees and expenses incurred by any Holder of the First Lien Credit Facility Claims and/or the First Lien Credit Agreement Administrative Agent as set forth in Article XII.E of the Plan, (d) preserving any rights of the First Lien Credit Facility Agents and the First Lien Credit Facility Issuing Bank against any person other than the Debtors, including with respect to indemnification or contribution from the First Lien Credit Facility Lenders pursuant and subject to the terms of the First Lien Credit Facility Documents as in effect on the Effective Date; (ed) enforcing any rights and remedies as between the First Lien Credit Facility Lenders or as between any First Lien Credit Facility Lender and the First Lien Credit Facility Administrative Agent, and (f) enforcing any rights and remedies as between the First Lien Credit Facility Lenders and the First Lien Credit Facility Administrative Agent and any Holders of Prepetition Notes and the Prepetition Indenture Trustees.

2.      the Prepetition Indentures will continue in effect solely for the purposes of (a) allowing distributions, if any, to be made under the Plan pursuant to the Prepetition Indentures and for the Prepetition Indenture Trustees to perform such other necessary functions with respect thereto, if any, and to have the benefit of all the protections and other provisions of the applicable indentures in doing so; (b) preserving any rights of the Prepetition Indenture Trustees to indemnification or contribution from Holders of Prepetition Notes pursuant and subject to the terms of the Prepetition Indentures, each as applicable, as in effect on the Effective Date; (c) permitting each of the Prepetition Indenture Trustees to maintain or assert any right or Charging Lien it may have against distributions pursuant to the terms of the Plan to recover unpaid fees and expenses (including the fees and expenses of their respective counsel, agents, and advisors) of the Prepetition Indenture Trustees; and (d) enforcing any rights and remedies as between Holders of Prepetition Notes thereunder or as between any Holder of Prepetition Notes and the applicable Prepetition Indenture Trustee.  On and after the Effective Date, all duties and responsibilities of the Prepetition Indenture Trustees under the applicable Prepetition Indentures and all duties and responsibilities of the First Lien Credit Facility Administrative Agent arising under or related to the First Lien Credit Facility shall be discharged except to the extent required in order to effectuate the Plan.

On the Effective Date, except to the extent otherwise provided herein, any indenture relating to any of the foregoing, including the Prepetition Indentures, shall be deemed to be canceled, as permitted by section 1123(a)(5)(F) of the Bankruptcy Code, and the obligations of the Debtors thereunder shall be fully released, settled, and compromised.

*M.       First Lien Credit Facility Existing Letters of Credit.*

On the Effective Date, all First Lien Credit Facility Existing Letters of Credit shall be replaced or receive such other treatment as agreed to by the affected First Lien Credit Facility Lenders.

*N.       Restructuring Transactions*

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors and the Reorganized Debtors with the consent of the Required Consenting Lenders may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan.  For the purposes of effectuating the Plan, none of the Restructuring Transactions contemplated herein shall constitute a change of control under any agreement, contract or document of the Debtors.

The restructuring may be structured as an acquisition of substantially all of the assets of Cengage (other than the Retained Assets) by one or more Purchasers on the terms set forth in the Description of Transaction Steps, which acquisition may be structured as a taxable transaction for United States federal income tax purposes and deemed consummated on the Effective Date.

*O.       Corporate Action*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtors, the Reorganized Debtors, or any other Entity or Person, including:  (1) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; (2) selection of the managers and officers for the Reorganized Debtors; (3) the execution of

and entry into the Exit Revolver Facility Documents; (4) the execution of and entry into the New Debt Facility Agreement and the other New Debt Facility Documents; (5) entry into the New Corporate Governance Documents; (6) the issuance and distribution of the New Equity as provided herein; (7) adoption of the Management Equity Incentive Plan; and (8) all other acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the company structure of the Debtors, and any company action required by the Debtors in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtors.

On or (as applicable) prior to the Effective Date, the appropriate officers, managers, or authorized persons of the Debtors (including, any president, vice-president, chief executive officer, treasurer, general counsel, or chief financial officer thereof) shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtors including (1) the Exit Revolver Facility Agreement and the other Exit Revolver Facility Documents, (2) the New Corporate Governance Documents, and (3) any and all other agreements, documents, securities and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.O shall be effective notwithstanding any requirements under non-bankruptcy law.

