# **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| CENGAGE LEARNING, INC., *et al.* | : | Case No. 13-44106 (ESS)<br>Case No. 13-44105 (ESS)<br>Case No. 13-44107 (ESS)<br>Case No. 13-44108 (ESS) |
| Debtors. | : | |
| | : | (Jointly Administered) |

**DECLARATION OF MANUEL GUZMAN IN SUPPORT OF THE MOTION OF MANUEL GUZMAN AND RICHARD FOLEY SEEKING ENTRY OF AN ORDER DEEMING THEM NON-INSIDERS ENTITLED TO RECEIVE SEVERANCE BENEFITS PURSUANT TO THE FINAL SEVERANCE ORDER**

Pursuant to 28 U.S.C. § 1746, I, Manuel Guzman, hereby submit this declaration (the "Guzman Declaration") under penalty of perjury:

1. Until the beginning of this year, I was the Executive Vice President of Learning and Research Solutions and International of Cengage Learning, Inc. ("Cengage"), the primary operating debtor of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2. The Debtors are a large multi-national company, which provides on a global level content, innovative print and digital teaching and learning solutions, software, and associated educational services for the higher-education, research, school, career, professional, and international markets. The Debtors manage their operations from various locations throughout the United States and internationally, with their headquarters office located in Stamford, Connecticut.

3. As of the Petition Date, the Debtors employed approximately 5,200 employees worldwide. In the months leading up to the Petition Date, the Debtors

implemented various reductions in force, resulting in approximately 170 Eligible Employees being severed from the Debtors' employ. I was one of the employees included in the Debtors' reductions in force.

4. Specifically, I served as Executive Vice President of Learning and Research Solutions and International from July 2010 to February 2013, when I was terminated by Cengage pursuant to the terms of the Separation Agreement and General Release dated January 25, 2013 (the "Guzman Separation Agreement")[1]. Prior to July 2010, I served as the Executive Vice President of Finance and Operations for the Cengage's Academic and Professional Group.

5. As part of their first day motions, the Debtors sought Bankruptcy Court authorization to pay prepetition wages, salaries and other compensation, including authorization to continue to honor in the ordinary course of business approximately $7 million in prepetition obligations under the Debtors' "Severance Program."

6. On August 2, 2013, the Bankruptcy Court entered a Final Order Authorizing, But Not Directing, Payments of Prepetition (I) Wages, Salaries, and Other Compensation; (II) Reimbursement Employee Expenses; And (III) Employee Medical and Similar Benefits (the "Final Severance Order"). The Final Severance Order authorized the Debtors to honor the Severance Program, except that the Order states that "no payments on account of the Debtors' prepetition Severance Program shall be made to Insiders".

7. During this time, I was informed by the Debtors that they would not be honoring my Separation Agreement because they view me as having been an "Insider" of

[1] The Guzman Separation Agreement contains a confidentiality provision and thus has not been included as an Exhibit hereto. My counsel is seeking a waiver from the Debtors with respect to this confidentiality provision in order to disclose my Separation Agreement to the Court prior to a hearing on the Motion. To the extent the Debtors will not waive confidentiality, we will file a separate motion to file the Separation Agreements with the Court under seal

the Debtors due to my title as Executive Vice President and the fact that I reported to the CEO as part of my duties.

8. Notwithstanding the Debtors' position, which I believe unnecessarily seeks to pigeon hole me as an Insider based on my title without evaluating my substantive role and responsibilities as an employee, I do not believe that I qualify as an Insider as I understand that term is used under the Bankruptcy Code. I, therefore, have, together with another severed Executive Vice President, Richard Foley, filed a motion seeking entry of an order deeming us non-insiders entitled to receive severance benefits pursuant to the Final Severance Order.

**A. I Was Not a Director of the Debtors**

9. It is my understanding that the term "director" generally means an individual who sits on the board of directors of a corporation or holds the legal rights that a typical corporate director would hold. While an employee of Cengage, I did not serve on the Debtors' Board of Directors. Moreover, I did not report to the Board, I did not implement corporate policy, and I never engaged in any corporate governance activities. Instead, I took direction on sales initiatives set out by the Debtors' executive management team. As an EVP, I did not have decision-making authority akin to an executive, and was required to follow top-down direction from my superiors.

