<u>Hearing Date</u>: September 11, 2013 at 9:30 a.m.
<u>Objection Deadline</u>: September 4, 2013 at 4:00 p.m.

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine
Bertrand J. Choe
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

*Attorneys for The Bank of New York Mellon,
Solely in its Capacity as Indenture Trustee*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CENGAGE LEARNING, INC., *et al.*,[1] | : | Case No. 13-44106 (ESS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-----------------------------------------------------------------x

**OBJECTION OF THE BANK OF NEW YORK MELLON TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER GRANTING LEAVE, STANDING, AND SOLE AUTHORITY TO COMMENCE, PROSECUTE, LITIGATE AND SETTLE CLAIMS AND CAUSES OF ACTION ON BEHALF OF THE DEBTORS AND DEBTORS' ESTATES RELATING TO <u>DISPUTED COLLATERAL</u>**

The Bank of New York Mellon ("<u>BNYM</u>"[2]), through its undersigned counsel, submits

this objection (this "<u>Objection</u>") to the *Motion of the Official Committee of Unsecured Creditors*

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, include: Cengage Learning, Inc. (4491); Cengage Learning Acquisitions, Inc. (0935); Cengage Learnings Holdings II, L.P. (5675); and Cengage Learning Holdco, Inc. (0831). The Debtors' service address at their corporate headquarters is 200 First Stamford Place, 4th Floor, Stamford, Connecticut 06902.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Final Order (I) Authorizing the Use of Cash Collateral and (II) Granting Adequate Protection to Prepetition Secured Parties* [ECF No. 303]. Emphasis is ours unless otherwise noted.

*for Entry of an Order Granting Leave, Standing, and Sole Authority to Commence, Prosecute, Litigate and Settle Claims and Causes of Action on Behalf of the Debtors and Debtors' Estates Relating to Disputed Collateral* [ECF No. 337] (the "<u>Motion</u>"), and respectfully represents as follows:

## OBJECTION

1. In the Committee's continuing effort to take control of certain potential (and disputed) claims that belong to the Debtors' estates, the Committee makes repeated blanket accusations of alleged conflicts of interest with no supporting evidence or corresponding harm to the Debtors' estates. The Committee's claims are based on speculation that is mitigated by the fact that, since the inception of these chapter 11 cases, the Debtors not only acknowledge the possible existence of certain claims, but also repeatedly reserve their rights to bring causes of actions related thereto, and are currently investigating such claims.[3]

2. Notwithstanding these purported conflicts, the Debtors remain the fiduciaries in the best position to evaluate not only the merits of the Claims (as defined in the Motion), but also the costs and benefits related to the prosecution of those Claims. Further, any resolution of these purported Claims by the Debtors will be subject to this Court's oversight, and ultimate approval. Thus, rather than speculating about conflicts that "could jeopardize the legitimacy of any outcome" (Motion ¶ 9), the integrity of the process is ensured by this Court and the open process necessary for any resolution of any potential claims that could be brought by the estate, including the Claims described in the Committee's Motion. If the Debtors choose to bring such claims, there will either be a judgment by the court after trial, or a settlement that is subject to review of the court pursuant to Rule 9019 after notice and a hearing at which creditors, including the

---

[3] (*See generally* Debtors' Motion for Interim and Final Orders (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; and (III) Scheduling a Final Hearing [ECF No. 7].)

Committee, may voice any and all of their concerns. Either way, any outcome regarding the Claims will ultimately be determined by this Court, thus ensuring the avoidance of "any impropriety or bias," for which the Committee inappropriately suggests is present here. (Motion ¶ 9.)

3. As to the purported "conflicts" identified by the Committee in the Motion, there is no evidence to suggest that such conflicts have resulted in any detriment to the estate, as the Debtors have exercised their duty to evaluate and pursue the Claims. Instead of showing examples of how the Debtors *have* breached their fiduciary duties to the estates due to having actually failed to bring causes of actions due to the possible existence of potential conflicts, the Committee merely speculates that the Debtors *may* breach their fiduciary duties by failing at some point in the future to bring causes of actions predicated on the Claims. (*See, e.g.,* Motion ¶ 4 ("[I]t is unlikely that Apax *will permit* the Debtors to vigorously pursue the Copyright Claims.").) Such a showing is not enough to justify granting the Committee standing; it must show *actual* failure or inability to prosecute a cause of action. *See, e.g., In re Ribkov Realty Corp.*, No. 99-CV-984(JG), 1999 WL 529557 (E.D.N.Y. July 21, 1999) (citations omitted). However, the Debtors and their respective boards of directors owe fiduciary duties to the estates. As such, they are bound to make decisions that, in their best judgment, will result in a maximization of value to the estate, and there is no factual basis to suggest that they cannot fulfill those obligations.

4. The First Lien Secured Parties dispute the Committee's contentions with respect to the Claims, and, while the ultimate merits of the Claims are not before the Court, the First Lien Secured Parties submit that the Disputed Collateral or any meaningful value related to such

100016918

Collateral is fully encumbered by the liens of the First Lien Secured Parties.[4]  Indeed, one of the issues that the Debtors must weigh with respect to asserting the Claims is the likelihood of success on the merits and the impact on the enterprise even if certain actions may be successful. The First Lien Secured Parties are owed well over $4 billion, making them the largest stakeholders in these estates (both secured and unsecured) even if certain liens were to be avoided or assets determined to be unencumbered.  Thus, it is a reasonable exercise of the Debtors' fiduciary duties to analyze not just the potential for success, but the value to the estates of any such victories and weighing such value against the cost of pursuing the Claims.

5.      Finally, BNYM supports the suggestion of the First Lien Group in the First Lien Group Response (as defined below) regarding entry of an order (i) directing the parties to submit the Claims to mediation and (ii) permitting the Committee to participate in such mediation proceedings without any waiver or prejudice to the parties' respective rights with respect to standing.

## JOINDER

6.      BNYM hereby joins in the arguments set forth in the *Response of First Lien Group to Motion of the Official Committee of Unsecured Creditors for Order Granting Leave, Standing, and Sole Authority to Commence, Prosecute, Litigate and Settle Claims and Causes of Action on Behalf of the Debtors and Debtors' Estates Relating to Disputed Collateral* (the "First Lien Group Response"), filed by the First Lien Group on September 4, 2013.

---

[4] At such appropriate time, BNYM is fully prepared to address the merits of the Claims and the fallacy of the Committee's assertions to the contrary.  BNYM expressly reserves and preserves all of its rights, remedies and defenses, as applicable, with respect to these chapter 11 cases generally, the Debtors, the Committee, the other parties in interest, the Plan, and the subject matter of the Motion (including, but not limited to, the Disputed Copyrights, the Copyright Claims, the Disputed Cash, and the Claims), and nothing herein is intended to be, nor should be construed as, a waiver of any such rights, remedies or defenses.

4

100016918

## CONCLUSION

WHEREFORE, for the foregoing reasons, BNYM requests that the Court deny the Motion in full, and grant such other relief as is necessary or appropriate.

Dated: New York, New York
September 4, 2013

                                        KATTEN MUCHIN ROSENMAN LLP
*Attorneys for The Bank of New York Mellon, Solely in its Capacity as Indenture Trustee*

By: */s/ Karen B. Dine*
      Craig A. Barbarosh
      David A. Crichlow
      Karen B. Dine
      Bertrand J. Choe
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776