**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENGAGE LEARNING, INC., *et al.*, | ) Case No. 13-44106 (ESS) |
| | ) Case No. 13-44105 (ESS) |
| | ) Case No. 13-44107 (ESS) |
| | ) Case No. 13-44108 (ESS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## ORDER SELECTING MEDIATOR
## AND GOVERNING MEDIATION PROCEDURE

By this Order (the "*Order*"), the Court authorizes the Honorable Robert D. Drain, of the United States Bankruptcy Court for the Southern District of New York, to serve as a mediator (the "*Mediator*") in the above-captioned chapter 11 cases of Cengage Learning, Inc. ("*Cengage*") and its debtor affiliates, as debtors and debtors in possession (collectively, the "*Debtors*").

## RECITALS

A.   **WHEREAS**, on July 2, 2013, the Debtors each commenced a voluntary case (collectively, the *"Chapter 11 Cases"*) under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Eastern District of New York (the "*Court*");

B.   **WHEREAS**, on September 9, 2013, the Debtors filed the *Debtors' Motion for Entry of an Order (A) Approving Appointment of a Mediator and Scheduling Mediation in Connection with Confirmation of the Debtors' Plan, (B) Scheduling Certain Hearing Dates and Deadlines in Connection with Confirmation of the Debtors' Plan, and (C) Scheduling Certain*

*Hearing Dates and Deadlines in Connection with Certain Contested Issues Relating to the Debtors' Plan* [Docket No. 416] (the "***Mediation Motion***");

C.     **WHEREAS**, at the hearing on September 11, 2013 (the "***Hearing***"), each of the Debtors' major stakeholders, including the Official Committee of Unsecured Creditors (the "***Committee***"), JPMorgan Chase Bank, N.A., The Bank of New York Mellon, CSC Trust Company of Delaware, Apax Partners, L.P., Centerbridge Partners, L.P., Wells Fargo Bank, N.A., Wilmington Trust, N.A., and the ad hoc group of first lien lenders (each a "***Party***" and collectively, the "***Parties***"), through each of their respective counsels, indicated on the record that it was supportive of the appointment of a mediator in these Chapter 11 Cases;

D.     **WHEREAS**, the Court indicated on the record that it would contact the Mediator to determine his availability and willingness to mediate in these Chapter 11 Cases;

E.     **WHEREAS**, the Debtors believe that the Parties each desire to attempt to negotiate consensual resolution of issues and disputes related to the case and a plan of reorganization (the "***Plan***") in these Chapter 11 Cases; and

F.     **WHEREAS**, the Debtors believe that mediation may contribute to a consensual resolution of these Chapter 11 Cases through the compromise or settlement of disputed issues and negotiation of a consensual Plan.

## ORDER

**NOW, THEREFORE,** in consideration of the foregoing recitals, which are incorporated into this Order, the Court hereby orders as follows:

1.      The Court authorizes and appoints the Honorable Robert D. Drain, United States Bankruptcy Judge for the Southern District of New York, to serve as Mediator in these Chapter 11 Cases and to conduct the mediation as set forth herein (the "***Mediation***").

2.      As outlined on the record at the Hearing, the Mediator is authorized to mediate any issues concerning, among other things, the allocation of estate value among the various creditor constituencies and the terms of a plan of reorganization for the Debtors, including the following disputes[1]:

- the total enterprise value of the Debtors;

- foreign and domestic subsidiary valuation;

- the Disputed Copyrights (including products and proceeds) and the terms of any licensing arrangements thereof proposed in the Debtors' contemplated plan of reorganization;

- whether the First Lien Lenders can assert their total claim against each Debtor;

- whether the First Lien Lenders have any valid or perfected liens on the Debtors' cash, including the Disputed Cash;

- the 2007 Leveraged Buy-Out;

- the March 2013 revolver draw and the Debtors' use of the proceeds thereof (and similar issues relating to fundings to CLI under the Debtors' cash management system);

- substantive consolidation;

---

[1] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Mediation Motion.

