Jonathan S. Henes
Christopher Marcus
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

- and -

James H.M. Sprayregen
Ross M. Kwasteniet (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CENGAGE LEARNING, INC., *et al.*, | Case Nos. 13-44106, 13-44105, 13-44107, 13-44108 (ESS) |
| Debtors. | (Jointly Administered) |
| CENGAGE LEARNING, INC., | |
| Plaintiff, | Adversary Proceeding No. 13-_____ |
| v. | |
| JPMORGAN CHASE BANK, N.A., solely in its capacity as successor administrative agent and collateral agent under that certain credit agreement dated July 5, 2007, and as amended; THE BANK OF NEW YORK MELLON, solely in its capacity as trustee and collateral agent under that certain indenture dated April 10, 2012; and CSC TRUST COMPANY OF DELAWARE, solely in its capacity as successor trustee and collateral agent under that certain indenture dated as of July 5, 2012, | |
| Defendants. | |

**COMPLAINT (I) TO AVOID AND RECOVER CERTAIN
PREPETITION TRANSFERS PURSUANT TO SECTIONS 544, 547, 550, AND 551 OF THE
BANKRUPTCY CODE AND (II) FOR DECLARATORY JUDGMENTS RELATED THERETO**

Cengage Learning, Inc. ("***Plaintiff***"), one of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "***Debtors***"), brings this Complaint against JPMorgan Chase Bank, N.A. ("***JPMorgan***"), solely in its capacity as successor administrative agent and collateral agent under the First Lien Credit Facility Agreement (as defined below), The Bank of New York Mellon ("***BONY***"), solely in its capacity as trustee and collateral agent under the First Lien Notes Indenture (as defined below), and CSC Trust Company of Delaware ("***CSC***," and together with JPMorgan and BONY, the "***Defendants***"), solely in its capacity as successor trustee and collateral agent under the Second Lien Notes Indenture (as defined below). The Plaintiff seeks (1) to avoid Defendants' liens on and security interests in:  (a) the registered copyrights owned by the Plaintiff for which JPMorgan recorded its interest with the U.S. Copyright Office within the 90 days before July 2, 2013 (the "***Credit Facility Copyrights***"), which are listed on the attached **Exhibit A**; (b) the registered copyrights owned by the Plaintiff for which BONY recorded its interest with the U.S. Copyright Office within the 90 days before July 2, 2013 (the "***First Lien Notes Copyrights***"), which are listed on the attached **Exhibit B**; (c) the registered copyrights owned by the Plaintiff for which CSC (or its predecessor) recorded its interest with the U.S. Copyright Office within the 90 days before July 2, 2013 (the "***Second Lien Notes Copyrights***"), which are listed on the attached **Exhibit C**; (d) certain registered copyrights owned by the Plaintiff for which BONY and CSC (or their predecessors, as applicable) recorded their interests with the U.S. Copyright Office within the 90 days before July

2, 2013 (the "***Notes-Only Copyrights***"), which are listed on the attached **Exhibit D**;[1] (e) the registered copyrights owned by the Plaintiff for which no party recorded an interest with the U.S. Copyright Office before July 2, 2013 (the "***Non-Recorded Copyrights***" and together with the Credit Facility Copyrights, the First Lien Notes Copyrights, the Second Lien Notes Copyrights, and the Notes-Only Copyrights, the "***Disputed Copyrights***"), which are listed on the attached **Exhibit E**;[2] and (f) all inventory, revenues, and other documents pertaining to the Disputed Copyrights for which no party recorded a security interest with the U.S. Copyright Office before July 2, 2013; and (2) declaratory judgments that (a) any liens on property avoided and preserved for the benefit of the Debtors' estates have a priority superior to any of the liens on such property that may be possessed by the Defendants, and (b) the Debtors' estates have no rights or obligations, and are not otherwise bound by, any intercreditor agreement or other agreement to which the Defendants were a party with respect to any recovery received on account of such liens.  In support thereof, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.      This adversary proceeding is brought pursuant to Rule 7001(1) and 7001(2) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").   The United States Bankruptcy Court for the Eastern District of New York (the "***Court***") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

---

[1]    For the avoidance of doubt, JPMorgan did not record its interest in the Notes-Only Recorded Copyrights with the U.S. Copyright Office prior to July 2, 2013.