P.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtors and the managers, officers, authorized persons and members of the boards of managers and directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Exit Revolver Facility Agreement, the New Debt Facility Agreement, and the New Corporate Governance Documents, and any securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

Q.      *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto or pursuant to the Exit Revolver Facility Documents shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption shall apply to the fullest extent permitted by law, but includes, without limitation, to (1) the creation of any mortgage, deed of trust, Lien, or other security interest; (2) the making or assignment of any lease or sublease; (3) any Restructuring Transaction; (4) the issuance, distribution, and/or sale of any of the New Equity and any other securities of the Debtors or the Reorganized Debtors; or (5) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any Restructuring Transaction occurring under the Plan.

R.      *Corporate Existence*

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval.

K&E

S.        *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein including for the avoidance of doubt, the Trust Documents (if applicable), on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan other than the assets placed into the Trust (if any) shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

T.        *Assumption of Directors and Officers Insurance Policies*

The Debtors do not believe that the D&O Liability Insurance Policies issued to, or entered into by, the Debtors prior to the Petition Date constitute Executory Contracts. To the extent that such insurance policies or agreements are considered to be Executory Contracts, then, notwithstanding anything in the Plan to the contrary, the Reorganized Debtors shall be deemed to have assumed all of the Debtors' unexpired D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations solely to the extent necessary to effectuate any provision of the D&O Liability Insurance Policies.

In addition, after the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on the Petition Date, with respect to conduct occurring prior thereto, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

U.        *Indemnification Provisions in New Corporate Governance Documents*

As of the Effective Date, the Indemnification Provisions shall be assumed and irrevocable and shall survive the effectiveness of the Plan and the New Corporate Governance Documents shall provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Debtors' Directors (other than the Apax Directors) and the Reorganized Debtors' directors, officers, employees, or agents, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and none of the Reorganized Debtors shall amend and/or restate the New Corporate Governance Documents before or after the Effective Date to terminate or materially adversely affect any of the Reorganized Debtors' obligations to provide such indemnification rights or such directors', officers', employees', or agents' indemnification rights.

V.        *Directors and Officers of Reorganized Cengage and the Other Reorganized Debtors*

On the Effective Date, all managers, directors, and other members of the existing boards or governance bodies of the Debtors, as applicable, shall cease to hold office or have any authority from and after such time to the extent not expressly included in the roster of the applicable New Board. Pursuant to section 1129(a)(5) of the Bankruptcy Code, to the extent known, the identity of the members of the New Board will be disclosed in the Plan Supplement.

1.        The New Board

The New Board of Reorganized Cengage shall, consistent with the Restructuring Support Agreement and the RSA Terms Sheets and subject to the terms of the New Corporate Governance Documents, consist of seven directors or managers, as applicable.

2.        Senior Management and Management Employment Agreements

The existing officers of the Debtors shall remain in their current capacities as officers of the Reorganized Debtors, subject to the ordinary rights and powers of the applicable New Board to remove or replace them in accordance with the New Corporate Governance Documents and any applicable employment agreements that are assumed, or assumed as amended, by the Reorganized Debtors pursuant to the Plan consistent with the Restructuring Support Agreement and RSA Term Sheets in all respects.

W.      *Management Incentive Plan*

On or as soon as practicable following the Effective Date, the New Board of Reorganized Cengage shall adopt the Management Incentive Plan.

X.      *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to Article VIII.C and Article VIII.E hereof) or transferred to the Trust (if applicable), the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any cause of action against them as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against each of them. Except with respect to Causes of Action as to which the Debtors or the Reorganized Debtors have released any Person or Entity on or prior to the Effective Date (pursuant to the Debtor Release or otherwise), the Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless a Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtors or the Reorganized Debtors expressly reserve such Cause of Action for later adjudication.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption of Executory Contracts and Unexpired Leases*

Except as otherwise provided herein, as of the Effective Date, all Executory Contracts and Unexpired Leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases will be deemed: (i) assumed by the applicable Debtor in accordance with, and subject to the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code; and (ii) if so indicated on the Schedule of Assumed Executory Contracts and Unexpired Leases, assigned to the other party identified as the assignee for each assumed Executory Contract and Unexpired Lease. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumption and assignment pursuant to section 365 and 1123 of the Bankruptcy Code.