**B. I Was Not an Officer of the Debtors**

10. It is my further understanding that the term "officer" generally means a person elected or appointed by the board of directors to manage the daily operations of a corporation. I was not elected by the Debtors' Board of Directors. Additionally, I did not

manage the daily operations of the Debtors' businesses, and was required to follow directives from the Debtors' senior management.

11. During my tenure as EVP of Learning and Research Solutions and International, I was responsible for one aspect of the Debtors' business involving the Debtors' academic, professional and library markets product development programs, as well as their international businesses. Specifically, I was focused on accelerating growth of the Debtors through a fully integrated and aligned global product development process. My specific focus was on sales growth.

12. In my role as EVP of Learning and Research Solutions and International, I reported to the Debtors' Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO") on significant matters pertaining to the Debtors' product development programs and international businesses, who in turn reported to the Debtors' Board of Directors.

13. During my tenure as EVP of Learning and Research Solutions and International, I did not have discretionary control over substantial budgetary amounts. Instead, I was responsible for creating draft budgets for the Learning and Research Solutions and International divisions, which were then submitted to the Debtors' CFO for review and approval. While the approved budgets afforded me limited discretion on certain expenditures, any large expenditures or deviations from the approved budgets required CFO, CEO or Board approval.

14. My duties as EVP of Learning and Research Solutions and International did not include setting corporate policy nor did I have the unilateral authority to make any company-wide strategic decisions. Instead, my primary objective as EVP was to manage the Debtors' product development programs and international businesses and implement

the corporate policies established by the Debtors' senior management and the Board of Directors. Thus, any corporate action I took as EVP was within the parameters established by senior management and the Board, and any significant deviation therefrom required CEO or CFO authorization.

**C. I Was Not a Person in Control of the Debtors**

15. Lastly, I was not a "person in control" of the Debtors. Specifically, I never had sufficient authority over the Debtors so as to unqualifiably dictate corporate policy and the disposition of corporate assets. As noted above, I did not have discretionary control over budgetary amounts, nor did I oversee the Debtors' strategic plan or determine the disposition of corporate funds with respect to strategic investing or financing activities. I was given limited discretionary control over corporate assets for my respective division subject to a budget, which was required to first be approved by the Debtors' CFO and then the Debtors' Board. Once approved, I had discretion to dispose of such funds within the approved budget. However, further approval from the CFO and Board was required to dispose of funds outside of the approved budget. Moreover, I did not oversee the Debtors' strategic plan or determine the disposition of corporate funds with respect to strategic investing or financing activities. Lastly, I did not report to the Board, nor was I granted significant decision making authority akin to an executive. My primary responsibility was handling a sales growth for part of the Debtors' businesses. As a result, I do not believe that I was a person in control of the Debtors, and, therefore, I was not an Insider of the Debtors

**D. My Separation Agreement Was Part of the Debtors' Standard Severance Program**

16. Further evidence that I was not an Insider of the Debtors is that my Separation Agreement was part of the Debtors' standard employee Severance Program, typical of other EVPs.

17. Under the terms of the Guzman Separation Agreement, the Debtors agreed to pay me fifty-two weeks of severance (the "Severance Period") and (2) an incentive bonus, provided that I successfully completed the transition of my key roles and responsibilities to my successor. These payments were consideration for my agreement to an expansive non-compete clause which severely restricts my ability to seek employment in the print and digital information services industry for the educational and library reference markets during the Severance Period.

18. Upon information and belief, my severance arrangement was standard under the Debtors' employee Severance Program, and substantially similar to the severance arrangements reached with the Debtors' other non-insider employees who were covered by the Final Severance Order.

19. In sum, I believe that the Debtors have elevated form over substance by determining that I was an Insider based solely on my title as EVP and the fact that I reported to the CFO and CEO. If one digs deeper into my role and responsibilities while employed by Cengage, it is clear that I did not have the requisite authority or control over the Debtors' business operations, strategic planning or investing, financing activities or corporate governance to be deemed to be an Insider as such term is used under the Bankruptcy Code.

20. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing is true and correct.

Brooklyn, New York
Dated: August 27, 2013

/s/ Manuel Guzman
Manuel Guzman