- issues regarding Apax Partners, L.P.;

- whether certain intercompany obligations are properly classified as debt or equity or subject to equitable subordination or other claims or defenses, and other intercompany issues relevant to any of the Parties;

- certain intercreditor issues, including the Apax Partners, L.P. declaratory judgment complaint, rights pursuant to the intercreditor agreements, including the applicability of turnover provisions, and claims made by various Parties of breach of the intercreditor agreements by certain of the parties thereto;

- issues regarding the trust structure of the Debtors' contemplated plan of reorganization, governance of the trust and the proposed use, sale or lease of any assets placed in trust; and

- certain other plan confirmation or other issues appropriate for mediation, as determined by the Parties and the Mediator.

3. The Parties shall meet and confer with the Mediator to establish procedures and timing for the mediation.

4. Unless otherwise directed by the Mediator, each of the Parties, including their respective principals, attorneys, and advisors, may attend and participate in the mediation sessions.

5. The Mediator may require each Party participating in the mediation sessions to appear with at least one (1) principal or other individual with authority to make a decision binding upon such Party; provided, however, that (i) JPMorgan Chase Bank, N.A., in its capacity as administrative agent for the first lien credit facility, does not have the authority to bind individual lenders under the credit facility, and JPMorgan Chase Bank, N.A. solely has the power to bind itself in its capacity as a lender, and (ii) The Bank of New York Mellon, in its

capacity as indenture trustee with respect to the first lien notes, does not have the authority to bind individual holders of the notes under the indenture.

6. On or before the first mediation session or submission to the Mediator, each Party shall submit to the Mediator and each other Party a separate statement setting forth with specificity such Party's claims against and/or interests in the Debtors (the "*Ownership Statement*"), provided, however, that the Committee shall not be required to submit an Ownership Statement, provided, further, however, that, except as provided below, if any individual member of the Committee participates in the mediation in its individual capacity such party shall submit an Ownership Statement. Any Party or its counsel that represents more than one claim or interest holder, or represents a party that in an agency or trustee capacity has received direction from one or more claim or interest holder(s) with respect to these Chapter 11 Cases, shall complete a separate Ownership Statement for each claim or interest holder that such Party represents or from whom it takes direction. Notwithstanding the foregoing, any administrative agent or indenture trustee participating in the Mediation solely as agent or trustee for the holders of the respective debt instrument shall not be required to complete an Ownership Statement so long as such agent or trustee shall not be subject to any direction from any such holders concerning the Mediation or the issues to be addressed in Mediation by such agent or trustee. Any administrative agent or indenture trustee that participates in the Mediation must abide by the Absolute Mediation Privilege (as defined below) in any discussions with the holders of its respective debt instrument. The Ownership Statement shall include (a) the name and address of the Party and (b) the face amount of each disclosable economic interest (as defined in Bankruptcy Rule 2019) held in relation to the Debtors as of the date of the Ownership Statement.

If any fact disclosed in an Ownership Statement changes materially during the course of the Mediation, such Party shall promptly submit a supplemental Ownership Statement setting forth the materially changed fact.

7. Subject to the consent of the Mediator and the Parties, the Parties may schedule mediation sessions as necessary.

8. Subject to the written consent of each of the Parties and the Mediator (including via email), any other party may participate in the Mediation.