[2]    The Debtors believe that the total number of copyrights listed on Exhibits A–F _significantly overstates_ the number of unique copyrights that are subject to avoidance, as the exhibits contain many duplicative entries. Specifically, the Debtors believe that there are only approximately 15,750 unique copyrights that are subject to avoidance.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This proceeding is a core proceeding under 28 U.S.C. § 157(b) arising in a case under title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"), among other grounds.

## THE PARTIES

3.      Plaintiff Cengage Learning, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 200 First Stamford Place, 4th Floor, Stamford, Connecticut 06902.

4.      Defendant JPMorgan, the successor administrative agent and collateral agent under the First Lien Credit Facility Documents (as defined below) and holder of the liens conveyed pursuant thereto, is a bank organized under the laws of the United States of America with its principal place of business in Columbus, Ohio.

5.      Defendant BONY, the trustee and collateral agent under the First Lien Notes Documents (as defined below) and holder of the liens conveyed pursuant thereto, is a Delaware corporation with its principal place of business in New York.

6.      Defendant CSC, the successor trustee and collateral agent under the Second Lien Notes Documents (as defined below) and holder of the liens conveyed pursuant thereto, is a Delaware corporation with its principal place of business in Delaware.  Defendant BONY was the predecessor trustee and collateral agent under the Second Lien Notes Documents.

## BACKGROUND

### A.    The Debtors' Chapter 11 Cases

7.    On July 2, 2013 (the "***Petition Date***"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their

businesses and managing their properties as debtors in possession pursuant to section 1107(a)

and 1108 of the Bankruptcy Code.  On July 3, 2013, the Court entered an order [Docket. No. 31]

authorizing the joint administration and procedural consolidation of these chapter 11 cases

pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner

has been made in these chapter 11 cases.  On July 10, 2013, the United States Trustee for

Region 2 (the "***U.S. Trustee***") appointed an official committee of unsecured creditors pursuant to

section 1102 of the Bankruptcy Code (the "***Committee***") [Docket. No. 68].

### B.    The Debtors' Funded Debt Obligations

8.    As of June 30, 2013, shortly before the Petition Date, the Debtors had outstanding

funded debt obligations in the aggregate principal amount of approximately $5.8 billion, which

includes the following secured, funded debt:

- approximately $3.9 billion aggregate in principal amounts outstanding of first lien loans (the "***First Lien Loans***") in five tranches with varying interest rates;[3]

- approximately $725.0 million in principal amount outstanding of 11.5% first lien notes (the "***First Lien Notes***");[4] and

---

[3]    The terms of the First Lien Loans are set forth in that certain Credit Agreement, dated as of July 5, 2007, as amended by the Incremental Amendment, dated as of May 30, 2008, and the Amendment Agreement, dated as of April 10, 2012, among certain of the Debtors, JPMorgan as successor administrative agent and collateral agent, and the other lenders party thereto (the "***First Lien Credit Facility Agreement***," and together with each of the other documents, agreements, and instruments (including without limitation all collateral documents) executed and delivered from time to time in connection therewith, the "***First Lien Credit Facility Documents***").

[4]    The terms of the First Lien Notes are set forth in that certain Indenture, dated as of April 10, 2012, among Cengage Learning Acquisitions, Inc., the guarantors party thereto, and The Bank of New York Mellon, as trustee and collateral agent, providing for the issuance of 11.50% Senior Secured Notes due 2020 (the "***First Lien Notes Indenture***," and together with each of the other documents, agreements, and instruments (including without limitation all collateral documents) executed and delivered from time to time in connection therewith, the "***First Lien Notes Documents***").