B.      *Rejection of Executory Contracts and Unexpired Leases*

Except as otherwise provided herein, or in any contract, instrument, release, indenture or other agreement, or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have assumed each Executory Contract and Unexpired Lease to which it is a party, unless such Executory Contract or Unexpired Lease: (1) was previously rejected; (2) was previously expired or terminated pursuant to its own terms; (3) is the subject of a motion or notice to reject filed on or before the Confirmation Date; or (4) is designated specifically or by category as an Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases. For the avoidance of doubt, any Executory Contract or Unexpired Lease which does not appear on the Schedule of Rejected Executory Contracts and Unexpired Leases and which is not subject to one of the four conditions for assumption of Executory Contracts and Unexpired Leases listed in this paragraph shall be deemed assumed.

The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions and assignments or rejections described above as of the Effective Date. Unless otherwise indicated, all assumptions and assignments or rejections of Executory Contracts and Unexpired Leases in the Plan will be effective as of the Effective Date. Each Executory Contract and Unexpired Lease assumed and assigned pursuant to the Plan or by Bankruptcy Court order shall vest in and be fully enforceable by the applicable assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including, without limitation, any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Notwithstanding the foregoing paragraph or anything to the contrary herein, the Debtors reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases prior to the Effective Date or such other date as determined by the Bankruptcy Court (such date to be in no event earlier than the date of the entry of the Confirmation Order).

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, solely by payment of the Cure Cost or by an agreed-upon waiver or discharge of the Cure Cost on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the Debtors and the counterparties to each such Executory Contract or Unexpired Lease may otherwise agree.

Prior to the deadline for filing the Plan Supplement, the Debtors shall file the Schedule of Assumed Executory Contracts and serve upon counterparties to Executory Contracts and Unexpired Leases proposed for assumption, a notice that will list the proposed Cure Cost (if any), describe the procedures for filing objections to a proposed assumption or Cure Costs; and explain the process by which related disputes will be resolved by the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption and the Cure Cost (including a Cure Cost of $0.00) listed by the Debtors on any notice of assumption. Any objection to the assumption of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court on or before the Cure Bar Date. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or Reorganized Debtors', as applicable, first scheduled omnibus hearing after which such objection is timely filed. In the event of a dispute regarding: (1) the amount of any Cure Cost, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365(b) of the Bankruptcy Code, if applicable, under the Executory Contract or the Unexpired Lease to be assumed or assumed and assigned, and/or (3) any other matter pertaining to assumption and/or assignment, then such Cure Costs shall be paid following the entry of a Final Order resolving the dispute and approving the assumption and assignment of such Executory Contracts or Unexpired Leases or as may be agreed upon by the Debtors or the Reorganized Debtors and the counterparty to such Executory Contract or Unexpired Lease provided, that prior to the Effective Date, the Debtors, in consultation with the advisors to the Required Consenting Lenders and the First Lien Credit Facility Administrative Agent, or after the Effective Date, the Reorganized Debtors, may settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court; provided, further, that notwithstanding anything to the contrary herein, the Debtors reserve the right, in consultation with the advisors to the Required Consenting Lenders and the First Lien Credit Facility Administrative Agent, to either to reject or nullify the assumption of any Executory Contract or Unexpired Lease within 45 days after the entry of a Final Order resolving an objection to assumption, determining the Cure Cost under an Executory Contract or Unexpired Lease that was subject to a dispute, or resolving any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease.

Assumption and assignment of any Executory Contract or Unexpired Lease, pursuant to the Plan or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption and/or assignment.

D.      *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

        Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based upon the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed with the Notice, Claims, and Solicitation Agent no later than the later of (a) 30 days after the effective date of rejection of such Executory Contract or Unexpired Lease and (b) the Claims Bar Date established in these Chapter 11 Cases.

        All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as General Unsecured Claims and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

        Any Holder of a Claim arising from the rejection of an Executory Contract or Unexpired Lease for which a Proof of Claim was not timely Filed as set forth in the paragraph above shall not (a) be treated as a Holder of a Claim hereunder, (b) be permitted to vote to accept or reject the Plan, or (c) participate in any distribution in these Chapter 11 Cases on account of such Claim, and such Claim shall be deemed fully satisfied, released, settled, and compromised, and be subject to the permanent injunction set forth in Article VIII.F hereof, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.