9. The results of the Mediation are non-binding.

10. There shall be an absolute mediation privilege, and all communications made by a Party (a "*Disclosing Party*") in connection with the Mediation, including discussions or communications with or in the presence of the Mediator, shall be confidential, protected from disclosure (and shall not be disclosed) to other Parties (except as such Disclosing Party may agree) or to third parties (including holders of securities or claims for which the Party is acting in a representative or trustee capacity to the extent such holders are not themselves Parties), shall not constitute a waiver of any existing privileges and immunities, and shall not be used for any purpose other than the mediation (the "*Absolute Mediation Privilege*"). Submissions by each Party (or any third party participant) to the Mediator, including correspondence, offers or counteroffers made in connection with the mediation, shall not be submitted to any other person or entity without the consent of the submitting Party (or any submitting third party participant). Nothing herein shall restrict any Party from providing its own Mediation submissions to any other Party. For the avoidance of doubt, the Parties shall not disclose to any court, including in any pleading or other submission to any court, any such

discussions or communications made in connection with the Mediation, unless otherwise available to such Party and not subject to a separate confidentiality agreement or protective order which would prevent its disclosure. For the avoidance of doubt, and notwithstanding any separate confidentiality agreements or confidentiality provisions in relevant credit agreements or indentures, all Parties participating in the Mediation shall comply with the terms of this Order and maintain the Absolute Mediation Privilege. The terms of this Order (as may be supplemented or amended by further orders), and not any separate confidentiality agreement or confidentiality provisions in relevant credit agreements or indentures, shall govern the protection of communications or discussions in connection with the Mediation.

11. All settlement proposals, counterproposals, and offers of compromise made during the mediations sessions (collectively, "*Settlement Proposals*") shall (a) remain confidential unless the Party making such Settlement Proposal agrees to the disclosure of any such Settlement Proposal, (b) be subject to protection under Rule 408 of the Federal Rules of Evidence, and (c) shall not constitute material nonpublic information.

12. No Party shall (a) be or become an insider, a temporary insider or fiduciary of any Debtor, any affiliate of any Debtor (collectively, the "*Debtor Parties*"), (b) be deemed to owe any duty to any of the Debtor Parties or the Debtors' estates, (c) undertake any duty to any party in interest, or (d) be deemed to misappropriate any information of any of the Debtor Parties, with respect to each of foregoing clauses (a) through (d), as a result of (x) participating in the Mediation conducted pursuant to this Order without reliance on this Order, (y) being aware, or in possession, of any Settlement Proposal, or (z) with respect to the Mediation, acting together in a group with other holders of securities issued by the Debtor Parties ("*Debtor Party Securities*").

13. No party in interest in these Chapter 11 Cases, including each of the Debtors or any successor to the Debtors, shall have any claim, defense, objection, or cause of action of any nature whatsoever against a Party, including, but not limited to, any objection to a claim, or any other basis to withhold, subordinate, disallow, or delay payment or issuance of any consideration to a Party on account of a claim based on such Party's trading in Debtor Party Securities by reason of a Party's participation in the Mediation as a result of receiving (a) information that, at the time of such trading, such Party has no duty of confidentiality with respect to a Confidentiality Agreement, or (b) a Settlement Proposal, whether or not such Settlement Proposal is confidential; provided, however, that nothing herein shall be deemed to waive any claims for non-compliance with this Order or any other contractual confidentiality obligations.

14. At the conclusion of the Mediation, the Mediator shall file with the Court a memorandum stating (i) that the Mediator has conducted the Mediation, (ii) the names, addresses and telephone numbers of counsel and advisors who participated in the Mediation, and (iii) whether and to what extent the Mediation was successful.

15. The Mediator shall be authorized to report to the Court on the good faith of any or all of the Parties.

16. The sanctions available under Fed. R. Civ. *P.* 16(f) shall apply to any violation of this Order and, except as modified herein, the provisions of Rule 9019-1 of the Local Bankruptcy Rules of the Eastern District of New York governing alternative dispute resolution and mediation matters shall apply to the Mediation.

17. This Order shall be governed by and construed in accordance with the laws of the state of New York without regard to the conflicts of laws principles thereof.

18.     The Parties are authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Order.

19.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), 7062, and 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

SO ORDERED:



Dated: Brooklyn, New York
       September 25, 2013

**Elizabeth S. Stong**
**United States Bankruptcy Judge**