- approximately $710.0 million in principal amount outstanding of 12% second lien notes (the "***Second Lien Notes***").[5]

### C.    Plaintiff's Disputed Copyrights and Defendants' Perfection Therein

9.    Pursuant to section 2.01 of the Intellectual Property Security Agreement of each of the First Lien Credit Facility Documents, First Lien Notes Documents, and Second Lien Notes Documents, the Debtors granted JPMorgan, BONY, and CSC (or their predecessors, as applicable) a security interest in all of the Debtors' copyrights, as well as all proceeds and products of all of those copyrights, for the benefit of the respective lenders under the First Lien Credit Facility Agreement, First Lien Notes Indenture, and Second Lien Notes Indenture. Pursuant to section 3.01 of the Security Agreement of each of the First Lien Credit Facility Documents, First Lien Notes Documents, and Second Lien Notes Documents, the Debtors granted JPMorgan, BONY, and CSC (or their predecessors, as applicable) a security interest in certain collateral, which included, among other things, all Accounts, Inventory, and Investment Property (each as defined under the First Lien Credit Facility Documents, First Lien Notes Documents, and Second Lien Notes Documents) (collectively, along with the security interest in the proceeds and products of all the Debtors' copyrights, as granted by the Intellectual Property Security Agreements, the "***Security Agreement Collateral***").

10.    Several security interests for the benefit of the lenders under the First Lien Credit Facility Agreement in the Credit Facility Copyrights (which consist solely of registered copyrights owned by the Plaintiff) were recorded with the U.S. Copyright Office within the

---

[5]    The terms of the Second Lien Notes are set forth in that certain Indenture, dated as of July 5, 2012, among Cengage Learning Acquisitions, Inc., the guarantors party thereto, and CSC Trust Company of Delaware, as successor trustee and collateral agent, providing for the issuance of 12.00% Senior Secured Second Lien Notes due 2019 (the "***Second Lien Notes Indenture***," and together with each of the other documents, agreements, and instruments (including without limitation all collateral documents) executed and delivered from time to time in connection therewith, the "***Second Lien Notes Documents***").

90-day period prior to the Petition Date[6] by JPMorgan, as successor administrative agent and collateral agent under the First Lien Credit Facility Agreement, including those security interests recorded by JPMorgan on or around May 23, June 27, and July 1, 2013.

11.  Several security interests for the benefit of the lenders under the First Lien Notes Indenture in the First Lien Notes Copyrights (which consist solely of registered copyrights owned by the Plaintiff) were recorded with the U.S. Copyright Office within the 90-day period prior to the Petition Date[7] by BONY, as trustee and collateral agent under the First Lien Notes Indenture, including those security interests recorded by BONY on or around June 27 and July 1, 2013.

12.  Several security interests for the benefit of the lenders under the Second Lien Notes Indenture in the Second Lien Notes Copyrights (which consist solely of registered copyrights owned by the Plaintiff) were recorded with the U.S. Copyright Office within the 90-day period prior to the Petition Date[8] by CSC's predecessor trustee and collateral agent under the Second Lien Notes Indenture, including those security interests recorded by CSC's predecessor trustee and collateral agent on or around June 27 and July 1, 2013.

13.  Under section 547(e)(2), a "transfer," which includes the creation of an applicable lien,[9] occurs:  (a) at the time a transfer takes effect between two parties if perfection occurs

---

[6]  The Debtors are aware that JPMorgan (or its predecessor, as applicable) may also have recorded an interest with the U.S. Copyright Office in certain of the Credit Facility Copyrights prior to the 90-day period before the Petition Date.

[7]  The Debtors are aware that BONY (or its predecessor, as applicable) may also have recorded an interest with the U.S. Copyright Office in certain of the First Lien Notes Copyrights prior to the 90-day period before the Petition Date.

[8]  The Debtors are aware that CSC (or its predecessor, as applicable) may also have recorded an interest with the U.S. Copyright Office in certain of the Second Lien Notes Copyrights prior to the 90-day period before the Petition Date.

[9]  11 U.S.C. § 101(54)(A) ("The term 'transfer' means—the creation of a lien . . . .")

within 30 days thereafter; (b) at the time of perfection if perfection occurs more than 30 days after the transfer between the parties; or (c) immediately before the date of the filing of the bankruptcy petition if no perfection occurred by the later of the commencement of the case or 30 days after the transfer between the parties.