E.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

        The Debtors reserve their right to assert that rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases.  Notwithstanding any non-bankruptcy law to the contrary, the Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased, or services previously received, by the contracting Debtors from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

F.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

        Unless otherwise provided in the Plan or the Plan Supplement, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

        Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during these Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.      *Reservation of Rights*

        Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtors have any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have 90 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

H.      *Nonoccurrence of Effective Date*

        In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided in the Plan, on the Initial Distribution Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class from the Disbursing Agent.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Holders of Allowed Claims shall be entitled to all dividends, accruals, and any other distributions on, and proceeds of, the distributions provided for herein, from and after the Effective Date, regardless of whether such distributions (or the proceeds thereof) are delivered on or at any time after the Effective Date.  Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any postpetition interest on such Claim payable in accordance with the Plan.  New Equity shall be deemed to be issued as of the Effective Date to the Holders of Claims entitled to receive the New Equity hereunder without the need for further action by any Disbursing Agent, Reorganized Debtors (including Reorganized Cengage), or any other Debtor, including without limitation the issuance and/or delivery of any certificate evidencing any such shares, units, or interests, as applicable.

B.    *Distributions Generally; Disbursing Agent*

All distributions under the Plan that are to be made on the Effective Date shall be made by the Debtors as Disbursing Agent or any other duly appointed Disbursing Agent, unless otherwise specified herein.  A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

C.    *Rights and Powers of Disbursing Agent*

1.    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to, as applicable:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated under the Plan; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

D.    *Distributions on Account of Claims Allowed After the Effective Date*

1.    Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

K&E

2.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision to the contrary in the Plan, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until the Disputed Claim has become an Allowed Claim in its entirety or has otherwise been resolved by settlement or Final Order.

E.    *Apax Distribution Holdback*

Notwithstanding anything in the Plan to the contrary, to the extent that, prior to the Effective Date, any party with standing asserts or brings (a) any cause of action or claim against Apax or (b) any objection to any Claim held by Apax, any distribution under the Plan owed to such Apax Entity in the capacity in which it is subject to such cause of action, claim, or objection shall not be distributed to such Apax Entity and shall be set aside and reserved by the Disbursing Agent, first lien disbursing agent, the trustee of the Trust, or the Reorganized Debtors, as applicable, until final resolution of all such causes of action, claims, or objection against such Apax Entity; provided that that if, as of any applicable distribution date, no party has objected to a Claim of such Apax Entity or the treatment of such Claim, the distribution on account of such Claim of such Apax Entity will not be subject to the holdback of this Article VI.E even if a party has sought money damages from such Apax Entity..  The Reorganized Debtors shall make appropriate reserves with respect to Cash, the New Equity, the New Debt Facility Consideration, and interests in the Trust (if applicable) on account of any held back distribution.  As soon as reasonably practicable after entry of a Final Order regarding any such cause of action, claim, or objection,  the Disbursing Agent, First Lien Credit Facility Disbursing Agent, trustee of the Trust, or the Reorganized Debtors, as applicable, shall make any Plan distributions previously held back to the extent Allowed by the Bankruptcy Court.

F.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed and when making distributions on or after the Effective Date, the Disbursing Agent shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.    Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtors' books and records as of the date of any such distribution; provided, that the manner of such distributions shall be determined at the discretion of the Disbursing Agent; and provided, further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.  If a Holder holds more than one Claim in any one Class, all Claims of the Holder will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

After the Confirmation Date, the First Lien Credit Facility Administrative Agent and the Prepetition Indenture Trustees may, in their respective sole discretion, limit the further assignment of Claims under their respective documents to allow for the accurate recording of the Holders of such Claims as of the Effective Date.

Distributions to Holders of First Lien Credit Facility Secured Claims and First Lien Credit Facility Deficiency Claims shall (a) be made by the Disbursing Agent to the first lien disbursing agent for the benefit of the respective Holders of First Lien Credit Facility Secured Claims and First Lien Credit Facility Deficiency Claims, as provided herein and (b) be deemed completed when made by the Disbursing Agent to the first lien disbursing agent.

Distributions to Holders of First Lien Notes Claims shall (a) be made by the Disbursing Agent to the first lien disbursing agent for the benefit of Holders of First Lien Notes Claims and (b) be deemed completed when made by the Disbursing Agent to the first lien disbursing agent.

Distributions to Holders of Second Lien Claims shall (a) be made by the Disbursing Agent to the Second Lien Indenture Trustee for the benefit of Holders of Second Lien Claims and (b) be deemed completed when made by the Disbursing Agent to the Second Lien Indenture Trustee.