14.    Under section 547(e)(1)(B), and for purposes of section 547 of the Bankruptcy Code, "perfection" of a security interest in a fixture or property other than real property occurs when "a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee."  Pursuant to applicable law, a creditor must record a security interest in a registered copyright with the U.S. Copyright Office in order to perfect such security interest and obtain a lien that is superior to the interests of other lien holders.  17 U.S.C. § 205 (the Copyright Act); *e.g.*, *In re Peregrine Entm't Ltd.*, 116 B.R. 194, 203 (C.D. Cal. 1990) ("Recording in the U.S. Copyright Office, rather than filing a financing statement under Article Nine, is the proper method for perfecting a security interest in a copyright."); *see also In re World Auxiliary Power Co.*, 303 F.3d 1120, 1130 (9th Cir. 2002) (adopting the holding of *Peregrine* with respect to registered copyrights).  Where a lender obtains a security interest to registered copyrights and the products and proceeds derived from the exercise of those copyrights (such as inventory consisting of copies of the copyrighted works and revenues from the sale of such copies), this security interest is not perfected unless the lender records its security interest in the copyrights with the U.S. Copyright Office.  *See* 17 U.S.C. §§ 205(c)–(d); *Peregrine*, 116 B.R. at 204 (holding that security interest in copyrights and receivables derived therefrom were unperfected for failure to record with the Copyright Office); *In re Avalon Software, Inc.*, 209 B.R. 517, 523 (Bankr. D. Ariz. 1997) (holding that failure to record security interest with Copyright Office

rendered lien unperfected with respect to copyrights as well as inventory and revenues from exercise of affected copyrights).

15.    Here, the grant of a security interest in the Disputed Copyrights under the First Lien Credit Facility Documents occurred in 2007, and the grant of a security interest in the Disputed Copyrights under the First Lien Notes Documents and Second Lien Notes Documents occurred in 2012 (or at such time as the Debtors acquired rights in such Disputed Copyrights, as applicable).  *See* 11 U.S.C. § 547(e)(3) ("For purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.").  In all instances, therefore, the security interests in the Disputed Copyrights were perfected, as such term is used in section 547(e)(1)(B) of the Bankruptcy Code, more than 30 days after the grant of the security interests or were never perfected at all.  Thus, by operation of section 547(e)(2) of the Bankruptcy Code, the grant of a security interest in the Disputed Copyrights (*i.e.*, the "transfer" for purposes of section 547 of the Bankruptcy Code) occurred at (a) the time of recordation with respect to those Disputed Copyrights that were recorded against or (b) immediately before the date of the filing of the bankruptcy petition with respect to those Disputed Copyrights that were not recorded against.  As a result, under section 547 of the Bankruptcy Code, the granting of the liens in the Disputed Copyrights to the Defendants are transfers to the Defendants with respect to the Disputed Copyrights that occurred within 90 days before the Petition Date (such transfers for the benefit of the lenders under the First Lien Credit Facility, the "***First Lien Credit Facility Transfers***," such transfers for the benefit of the lenders under the First Lien Notes Indenture the "***First Lien Notes Transfers***," and such transfers for the benefit of the lenders under the Second Lien Notes Indenture, the "***Second Lien Notes Transfers***").

16.    Prior to the Petition Date, none of the Defendants recorded with the U.S. Copyright Office their interests in the Non-Recorded Copyrights or their interests in the Security Agreement Collateral pertaining to the Disputed Copyrights.  JPMorgan did not record with the U.S. Copyright Office its interest in the Notes-Only Copyrights.

17.    Pursuant to section 544(a), Plaintiff has the powers of a judicial lien creditor. Thus, Plaintiff may avoid any transfer of Plaintiff's property or any obligation incurred by Plaintiff that is voidable by a creditor who had, as of the Petition Date, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.  11 U.S.C. § 544(a)(1).