Distributions to Holders of Senior Notes Claims shall (a) be made by the Disbursing Agent to the Senior Notes Indenture Trustee for the benefit of Holders of Senior Notes Claims and (b) be deemed completed when made by the Disbursing Agent to the Senior Notes Indenture Trustee.

Prior to the distribution of New Equity hereunder, the recipient of such New Equity shall furnish to the transfer agent identified by the Debtors such identification and other information as may be required by the Debtors.

3.      De Minimis; Minimum Distributions

The Disbursing Agent shall not be required to make partial distributions or payments of fractions of New Equity and such fractions shall be deemed to be zero.

No New Equity distribution or Cash payment valued at less than $50.00, in the reasonable discretion of the Disbursing Agent, shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

4.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

5.      Manner of Payment Pursuant to the Plan

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Disbursing Agent by check or by wire transfer.

G.      *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.      *Claims Paid or Payable by Third Parties*

1.      Claims Paid by Third Parties

No Holder of a Claim shall be entitled to recover more than 100% of its Claim. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the Reorganized Debtors to the extent the Holder's total recovery on account of such Claim from a third-party and under the Plan exceeds the Allowed amount of such Claim against such Debtor as of the date of any such distribution under the Plan.

2.      Claims Payable by Third Party Insurers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy; provided, that if the Debtors believe a Holder of an Allowed Claim has recourse to an insurance policy and intend to withhold a distribution pursuant to this Article VI.H.2, the Debtors shall cause the Disbursing Agent to provide written notice to such Holder as to what the Debtors believe to be the nature and scope of applicable insurance coverage.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Notwithstanding anything to the contrary contained herein (including Article VIII), nothing contained in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any cause of action that the Debtors or any other Entity may hold against any other Entity, including insurers, under any policies of insurance or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.      *Resolution of Disputed Claims*

1.      Allowance of Claims

On or after the Effective Date, the Reorganized Debtors shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim Allowed as of the Effective Date.  Except as expressly provided in the Plan or in any order entered in these Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in these Chapter 11 Cases allowing such Claim.

2.      Prosecution of Objections to Claims

The Debtors, prior to and on the Effective Date, or the Reorganized Debtors, after the Effective Date, shall have the exclusive authority to File objections to Claims, settle, compromise, withdraw, or litigate to judgment objections to any and all Claims.  From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court.  From and after the Effective Date, the Reorganized Debtors shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

3.      Claims Estimation

Prior to and on the Effective Date, the Debtors, and after the Effective Date, the Reorganized Debtors, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under sections 157 and 1334 of the Judicial Code to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy

   
Court.  In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Debtors or the Reorganized Debtors, as applicable, may elect to pursue additional objection to the ultimate distribution on account of such Claim.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Reorganized Debtors, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.  Notwithstanding anything to the contrary in this paragraph, nothing in this paragraph shall derogate in any way the rights under applicable law, independent of this paragraph, of the Holder of a Disputed Claim with respect to estimation and allowance of, and allocation and holding of any reserves in respect of, the Disputed Claim.

4.      Expungement or Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Debtors or the Reorganized Debtors, as applicable, and any Claim that has been amended may be adjusted thereon by the Debtors or the Reorganized Debtors in both cases without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

5.      Deadline to File Objections to Claims

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

B.      *Disallowance of Claims*

All Claims of any Entity from which property is sought by the Debtors under section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (1) the Entity, on the one hand, and the Debtors, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (2) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

**EXCEPT AS OTHERWISE AGREED BY THE DEBTORS, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.**

C.      *Amendments to Claims*

On or after the Effective Date, except as provided in Article II.A or Article V.D hereof, a Claim may not be amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors and any such unauthorized new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

# ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests; Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all debt (as such term is defined in section 101 of the Bankruptcy Code) that arose before the Confirmation Date, any debts of any kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, and the rights and Interests of any Holders of Interests whether or not:  (1) a Proof of Claim based on such debt or Interest is Filed; (2) a Claim or Interest based upon such debt is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and equity Interests subject to the Effective Date occurring, except as provided for under section 1141(d)(6) of the Bankruptcy Code.

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against the Debtors and their Estates and Causes of Action against other Entities.

B.      *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code or the Debtors or the Reorganized Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.  Notwithstanding anything herein to the contrary, and as provided in Article III of the Plan, no Holder of a Section 510(b) Claim shall receive any distribution on account of such Section 510(b) Claim, and all Section 510(b) Claims shall be extinguished.