18.    Pursuant to section 551, if the Plaintiff avoids any of the Defendants' liens, the Plaintiff will "step[] into the shoes" of such Defendants.  *In re Kopel*, 232 B.R. 57, 70 (Bankr. E.D.N.Y. 1999).  Any such claim preserved for the benefit of the Plaintiff's estate carries "the same priority that [the] avoided lienor's lien had with respect to other creditors' liens" under applicable non-bankruptcy law.  *Id.*    Moreover, the Plaintiff's estate would inherit the Defendants' property interests and not any contractual rights or obligations existing between the Defendants and any non-debtor parties with respect to such property interests.  *E.g.*, *Morris v. St. John Nat'l Bank (In re Haberman)*, 516 F.3d 1207, 1210 (10th Cir. 2008) ("[W]hile Section 551 [of the Bankruptcy Code] places the estate in the shoes of the displaced lienholder in certain respects, in others it does not."); *Robinson v. Howard Bank (In re Kors)*, 819 F.2d 19, 22–24 (2d Cir. 1987) (holding that trustee could "preserve only those [security-interest] rights which existed against the [debtor]" and could not "accede to the benefits of the subordination agreement because [the debtor] was not a part of that agreement").  In other words, just as the Debtors' estates cannot accede to the benefits under a related agreement to which the Defendants

were a party, the Debtors' estates' property interests in the liens avoided with respect to the Disputed Copyrights would not be subject to any obligations of the Defendants under any intercreditor agreement or other agreement.

<u>COUNT I</u>
<b>Avoidance and Recovery of First Lien Credit Facility
Transfers Pursuant to Sections 547, 550, and 551 of the Bankruptcy Code</b>

19.    Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 18 above as if fully set forth herein.

20.    The First Lien Credit Facility Transfers, to the extent valid, were transfers of interests in property of the Plaintiff for the benefit of the lenders under the First Lien Credit Facility Agreement.

21.    The First Lien Credit Facility Transfers, to the extent valid, were on account of antecedent debt owed by the Plaintiff to the lenders under the First Lien Credit Facility Agreement before the transfers were made.

22.    The First Lien Credit Facility Transfers, to the extent valid, were not intended as and were not in fact a contemporaneous exchange for new value given to the Plaintiff.

23.    The First Lien Credit Facility Transfers, to the extent valid, were not made in the ordinary course of business.

24.    The First Lien Credit Facility Transfers, to the extent valid, were made to JPMorgan while the Plaintiff was insolvent.

25.    The First Lien Credit Facility Transfers, to the extent valid, occurred within 90 days of the Petition Date.

26.    The First Lien Credit Facility Transfers, to the extent valid, will result in the lenders under the First Lien Credit Facility Agreement receiving more than they would receive as creditors in chapter 7 cases had the transfers of the security interest not occurred.

27.    The First Lien Credit Facility Transfers, to the extent valid, should be avoided and/or recovered pursuant to sections 547 and 550 of the Bankruptcy Code and should be preserved for the benefit of the Plaintiff's estates pursuant to section 551 of the Bankruptcy Code.

## COUNT II
### Avoidance and Recovery of First Lien Notes Transfers
### Pursuant to Sections 547, 550, and 551 of the Bankruptcy Code

28.    Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 18 above as if fully set forth herein.

29.    The First Lien Notes Transfers, to the extent valid, were transfers of interests in property of the Plaintiff for the benefit of the lenders under the First Lien Notes Indenture.

30.    The First Lien Notes Transfers, to the extent valid, were on account of antecedent debt owed by the Plaintiff to the lenders under the First Lien Notes Indenture before the transfers were made.

31.    The First Lien Notes Transfers, to the extent valid, were not intended as and were not in fact a contemporaneous exchange for new value given to the Plaintiff.

32.    The First Lien Notes Transfers, to the extent valid, were not made in the ordinary course of business.

33.    The First Lien Notes Transfers, to the extent valid, were made to BONY while the Plaintiff was insolvent.

34.    The First Lien Notes Transfers, to the extent valid, occurred within 90 days of the Petition Date.

35.    The First Lien Notes Transfers, to the extent valid, will result in the lenders under the First Lien Notes Indenture receiving more than they would receive as creditors in chapter 7 cases had the transfers of the security interest not occurred.