C.      *Debtor Release*

**Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date, for the good and valuable consideration provided by each of the Releasees, the adequacy of which is hereby confirmed, each of the Debtors, the Reorganized Debtors, and the Debtors' Estates conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release and shall be deemed to have provided a full discharge and release to each Releasee (and each such Releasee so released shall be deemed fully released and discharged by the Debtors, the Reorganized Debtors, and the Debtors' Estates) and their respective property from any and all Claims, obligations, debts, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted or which could be asserted on behalf of the Debtors and/or the Reorganized Debtors, whether known or unknown, foreseen or unforeseen, existing or arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, their Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Restructuring Transactions, these Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or**

46

Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasee, the restructuring of Claims and Interests prior to or in these Chapter 11 Cases, the negotiation, formulation, or preparation of the Restructuring Support Agreement, the RSA Term Sheets, the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments, or other documents; **provided**, that the foregoing "Debtor Release" shall not operate to waive or release any Claims, obligations, debts, rights, suits, damages remedies, Causes of Action, and liabilities of any Debtor:  (1) arising under the Exit Revolver Facility Documents or any other agreements entered into pursuant to the Plan, or (2) expressly set forth in and preserved by the Plan, the Plan Supplement, or related documents. For the avoidance of doubt, none of Apax, any Apax Director, any Affiliated Lender, or any Affiliated Institutional Lender shall be deemed a Releasee or otherwise benefit from the releases granted in this Article VIII.C of the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, **and** **further**, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Releasees; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

D.      *Third-Party Release*

Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date, a Releasing Party that elects on its Ballot to grant the Third-Party Release contained in this Article VIII.D of the Plan shall, to the maximum extent permitted by applicable law, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release (and each Entity so discharged and released shall be deemed discharged and released by the Releasing Parties) the Releasees and their respective property from any and all Claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative Claims asserted or which could be asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Restructuring Transactions, these Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasee, the restructuring of Claims and Interests prior to or in these Chapter 11 Cases, the negotiation, formulation, or preparation of the Restructuring Support Agreement, the RSA Term Sheets, the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments, or other documents; **provided**, that the foregoing "Third-Party Release" shall not operate to waive or Release any Claims, obligations, debts, rights, suits, damages, remedies, causes of action, and liabilities of any Releasing Party:  (1) against a Releasee arising under the Exit Revolver Facility Agreement or any other agreements entered into pursuant to the Plan; (2) expressly set forth in and preserved by the Plan, the Plan Supplement, or related documents; (3) with respect to Professionals' final fee applications or Accrued Professional Compensation Claims in these Chapter 11 Cases; or (4) solely arising out of or relating to acts or omissions occurring after the Confirmation Date; **provided** **further**, that any Holder of a Claim that is entitled to vote on the Plan and does not elect to opt in to the Third-Party Release shall not receive the benefit of the Third-Party Release.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, **and**, **further**, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) in exchange for the good and valuable consideration provided by the Releasees; (2) a good faith settlement and compromise of the claims released by the Third-Party Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release.

47

E.        *Exculpation*

Notwithstanding anything contained herein to the contrary, the Exculpated Parties shall neither have, nor incur any liability to any Entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan, or consummating the Plan, the transactions contemplated by Restructuring Support Agreement, the RSA Term Sheets, the Disclosure Statement, the New Corporate Governance Documents, the Restructuring Transactions, the issuance, distribution, and/or sale of any shares of the New Equity or any other security offered, issued, or distributed in connection with the Plan, these Chapter 11 Cases or any contract, instrument, release or other agreement, or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; <u>provided</u>, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement; <u>provided</u>, <u>further</u>, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; <u>provided</u>, <u>further</u>, that the foregoing "Exculpation" shall have no effect on the liability of any Entity for acts or omissions occurring after the Effective Date.

F.        *Injunction*

**Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims, Interests, causes of action, or liabilities that: (1) are subject to compromise and settlement pursuant to the terms of the Plan; (2) have been released pursuant to Article VIII.C hereof; (3) have been released pursuant to Article VIII.D hereof; (4) are subject to Exculpation pursuant to Article VIII.E hereof (but only to the extent of the Exculpation provided in Article VIII.E); or (5) are otherwise stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner any action or other proceeding, including on account of any Claims, Interests, causes of action, or liabilities that have been compromised or settled against the Debtors, the Reorganized Debtors, or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) on account of or in connection with or with respect to any released, settled, compromised, or exculpated Claims, Interests, causes of action, or liabilities.**