36.    The First Lien Notes Transfers, to the extent valid, should be avoided and/or recovered pursuant to sections 547 and 550 of the Bankruptcy Code and should be preserved for the benefit of the Plaintiff's estates pursuant to section 551 of the Bankruptcy Code.

## COUNT III
### Avoidance and Recovery of Second Lien Notes Transfers
### Pursuant to Sections 547, 550, and 551 of the Bankruptcy Code

37.    Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 18 above as if fully set forth herein.

38.    The Second Lien Notes Transfers, to the extent valid, were transfers of interests in property of the Plaintiff for the benefit of the lenders under the Second Lien Notes Indenture.

39.    The Second Lien Notes Transfers, to the extent valid, were on account of antecedent debt owed by the Plaintiff to the lenders under the Second Lien Notes Indenture before the transfers were made.

40.    The Second Lien Notes Transfers, to the extent valid, were not intended as and were not in fact a contemporaneous exchange for new value given to the Plaintiff**.**

41.    The Second Lien Notes Transfers, to the extent valid, were not made in the ordinary course of business.

42.    The Second Lien Notes Transfers, to the extent valid, were made to BONY, as predecessor trustee and collateral agent for the lenders under the Second Lien Notes Indenture, while the Plaintiff was insolvent.

43.    The Second Lien Notes Transfers, to the extent valid, occurred within 90 days of the Petition Date.

44.    The Second Lien Notes Transfers, to the extent valid, will result in the lenders under the Second Lien Notes Indenture receiving more than they would receive as creditors in chapter 7 cases had the transfers of the security interest not occurred.

45.     The Second Lien Notes Transfers, to the extent valid, should be avoided and/or recovered pursuant to sections 547 and 550 of the Bankruptcy Code and should be preserved for the benefit of the Plaintiff's estates pursuant to section 551 of the Bankruptcy Code.

## COUNT IV
**Avoidance and Recovery of Interests in the Notes-Only Copyrights and the Non-Recorded Copyrights Pursuant to Sections 544, 550, and 551 of the Bankruptcy Code**

46.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 18 above as if fully set forth herein.

47.     JPMorgan did not record its security interest in the Notes-Only Copyrights or the Non-Recorded Copyrights with the U.S. Copyright Office.

48.     A hypothetical lien creditor of the Plaintiff would have a superior interest to that of JPMorgan in the Notes-Only Copyrights and the Non-Recorded Copyrights.

49.     Accordingly, JPMorgan's interest, on behalf of the First Lien Credit Facility lenders, in the Notes-Only Copyright and the Non-Recorded Copyrights should be avoided and/or recovered pursuant to sections 544 and 550 of the Bankruptcy Code and should be preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code.

## COUNT V
**Avoidance and Recovery of Interests in the Non-Recorded Copyrights Pursuant to Sections 544, 550, and 551 of the Bankruptcy Code**

50.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 18 above as if fully set forth herein.

51.     BONY did not record its security interest in the Non-Recorded Copyrights with the U.S. Copyright Office.

52.     A hypothetical lien creditor of the Plaintiff would have a superior interest to that of BONY in the Non-Recorded Copyrights.

53.     Accordingly, BONY's interest, on behalf of the First Lien Notes lenders, in the Non-Recorded Copyrights should be avoided and/or recovered pursuant to sections 544 and 550 of the Bankruptcy Code and should be preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code.

## COUNT VI
### Avoidance and Recovery of Interests in the Non-Recorded Copyrights Pursuant to Sections 544, 550, and 551 of the Bankruptcy Code

54.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 18 above as if fully set forth herein.

55.     CSC (or its predecessor) did not record its interest in the Non-Recorded Copyrights with the U.S. Copyright Office.

56.     A hypothetical lien creditor of the Plaintiff would have a superior interest to that of CSC in the Non-Recorded Copyrights.

57.     Accordingly, CSC's interest, on behalf of the Second Lien Notes lenders, in the Non-Recorded Copyrights should be avoided and/or recovered pursuant to sections 544 and 550 of the Bankruptcy Code and should be preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code.