G.        *Setoffs*

Except as otherwise provided herein and subject to applicable law, the Debtors pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off against any Allowed Claim or Interest (which setoff shall be made against the Allowed Claim or Interest, not against any distributions to be made under the Plan with respect to such Allowed Claim or Interest), any Claims, rights, and Causes of Action of any nature that such Debtor may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise), and any distribution to which a Holder is entitled under the Plan shall be made on account of the Claim or Interest, as reduced after application of the setoff described above.  In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or Cause of Action of the Debtors unless such Holder obtains entry of a Final Order entered by the Bankruptcy Court authorizing such setoff or unless such setoff is otherwise agreed to in writing by the Debtors and a Holder of a Claim or Interest; <u>provided</u>, that, where there is no written agreement between the Debtors and a holder of a claim authorizing such setoff, nothing herein shall prejudice or be deemed to have prejudiced the Debtors' rights to assert that any Holder's setoff rights were required to have been asserted by motion to the Bankruptcy Court prior to the Effective Date.

H.        *Special Provision Governing Accrued Professional Compensation Claims and Final Fee Applications*

For the avoidance of doubt, the foregoing Debtor Release and Third-Party Release shall not waive, affect, limit, restrict, or otherwise modify the right of any party in interest to object to any Accrued Professional Compensation Claim or final fee application Filed by any Professional in these Chapter 11 Cases.

# ARTICLE IX.
## CONDITIONS PRECEDENT TO CCONSUMMATION OF THE PLAN

A.      *Conditions Precedent to Consummation of the Plan*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.      The Confirmation Order shall have been duly entered and shall be a Final Order;

2.      The Confirmation Order shall include a total enterprise value for the Debtors.

3.      The Exit Revolver Facility Agreement shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent to the consummation of the Exit Revolver Facility shall have been waived or satisfied in accordance with the terms thereof and the closing of the Exit Revolver Facility shall have occurred;

4.      The New Debt Facility Agreement shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent to the consummation of the New Debt Facility shall have been waived or satisfied in accordance with the terms thereof and the closing of the New Debt Facility shall have occurred;

5.      All governmental and material third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained and shall be in full force and effect (which, in the case of an order of judgment of any Court, shall mean a Final Order), and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions; and

6.      All documents and agreements necessary to implement the Plan and all actions to be taken thereunder shall have (a) been authorized by the Bankruptcy Court pursuant to the Confirmation Order, (b) been tendered for delivery, and (c) been effected or executed by all Entities party thereto, or will be deemed executed and delivered by virtue of the effectiveness of the Plan as expressly set forth herein, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

B.      *Waiver of Conditions*

The conditions to the Effective Date of the Plan set forth in this Article IX may be waived only by the Debtors with the consent of the Required Consenting Lenders.

C.      *Effective Date*

The Effective Date shall be the first Business Day upon which all of the conditions specified in Article IX.A hereof have been satisfied or waived.  "Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

D.      *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Person or Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Consistent with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors expressly reserve their rights to alter, amend, or modify the Plan with respect to the Debtors, one or more times, after solicitation or Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan but may only materially alter, amend, or modify the Plan with the consent of the Required Consenting Lenders and subject to the terms of the Restructuring Support Agreement.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X hereof.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan or Disclosure Statement shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date the Bankruptcy Court shall retain such jurisdiction over these Chapter 11 Cases and all matters, arising out of, or related to, these Chapter 11 Cases and the Plan, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Costs pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6. adjudicate, decide, or resolve any and all matters related to Causes of Action;

7. enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8. enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, Exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.H.1 hereof;

13. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with or relate to the Plan, the Restructuring Support Agreement, the RSA Term Sheets, the New Corporate Governance Documents, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15. adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

16. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

17. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

18. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

19. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20. hear and determine all disputes involving the existence, nature, or scope of all releases set forth herein, including any dispute relating to any liability arising out of the termination of employment or the

termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

21.     enforce all orders previously entered by the Bankruptcy Court;

22.     resolve any disputes arising under the Restructuring Support Agreement, RSA Term Sheets, and the New Corporate Governance Documents;

23.     hear any other matter not inconsistent with the Bankruptcy Code;

24.     enter an order concluding or closing these Chapter 11 Cases; and

25.     enforce the injunction, release, and Exculpation provisions set forth in Article VIII hereof;