## COUNT VII
### Avoidance and Recovery of Interests in the Security Agreement Collateral Pertaining to the Disputed Copyrights Pursuant to Sections 544, 550, and 551 of the Bankruptcy Code

58.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 18 above as if fully set forth herein.

59.     JPMorgan did not record its interest in the Security Agreement Collateral pertaining to the Disputed Copyrights with the U.S. Copyright Office.

60.     A hypothetical lien creditor of the Plaintiff would have a superior interest to that of JPMorgan in the Security Agreement Collateral pertaining to the Disputed Copyrights with the U.S. Copyright Office.

61.     Accordingly, JPMorgan's interest, on behalf of the First Lien Credit Facility lenders, in the Security Agreement Collateral pertaining to the Disputed Copyrights should be avoided and/or recovered pursuant to sections 544 and 550 of the Bankruptcy Code and should be preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code.

## COUNT VIII
**Avoidance and Recovery of Interests in the Security Agreement Collateral Pertaining to the Disputed Copyrights Pursuant to Sections 544, 550, and 551 of the Bankruptcy Code**

62.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 18 above as if fully set forth herein.

63.     BONY did not record its interest in the Security Agreement Collateral pertaining to the Disputed Copyrights with the U.S. Copyright Office.

64.     A hypothetical lien creditor of the Plaintiff would have a superior interest to that of BONY in the Security Agreement Collateral pertaining to the Disputed Copyrights with the U.S. Copyright Office.

65.     Accordingly, BONY's interest, on behalf of the Second Lien Notes lenders, in the Security Agreement Collateral pertaining to the Disputed Copyrights should be avoided and/or recovered pursuant to sections 544 and 550 of the Bankruptcy Code and should be preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code.

**COUNT IX**
**Avoidance and Recovery of Interests in the Security Agreement Collateral Pertaining**
**to the Disputed Copyrights Pursuant to Sections 544, 550, and 551 of the Bankruptcy Code**

66.    Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 18 above as if fully set forth herein.

67.    CSC did not record its interest in the Security Agreement Collateral pertaining to the Disputed Copyrights with the U.S. Copyright Office.

68.    A hypothetical lien creditor of the Plaintiff would have a superior interest to that of CSC in the Security Agreement Collateral pertaining to the Disputed Copyrights with the U.S. Copyright Office.

69.    Accordingly, CSC's interest, on behalf of the Second Lien Notes lenders, in the Security Agreement Collateral pertaining to the Disputed Copyrights should be avoided and/or recovered pursuant to sections 544 and 550 of the Bankruptcy Code and should be preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code.

**COUNT X**
**Declaratory Judgment that Certain**
**Avoided Liens Will Have Priority Pursuant to Section 551 of the Bankruptcy Code**

70.    Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 18 above as if fully set forth herein.

71.    At the time that BONY and CSC (or their respective predecessors, as applicable) took their security interests in the Disputed Copyrights, they had actual and/or constructive notice of the pre-existing, earlier security interest in the Disputed Copyrights held by JPMorgan (or its predecessors, as applicable) pursuant to the First Lien Credit Facility Documents.

72.    Consequently, pursuant to Section 205(d) of the Copyright Act, the liens granted by the First Lien Credit Facility Transfers, to the extent valid, regarding the Disputed Copyrights are superior in priority to any liens held by BONY or CSC in such Disputed Copyrights.

17

Accordingly, any interest in such Disputed Copyrights or Security Agreement Collateral pertaining to such Disputed Copyrights avoided pursuant to sections 544 or 547 of the Bankruptcy Code and preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code has a priority superior to any interests that BONY and CSC may have in such Disputed Copyrights or Security Agreement Collateral pertaining to such Disputed Copyrights.

73.     An actual legal controversy exists between the Debtors and the Defendants over whether the Debtors' estates would have a priority superior to interests of BONY and CSC if the First Lien Credit Facility Transfers are avoided.