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.     *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.     *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Debtors (prior to or on the Effective Date) or the Reorganized Debtors (after the Effective Date) for each quarter (including any fraction thereof) until these Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.     *Dissolution of the Committee; Post-Effective Date Unsecured Creditor Representatives Committee*

On the Effective Date, the Committee shall dissolve automatically and the members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code.  On the Effective Date, there shall be appointed the Post-Effective Date Unsecured Creditor Representatives Committee, which shall be subject to the jurisdiction of the Bankruptcy Court.  The Post-Effective Date Unsecured Creditor Representatives Committee shall be three members selected by the Committee.  The Post-Effective Date Unsecured Creditor Representatives Committee shall only have standing and power to participate in negotiations and court proceedings as the deemed successor-in-interest to the Committee related to the Unsecured CLAI Recovery and the Unsecured CLI Recovery.

Unless the Post-Effective Date Unsecured Creditor Representatives Committee votes to disband earlier, the existence of the Post-Effective Date Unsecured Creditor Representatives Committee, and all powers associated therewith, shall terminate upon the determination of the Unsecured CLAI Recovery and the Unsecured CLI Recovery.  The reasonable and documented fees and expenses of the professional advisors of the Post-Effective Date Unsecured Creditor Representatives Committee incurred in connection with any of the

K&E

foregoing post-Effective Date activities shall be paid solely from the Unsecured CLAI Recovery and the Unsecured CLI Recovery other than such Unsecured CLAI Recovery and Unsecured CLI Recovery allocable to the Holders of Allowed First Lien Deficiency Claims.

E.      *Payment of Restructuring Support Agreement Professional Fees*

Without any further notice to or action, order, or approval of the Bankruptcy Court, the Reorganized Debtors shall pay and shall continue to pay post Effective Date, when due and payable, all (a) reasonable and documented fees and expenses incurred by the Ad Hoc First Lien Group, including, without limitation, the reasonable and documented fees and expenses incurred by Milbank Tweed, Hadley & McCloy LLP, as counsel to the Ad Hoc First Lien Group, and Houlihan Lokey Capital, Inc., as financial advisors to the Ad Hoc First Lien Group, (b) reasonable and documented fees and expenses incurred by the First Lien Credit Agreement Administrative Agent, including counsel to the First Lien Credit Agreement Administrative Agent, Davis Polk & Wardwell LLP, and the financial advisor to the First Lien Credit Agreement Administrative Agent, Blackstone Advisory Partners, L.P., and (c) reasonable and documented fees and expenses of the First Lien Indenture Trustee, including, counsel to the First Lien Indenture Trustee, Katten Muchin Rosenman LLP, counsel to the First Lien Indenture Trustee; provided that fees and expenses incurred in connection with the Unsecured CLAI Recovery, the Unsecured CLI Recovery, or any Cause of Action transferred to the Trust hereunder (if applicable) including, without limitation, in connection with determination, litigation, negotiation, or administration of the Unsecured CLAI Recovery, the Unsecured CLI Recovery, or the Trust (if applicable) shall be paid solely from the Unsecured CLAI Recovery and the Unsecured CLI Recovery other than such Unsecured CLAI Recovery and Unsecured CLI Recovery allocable to the Holders of Allowed First Lien Deficiency Claims.

F.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

G.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

H.      *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors shall be served on:

> Cengage Learning, Inc.
> 200 First Stamford Place, 4th Floor
> Stamford, Connecticut 06902
> Attention: Kenneth Carson, General Counsel
>
> with copies to:
>
> Kirkland & Ellis LLP
> 601 Lexington Avenue
> New York, New York 10022
> Attention: Jonathan S. Henes and Christopher Marcus
>
> Kirkland & Ellis LLP
> 300 North LaSalle
> Chicago, Illinois 60654
> Attention: James H.M. Sprayregen and Ross M. Kwasteniet

I.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

J.      *Entire Agreement*

Except as otherwise indicated, on the Effective Date, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations with respect to the subject matter of the Plan, all of which will have become merged and integrated into the Plan on the Effective Date.  To the extent the Confirmation Order is inconsistent with the Plan, the Confirmation Order shall control for all purposes.

K.      *Severability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

Respectfully submitted, as of the date first set forth above,

Cengage Learning, Inc. (for itself and all Debtors)

By:    *Dean D. Durbin*
Name:    Dean D. Durbin
Title:    Chief Financial Officer
         Cengage Learning Holdings II L.P.

**Exhibit A**

**Management Incentive Plan**