**COUNT XI**
**Declaratory Judgment that Certain**
**Avoided Liens will have Priority Pursuant to Section 551 of the Bankruptcy Code**

74.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 18 above as if fully set forth herein.

75.     At the time that CSC (or its predecessors, as applicable) took its security interest in the Disputed Copyrights, it had actual and/or constructive notice of the pre-existing, earlier security interest in the Disputed Copyrights held by JPMorgan and BONY (or their respective predecessors, as applicable) pursuant to the First Lien Credit Facility Documents and First Lien Notes Documents, respectively.

76.     Consequently, pursuant to Section 205(d) of the Copyright Act, the liens granted by the First Lien Credit Facility Transfers and First Lien Notes Transfers, to the extent valid, regarding the Disputed Copyrights are superior in priority to any liens held by CSC in such Disputed Copyrights.  Accordingly, any interest in such Disputed Copyrights or Security Agreement Collateral pertaining to such Disputed Copyrights avoided pursuant to sections 544 or 547 of the Bankruptcy Code and preserved for the benefit of the Debtors' estates pursuant to

18

section 551 of the Bankruptcy Code has a priority superior to any interest that CSC may have in such Disputed Copyrights or Security Agreement Collateral pertaining to such Disputed Copyrights.

77.    An actual legal controversy exists between the Debtors and the Defendants over whether the Debtors' estates would have a priority superior to interests of CSC if the First Lien Credit Facility Transfers and First Lien Notes Transfers are avoided.

**COUNT XII**
**Declaratory Judgment that the Debtors' Estates Are Not Subject to**
**the Obligations Under any Intercreditor Agreement or Other Agreement to Which the**
**Defendants Were a Party with Respect to any Recovery Received on Account of any Liens**

78.    Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 18 above as if fully set forth herein.

79.    The Debtors' estates have no rights or obligations, and are not otherwise bound by, any intercreditor agreement or other agreement to which the Defendants were a party with respect to any recovery received on account of the liens in any Disputed Copyrights or Security Agreement Collateral pertaining to such Disputed Copyrights avoided pursuant to sections 544 or 547 of the Bankruptcy Code and preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code.  Consequently, the priority of any such liens after such avoidance is determined by Section 205(d) of the Copyright Act, irrespective of any intercreditor agreement or other agreement to the contrary to which the Defendants were a party.

80.    An actual legal controversy exists between the Debtors and the Defendants over whether the Debtors' estates have rights or obligations, or are not otherwise bound by, any intercreditor agreement or other agreement to which the Defendants were a party with respect to any recovery received on account of the liens in any Disputed Copyrights or Security Agreement Collateral pertaining to such Disputed Copyrights avoided pursuant to sections 544 or 547 of the

Bankruptcy Code and preserved for the benefit of the Debtors' estates pursuant to section 551 of

the Bankruptcy Code.

[*Remainder of Page Intentionally Left Blank*]

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that:

(i) the Court enter an order avoiding the liens on and security interests in the Disputed Copyrights and the Security Agreement Collateral pertaining to the Disputed Copyrights and preserving them for the benefit of the Debtors' estates pursuant to sections 544, 547, 550, and 551 of the Bankruptcy Code;

(ii) the Court issue an order declaring that any interest in Disputed Copyrights and Security Agreement Collateral avoided pursuant to sections 544 or 547 of the Bankruptcy Code and preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code is superior in priority to any other interests that the Defendants have in such Disputed Copyrights and Security Agreement Collateral;

(iii) the Court issue an order declaring that the Debtors' estates have no rights or obligations, and are not otherwise bound by, any intercreditor agreement or other agreement to which the Defendants were a party with respect to any recovery received on account of the liens in any Disputed Copyrights or Security Agreement Collateral pertaining to such Disputed Copyrights avoided pursuant to sections 544 or 547 of the Bankruptcy Code and preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code; and

(iv) the Court enter an order granting such equitable or other relief as may be just and proper.

Brooklyn, New York
Dated:  October 5, 2013

/s/ Jonathan S. Henes
Jonathan S. Henes
Christopher Marcus
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen
Ross M. Kwasteniet (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors
and Debtors in Possession*