**Hearing Date: October 25, 2013 at 8:30 a.m. (ET)**
**Objection Deadline: October 18, 2013 at 4:00 p.m. (ET)**

Jonathan S. Henes
Christopher Marcus
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

- and -

James H.M. Sprayregen
Ross M. Kwasteniet (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CENGAGE LEARNING, INC., *et al.*, | ) | Case No. 13-44106 (ESS) |
| | ) | Case No. 13-44107 (ESS) |
| | ) | Case No. 13-44105 (ESS) |
| | ) | Case No. 13-44108 (ESS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF HEARING ON DEBTORS'**
**MOTION FOR ENTRY OF AN ORDER EXTENDING**
**THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTORS**
**MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

**PLEASE TAKE NOTICE** that on October 10, 2013, Cengage Learning, Inc. and its

debtor affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"), filed the

*Debtors' Motion for Entry of an Order Extending the Exclusive Periods During Which Only the*

*Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof* (the "**Motion**") with the United States Bankruptcy Court for the Eastern District of New York (the "**Court**").

**PLEASE TAKE FURTHER NOTICE** that any objections or responses to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Eastern District of New York and shall be filed with the Court electronically by registered users of the Court's case filing system, and by all other parties in interest, on a 3.5 inch floppy disk, compact disc or flash drive (preferably in Portable Document Format (PDF), Microsoft Word, or any other Windows-based word processing format) with a hard copy delivered directly to the chambers of the Honorable Elizabeth S. Stong and shall be served **so as to be actually received by no later than October 18, 2013 at 4:00 p.m. (prevailing Eastern Time)** (the "**Objection Deadline**") by the following parties:  (a) the Debtors, 200 First Stamford Place, 4th Floor, Stamford, Connecticut 06902; (b) counsel for the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.:  Christopher T. Greco, Esq.; (c) counsel to the statutory committee of unsecured creditors, Arent Fox, 1675 Broadway, New York, New York 10019, Attn.: Andrew I. Silfen, Esq.; (d) counsel to the ad hoc group of holders of certain first lien claims, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Gregory Bray, Esq. and Lauren Doyle, Esq.; (e) counsel to the agent under the First Lien Credit Agreement, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Damian S. Schaible, Esq. and Darren S. Klein, Esq.; (f) counsel to the indenture trustee for the first lien noteholders, Katten Muchin Rosenman LLP, 575 Madison Avenue, Number 14, New York, New York 10022, Attn: Karren Dine, Esq. and David Crichlow, Esq.; (g) counsel to the indenture trustee for the secured second lien notes, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 1003, Attn:

Mark R. Somerstein, Esq.; (h) counsel to the indenture trustee for the senior PIK notes, Loeb & Loeb LLP, 345 Park Avenue, New York, New York 10154, Attn: Walter H. Curchack, Esq.; (i) counsel to the indenture trustee for the senior unsecured notes, Kilpatrick Townsend, 1110 Peachtree Street, NE, Suite 2800, Atlanta, Georgia 30309, Attn: Todd Meyers, Esq.; (j) the indenture trustee for the senior subordinated discount notes, Bank of Oklahoma, One Williams Center, Tulsa, Oklahoma 74172, Attn: Mary Campbell; (k) counsel to the CSC Trust Company of Delaware as second lien trustee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Ira Dizengoff, Esq.; (l) counsel to affiliates of Centerbridge Partners, L.P., Jones Day, 222 East 41st Street, New York, New York 10017, Attn: Lisa Laukitis, Esq.; (m) counsel to Apax Partners, L.P. and certain affiliates, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn: Peter Pantaleo, Esq.; (n) the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn.: Susan Golden, Esq. and 271 Cadman Plaza East, Suite 4529, Brooklyn, New York 11201, Attn.: Alicia Leonhard, Esq. and William Curtin, Esq.; (o) parties to Civil Actions; and (p) those persons who have formally appeared and requested service in these cases pursuant to Rule 2002 of the Federal Rule of Bankruptcy Procedure.

**PLEASE TAKE FURTHER NOTICE THAT** a hearing to consider such Motion and any objections related thereto will be held before the Honorable Elizabeth S. Stong of the United States Bankruptcy Court for the Eastern District of New York, 271 Cadman Plaza East, Courtroom 3585, Brooklyn, New York 11201 on **October 25, 2013 at 8:30 a.m. prevailing Eastern Time**.

*[Remainder of page intentionally left blank.]*

KE 28022250.12

Brooklyn, New York
Dated:  October 10, 2013

/s/ Jonathan S. Henes
Jonathan S. Henes
Christopher Marcus
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen
Ross M. Kwasteniet (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**Hearing Date: October 25, 2013 at 8:30 a.m. (ET)**
**Objection Deadline: October 18, 2013 at 4:00 p.m. (ET)**

Jonathan S. Henes
Christopher Marcus
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen
Ross M. Kwasteniet (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CENGAGE LEARNING, INC., *et al.*, | ) | Case No. 13-44106 (ESS) |
| | ) | Case No. 13-44105 (ESS) |
| | ) | Case No. 13-44107 (ESS) |
| | ) | Case No. 13-44108 (ESS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

Cengage Learning, Inc. ("***Cengage***") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "***Debtors***"), file this motion (the "***Motion***") for entry of an order, substantially in the form attached hereto as **Exhibit A**: (a) extending by 137 days the exclusive periods during which only the Debtors may file a

chapter 11 plan and solicit acceptances thereof; and (b) granting such other and further relief as

is just and proper.   Specifically, the Debtors seek to extend the exclusive period to file a

chapter 11 plan (the "***Exclusive Filing Period***") for each Debtor through and including March

15, 2014, and the exclusive period to solicit acceptances of a chapter 11 plan of each Debtor

through and including May 14, 2014 (the "***Exclusive Solicitation Period***" and, together with the

Exclusive Filing Period, the "***Exclusive Periods***").[1]   In further support of the Motion, the

Debtors respectfully state as follows:

## Preliminary Statement[2]

1.      The Debtors have made significant progress in their restructuring efforts since

commencing these chapter 11 cases on July 2, 2013.  The Debtors have stabilized their business,[3]

brokered an agreement to use cash collateral on a consensual basis and, on August 17, 2013,

filed the *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*

[Docket No. 295] (the "***Plan***"), *Disclosure Statement for the Debtors' Joint Plan of*

*Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 296] (the

"***Disclosure Statement***"), and the *Debtors Motion for Entry of an Order (A) Approving the*

*Disclosure Statement; (B) Approving Solicitation Packages and Procedures for the Distribution*

*Thereof; (C) Approving the Forms of Ballots and Manner of Notice; (D) Approving the Voting*

*Record Date, Solicitation Deadline and Voting Deadline; and (E) Establishing Notice and*

---

[1]   Pursuant to section 1121(c) of the Bankruptcy Code, the Exclusive Filing Period and the Exclusive Solicitation
Period were originally set to expire on October 30, 2013 and December 30, 2013, respectively.

[2]   Capitalized terms used but not defined in this Preliminary Statement shall have the meanings given to them
elsewhere in this Motion.

[3]   To facilitate the chapter 11 cases and minimize disruption to the Debtors' operations, the Debtors' filed certain
"first day" and "second day" motions seeking authority to, among other things, pay authors and content sources,
continue using their cash management system, pay taxes, maintain insurance, honor customer programs, honor
obligations to shippers and warehousemen, and pay employee wages.

*Objection Procedures For Confirmation of the Plan* [Docket No. 297] (the **"Motion to Approve the Disclosure Statement"**).[4]  Despite this tremendous progress, work remains to be done and this work — which is being done transparently and on a consensual basis pursuant to a Mediation order and consistent with a case schedule agreed upon by all of the Debtors' major stakeholders — requires an extension of the Debtors' exclusive periods to file and solicit votes on a chapter 11 plan of reorganization.

2.    A brief history of the recent events in these chapter 11 cases is instructive.  At the outset of these chapter 11 cases, certain parties in interest expressed concerns over the speed at which the cases were proceeding.  In an attempt to balance the need for a swift emergence to maximize value and the desire to achieve global support for the Debtors' restructuring efforts, on September 9, 2013, the Debtors filed a *Motion For Entry of an Order (A) Approving Appointment of a Mediator and Scheduling Mediation in Connection with Confirmation of the Debtor's Plan, (B) Scheduling Certain Hearing Dates and Deadlines in Connection with Confirmation of the Debtors' Plan, and (C) Scheduling Certain Hearing Dates and Deadlines in Connection with Certain Contested Issues Relating To the Debtors' Plan* (the **"Mediation Motion"**).  At the hearing on September 11, 2013, after significant negotiation, each of the Debtors' major stakeholders, including the Official Committee of Unsecured Creditors (the "**Committee**"), through each of their respective counsels (each a "**Mediation Party**" and collectively, the "**Mediation Parties**"), indicated on the record that they were supportive of the appointment of a mediator in these Chapter 11 Cases.  Accordingly, on September 25, 2013, the Court entered an *Order Selecting Mediator and Governing Mediation Procedure*, [Docket No.

---

[4]    On October 3, 2013, the Debtors filed a revised *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 552] and *Disclosure Statement for Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 553].

3

518] (the ***"Mediation Order"***) authorizing the Honorable Judge Robert D. Drain, of the United States Bankruptcy Court for the Southern District of New York, to serve as mediator (the ***"Mediator"***).

3.      Since the Mediation Order was approved, the Debtors and the Mediation Parties have made progress in narrowing the primary issues which must be resolved prior to confirmation (the ***"Phase One Mediation Issues"***).[5]    At the initial mediation session on September 26, 2013, all parties agreed to both a mediation schedule and a revised confirmation schedule.  In relevant part, the Mediation Parties agreed to hold the first phase of mediation on November 4, 2013 to mediate the Phase One Mediation Issues and to hold the second phase of mediation on December 17, 2013 and January 8 and 10, 2014 (the ***"Mediation Schedule"***), to address any remaining plan confirmation issues[6] (the ***"Phase Two Mediation Issues"*** and,

---

[5]    The Phase One Mediation Issues include:

1.  the Disputed Copyrights (including products and proceeds) and the terms of any licensing arrangements thereof proposed in the Debtors' contemplated plan of reorganization;

2.  whether the First Lien Lenders can assert their total claim against each Debtor;

3.  whether the First Lien Lenders have any valid or perfected liens on the Debtors' cash, including the Disputed Cash;

4.  the 2007 Leveraged Buy-Out;

5.  the March 2013 revolver draw and the Debtors' use of the proceeds thereof (and similar issues relating to fundings to CLI under the Debtors' cash management system);

6.  certain intercreditor issues, including the Apax Partners, L.P. declaratory judgment complaint, rights pursuant to the intercreditor agreements, including the applicability of turnover provisions, and claims made by various Parties of breach of the intercreditor agreements by certain parties thereto; and

7.  issues relating regarding the trust structure of the Debtors' contemplated plan of reorganization, governance of the trust and the proposed use, sale or lease of any assets place in trust.

[6]    The Phase Two Mediation Issues may include, among other things:

1.  the total enterprise value of the Debtors;

2.  foreign and domestic subsidiary valuation;

3.  substantive consolidation;

4.  issues regarding Apax Partners, L.P.;

(continued on next page)

4

together with the Phase One Mediation Issues, the **"*Mediation Issues*"**).    At the conclusion of the September 27, 2013 hearing, the Court entered an order setting the hearing on the approval of the Disclosure Statement for November 12, 2013, and the hearing on Plan Confirmation for February 24, 2014 [Docket No. 530] (the **"*Confirmation Schedule*"**).[7]

4.      In light of the consensus among the Mediation Parties and agreed upon Mediation Schedule and Confirmation Schedule, this Court should extend the Debtors' exclusive periods to file a chapter 11 plan of reorganization and solicit such a plan to be aligned with these dates.  To that end, and with the Debtors' initial 120-day exclusive period to file a chapter 11 plan set to expire on October 30, 2013, the Debtors now seek a 137-day extension of the Exclusive Periods until March 15, 2014 to ensure that sufficient time is available for the Debtors' efforts to succeed.  Because of the consensus the Debtors' have achieved on the timing of these chapter 11 cases, no party in interest will be harmed by such an extension of the Debtors' exclusive periods.  Indeed, the Debtors request an extension through and including March 15, 2014 and May 14, 2014, respectively, because it is entirely consistent with the schedule that the Mediation Parties have all agreed to - *i.e.*, a plan confirmation hearing beginning on February 24, 2014.  To the

---

5.  whether certain intercompany obligations are properly classified as debt or equity or subject to equitable subordination or other claims or defenses, and other intercompany issues relevant to any of the parties; and

6.  certain other plan confirmation or other issues appropriate for mediation, as determined by the Parties and the Mediator.

[7]    At the same time that the Mediation Schedule and Confirmation Schedule were agreed to, the Mediation Parties also agreed to extend other relevant dates consistent with the Confirmation Schedule.  On September 9, 2013, the Committee filed the *Motion for an Order Extending the Period During with the Official Committee of Unsecured Creditors, May Investigate, Commence Actions, and/or Challenge the Claims and Liens of the First Lien Secured Parties* [Docket No. 479] (the "*Motion to Extend the Challenge Period*") by 45 days.  In resolution of the Motion to Extend the Challenge Period, and shortly before the filing of this Motion, the Debtors have filed an amendment to the final cash collateral order (the "*Amended Cash Collateral Order*"), which the Debtors are submitting on notice of presentment with the consent of the Committee and the First Lien Lenders.  The Amended Cash Collateral Order, if approved, extends, among other things (1) the termination date and event of default milestones with respect to the Debtors' consensual use of cash collateral, (2) the deadline for the Committee to file a motion with the Court seeking standing to assert certain challenges or claims, and (3) the investigation termination date with respect to the Debtors and the Committee.

extent that the Plan is not confirmed on or about February 24, 2014, having exclusivity terminate on March 15, 2014 provides the Debtors with sufficient time to prepare and file a motion seeking a further extension of their exclusive periods to be heard on or before March 15, 2014 on full notice to parties in interest.

### Background

5.     The Debtors are a leading global provider of high-quality content, innovative print and digital teaching and learning solutions, software, and associated educational services for the higher-education, research, school, career, professional, and international markets.  The Debtors are the second largest publisher of course materials in U.S. higher education, with strong positions across all major disciplines, and are a leading global provider of library reference materials, with a vast collection of primary source content.

6.     Recently, however, the Debtors have encountered various financial and operational hurdles, due in part to the educational publishing market's transition from print business models to a greater focus on digital products, a consistent decline in demand for new printed materials, and the dramatic decrease in the availability of government funding for research and the K-12 markets.  In an effort to facilitate a comprehensive restructuring of the Debtors' businesses, on July 2, 2013 (the *"Petition Date"*), each of the Debtors commenced cases under chapter 11 of title 11 of the United States Code (the *"Bankruptcy Code"*).  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases are consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the *"Bankruptcy Rules"*).  No request for the appointment of a trustee or examiner has been made in these chapter

11 cases.  On July 10, 2013, the United States Trustee for Region 2 (the **"U.S. Trustee"**) appointed the Committee [Docket No. 68].

7.      The Debtors filed their respective schedules of assets and liabilities and statements of financial affairs [Docket Nos. 287-294] (**"Schedules"**) on August 16, 2013, pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**).  And on August 17, 2013, the Debtors filed the Plan, Disclosure Statement and Motion to Approve the Disclosure Statement.  On October 3, 2013, the Debtors filed a revised Plan and Disclosure Statement with all related exhibits.

8.      As previously discussed, the Debtors and the Mediation Parties are currently engaged in mediation to address certain issues key to confirmation - issues, which took extensive negotiations to narrow.  On September 27, 2013, the Court approved the Confirmation Schedule [Docket No. 530] (the **"Scheduling Order"**).

## Jurisdiction

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

10.      Venue is proper pursuant to 28 U.S.C. § 1408.

11.      The statutory basis for the relief requested herein is section 1121(d) of the Bankruptcy Code.

## Relief Requested

12.      By this Motion, the Debtors request the entry of an order:  (a) extending by 137 days the Exclusive Periods during which only the Debtors may file a chapter 11 plan and solicit acceptances thereof through and including March 15, 2014 and May 14, 2014, respectively; and (b) granting such other and further relief as is just and proper.

7

<u>**Basis for Relief**</u>

**I.    Legal Standard for Extending the Exclusive Periods.**

13.    Sections 1121(b) and (c) of the Bankruptcy Code provide, respectively, that a debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case and the exclusive right to solicit votes for a plan for an additional 60 days.  Currently, the Debtors' Exclusive Filing Period will expire on October 30, 2013, and the Exclusive Solicitation Period will expire on December 30, 2013.

14.    Section 1121(d) of the Bankruptcy Code permits a bankruptcy court to extend a debtor's exclusive period to file a chapter 11 plan and solicit acceptances thereof upon a demonstration of "cause."  Specifically, section 1121(d)(1) states:

> [O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1).

15.    Although the Bankruptcy Code does not define "cause," the legislative history indicates that "cause" is intended to be a flexible standard that balances the competing interests of a debtor and its creditors.  *See* H.R. Rep. No. 95-595 at 231, 232 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6191.  This flexibility is intended to give a debtor an adequate opportunity to stabilize its business operations at the outset of the case and to then negotiate a plan with its creditors.  *See In re Ames Dep't Stores Inc.*, 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors.").

16.    Courts in the Second Circuit apply a nine-factor test in deciding whether "cause" exists to extend (or to terminate) a debtor's exclusive periods.  *See, e.g., In re Borders Group*

*Inc.*, 460 B.R. 818, 821-22 (Bankr. S.D.N.Y. 2011); *In re 221-06 Merrick Blvd. Associates LLC*, 10-45657 (JBR), 2010 WL 5018265, at *4 (Bankr. E.D.N.Y. Dec. 3, 2010 *(citing In re Adelphia Commc'ns Corp. (Adelphia I)*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006)).   These factors include:

      (1)    the existence of good faith progress toward reorganization;

      (2)    the fact that the debtors are paying their bills as they come due;

      (3)    the size and complexity of the cases;

      (4)    the necessity of sufficient time to permit the debtors to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan;

      (5)    whether the debtors have demonstrated reasonable prospects for filing a viable plan;

      (6)    whether the debtors have made progress in negotiations with their creditors;

      (7)    the amount of time that has elapsed in the cases;

      (8)    whether the debtors are seeking an extension of exclusivity to pressure creditors to submit to the debtors' reorganization demands; and

      (9)    whether an unresolved contingency exists.

*Id*.

      17.    Not all of these factors are relevant in every case, and a finding that any one of these factors exists may justify extending a debtor's exclusive periods.  *See, e.g.*, *In re Express One Int'l*, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (extending exclusivity on account of four supporting factors); *In re Interco Inc.*, 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992) (denying motion to terminate exclusivity on the basis of four supporting factors); *In re Texaco, Inc. (Texaco I)*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987) (holding that size and complexity of the chapter 11 case provided sufficient cause to extend exclusivity).  As discussed in detail below, the facts and circumstances of these chapter 11 cases satisfy the foregoing factors and

demonstrate that more than sufficient cause exists to grant the Debtors' requested extensions of the Exclusive Periods.

**II.     Cause Exists for the Court to Extend the Debtors' Exclusive Periods.**

**A.     The Debtors Are Making Good Faith Progress Toward Reorganization.**

18.     In considering an extension of a debtor's exclusive periods, courts generally assess a debtor's progress towards rehabilitation and development of a consensual plan. *See, e.g., In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). The Debtors have made substantial progress during the first few months of these chapter 11 cases, warranting an extension of the Exclusive Periods. Since the Petition Date, the Debtors have (a) stabilized the business; (b) filed a plan of reorganization and disclosure statement and amendments thereto; (c) commenced the process of mediation with Judge Drain; (d) commenced adversary proceedings with respect to certain disputed assets; and (e) filed schedules of assets and liabilities, statements of financial affairs and established a claims bar date.

**1.     Stabilized the Business**

19.     As the Court is aware, at the first day hearing, the Debtors obtained interim approval to use cash collateral to operate their business - the use of which was negotiated with the First Lien Secured Parties. On August 20, 2013, after significant negotiations with many of the Debtors' major stakeholders, the Court entered a consensual final order authorizing the use of cash collateral [Docket No. 303]. This use of cash collateral enabled the Debtors to operate their business and prosecute these chapter 11 cases in the best interests of the Debtors, their estates, creditors and all parties in interest.

20.     In a continued effort to stabilize their business and minimize disruption to the Debtors' operations in the initial days of these chapter 11 cases, the Debtors sought and received approval to continue to (a) pay authors and other content sources; (b) use existing cash

management systems; (c) pay taxes and fees; (d) maintain insurance policies; (e) honor customer programs and practices; (f) honor shipping and warehouse obligations; and (g) pay various obligations owed to employees. These efforts helped to facilitate the Debtors' seamless transition into chapter 11 and aided in the preservation of the Debtors' going concern value.

21.    To further implement their business plan and associated cost-saving measures, the Debtors filed an *Omnibus Motion for Entry of an Order Authorizing Rejection of Certain Unexpired Leases* [Docket No. 306] (the ***"Lease Rejection Motion"***) on August 20, 2013 and a *Motion to Amend and Assume the Stamford Headquarters Real Property Lease* [Docket No. 551] (the ***"Motion to Assume"***) on October 3, 2013. The Lease Rejection Motion sought authorization to reject certain leases and associated subleases burdensome to the Debtors and unnecessary for their ongoing business operations. The Court approved the Lease Rejection Motion on September 11, 2013 [Docket No. 469].

22.    The Motion to Assume, which is set to be heard by the Court on October 25, 2013, seeks authorization to amend and assume the nonresidential real property lease for the Debtors' corporate headquarters, currently located in Stamford, Connecticut. The Debtors were able to successfully negotiate an amended lease for the Stamford Headquarters, which reduces the term and obviates the incurring of moving costs that would result from a temporary lease. The Debtors additionally filed the *Debtors' Motion for Entry of an Order Authorizing the Debtors to Enter into a Postpetition Lease* [Docket No. 561], requesting authority to expand the Debtors' San Francisco office to accommodate current business needs. The Debtors continue to

evaluate all other real estate, including sales of certain non-essential real property and negotiation of amended leases on improved terms.[8]

### 2.    Plan and Disclosure Statement

23.    Having stabilized their business and brokered an agreement to utilize cash collateral on a consensual basis, the Debtors, on August 17, 2013, filed a Plan, Disclosure Statement, and the Motion to Approve the Disclosure Statement, which would have allowed the Debtors to emerge from bankruptcy by year end and avoid entering another large selling season facing uncertainty in the market regarding the Debtors' future viability.    Various parties in interests responded with requests that the pace of these chapter 11 cases be slowed and that the Plan and Disclosure Statement be augmented with additional financial information.

24.    In an effort to account for the progress that the Debtors have made in narrowing the Mediation Issues and other plan confirmation issues and to further enhance the Debtors' Plan, amendments to the Plan and Disclosure Statement became necessary.    On October 3, 2013, the Debtors filed a revised Plan [Docket No. 552] and Disclosure Statement [Docket No. 553]. In the weeks leading up to the initial Plan and Disclosure Statement filings in August 2013 and during the approximately two months thereafter, the Debtors were consistently engaged in the process of discussing and incorporating substantial comments to the Plan and Disclosure Statement from the First Lien Group, First Lien Agent, First Lien Indenture Trustee, Apax Partners L.P. and its Affiliates and other parties in interest.    In conjunction with formulating and filing the revised Plan and Disclosure Statement on October 3, 2013, the Debtors publicly filed, among other things: (1) a valuation analysis from Lazard (the ***"Valuation Analysis"***) which

---

[8]    Contemporaneously with this Motion the Debtors are filing the *Debtors' Motion for Entry of an Order, Pursuant to Section 365(d)(4) of the Bankruptcy Code, Extending Their Time to Assume or Reject Unexpired Leases of Nonresidential Real Property.*

estimates the post-confirmation going concern value of the Debtors as approximately $2.9 billion; (2) projected financial information (the **"Projected Financial Information"**); (3) a liquidation analysis (the **"Liquidation Analysis"**); (4) the Willkie Report[9]; and (5) the Ocean Tomo Report.[10]

### 3.    Mediation

25.    As already discussed, the Debtors and the Mediation Parties are currently working with the Mediator to resolve the Mediation Issues prior to confirmation.  On August 28, 2013, the Committee filed a motion to adjourn [Docket No. 343] (the **"Adjournment Motion"**) the hearing on the Plan and Disclosure Statement to dates no earlier than October 25, 2013 and December 10, 2013, respectively, and objected to the accelerated pace of the Debtors' chapter 11 cases.  The Committee's Adjournment Motion created concern for the Debtors that a swift and successful emergence could only be accomplished if a definitive confirmation schedule was set and a mediator was appointed.

26.    To balance the Committee's request for a continuance of the Disclosure Statement hearing and the Debtors' need to emerge from chapter 11 expeditiously, the Debtors, through their Mediation Motion, sought approval of the appointment of a mediator to resolve certain plan confirmation issues and scheduling issues.  On September 11, 2013, at the hearing on the Mediation Motion and the Adjournment Motion, the Debtors garnered the consensual appointment of a mediator.  In the following days, the parties agreed to select Judge Drain as

---

[9]    The Debtors retained Willkie Farr & Gallagher (**"Willkie"**) as the Debtors' independent director's (Richard Feintuch) independent counsel to assist in an evaluation and analysis of the pre-petition debt purchases of, among other things, Apax Partners, L.P. and its affiliates (the **"Apax Investigation"**).  On September 13, 2013, Willkie provided a report of its findings (the **"Willkie Report"**).  A copy of the Willkie Report is attached at Exhibit G to the Disclosure Statement.

[10]    The Debtors have been advised by Ocean Tomo with respect to valuations regarding the Disputed Copyrights (the **"Ocean Tomo Report"**).  The Ocean Tomo Report is attached as Exhibit E-3 to the Disclosure Statement.

KE 28022250.12

mediator.  On September 18, 2013, after the parties' initial mediation call and at the request of

Judge Drain, the Debtors circulated a memorandum among the Mediation Parties outlining a

proposed schedule for litigation and mediation.   This ultimately became the topic of the

preliminary mediation session with Judge Drain on September 26, 2013.   At that preliminary

mediation session with Judge Drain, the Debtors worked with the Mediation Parties to outline

issues critical to plan confirmation — ultimately, the parties agreed to the Phase One Mediation

Issues and a schedule to mediate those issues.  The Mediation Schedule contemplates Phase One

of mediation set for November 4, 2013 and Phase Two of mediation set for December 17, 2013

and January 8 and 10, 2014.  The purpose of these dates is to allow the Mediation Parties time to

attempt to arrive at a global settlement of Plan confirmation issues in advance of the February

2014 Plan confirmation hearing.

### 4.    Adversary Proceedings

27.    The Debtors believe there are four primary categories of assets (the "***Disputed***

***Assets***") that are not subject to the liens of the Prepetition Secured Parties or are subject to liens

that are subject to avoidance under the Bankruptcy Code:  (a) Disputed Cash, (b) Disputed

Copyrights, (c) interests in foreign subsidiaries, and (d) interests non-wholly owned subsidiaries.

Such assets, if unencumbered and of value, may provide a recovery to the Holders of Unsecured

Claims, including the Holders of the First Lien Claims who hold significant unsecured deficiency

claims against each Debtor.  Since commencing these chapter 11 cases, the Debtors have filed

adversary proceedings related to the Disputed Cash and the Disputed Copyrights.  On September

20, 2013, the Debtors filed a declaratory judgment action seeking a determination by final order

of the Court that the Disputed Cash[11] is not part of the Prepetition Secured Parties' collateral package and that no Prepetition Secured Party or entity acting as their agent has a security interest in the Disputed Cash [Adversary Case 1-13-0146, Docket No. 500] (the ***Disputed Cash Adversary Proceeding***").  And, on October 5, 2013, the Debtors filed a complaint under sections 544, 547 550, and 551 of the Bankruptcy Code seeking to avoid the liens in the Disputed Copyrights[12] and the liens in the inventory, revenues, and other documents pertaining to such copyrights, and preserving such liens for the benefit of the Debtors' Estates [Adversary Case No. 1-13-01479, Docket No. 563] (the ***Copyright Adversary Proceeding*** and, together with the Disputed Cash Adversary Proceeding, the ***Adversary Proceedings***").  The Debtors intend to continue to move forward with respect to the Adversary Proceedings in a manner that respects the Mediation process but allows the Confirmation Schedule to be maintained to the extent that Mediation does not fully resolve the issues related to the Adversary Proceedings.

### 5.    Schedules, SOFAS and Claims Bar Date

28.    On August 16, 2013, the Debtors filed their Schedules of Assets and Liabilities and Statements of Financial Affairs with the Court [Docket Nos. 287-294].  On August 28, 2013 the Debtors' filed the *Debtors' Motion for Entry of an Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 342] (the "***Bar Date Motion***"), which requested a general bar date for filing proofs of claims for October 31, 2013 (the "***Bar Date***") and the procedure for filing such claims, and the Court subsequently

---

[11]    The "***Disputed Cash***" is the amount of cash of the Debtors, if any, remaining on the Petition Date in an investment account that has not otherwise been determined by Final Order to be subject to the non-avoidable Liens of the Holders of the First Lien Claims.  The Debtors believe that the investment account is not part of the secured lenders, swap counterparties, and secured noteholders' (collectively, the "***Prepetition Secured Parties***") collateral package and the Disputed Cash or the value associated therewith is available for distribution to unsecured creditors under the Plan.

[12]    Those certain copyrights of the Debtors, which the Debtors contest the validity, priority and the extent of certain parties' asserted liens thereon.

approved the Bar Date Motion.  With thousands of creditors, the Debtors expect there will be a substantial number of proofs of claims filed on or before the Bar Date that will have to be reconciled by the Debtors and their advisors.

### B.    The Debtors' Chapter 11 Cases Are Large and Complex.

29.    Both Congress and courts have recognized that the size and complexity of a debtor's case alone may constitute cause for for extension of a debtor's exclusive periods to file a plan and solicit acceptances of such a plan.  "[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."  H.R. No. 95-595, at 231-232, 406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191, 6362; *see also In re Texaco, Inc.*, 76 B.R. at 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

30.    These chapter 11 cases are indisputably large and complex warranting the extension of the Exclusive Periods.   The Debtors are the second largest publishers of course materials in U.S. higher education and a leading global provider of library reference materials, with over 5,000 employees and with pre-petition annual revenues of $1.3 billion and approximately $5.8 billion in funded debt.  By sheer numbers, the Debtors' chapter 11 cases represent, upon information and belief, the largest chapter 11 filing in the history of the United States Bankruptcy Court for the Eastern District of New York and is the largest chapter 11 filing by total debt amount in the United States thus far in 2013.

31.    Moreover, the Debtors have been involved in significant discovery from the very start of these Chapter 11 cases.  Throughout these chapter 11 cases, the Debtors have received discovery requests from several parties and have been as open, responsive, and cooperative as

16

reasonably possible.  To date, the Debtors have produced a total of 142,813 pages in response to 278 document requests from the Committee relating to dozens of categories of documents. The Debtors have produced documents as soon as practicable and on a rolling basis.    As of September 27, 2013, the Debtors have made at least 24 separate productions.

32.     Based on the foregoing, these chapter 11 cases are indisputably of the size and complexity that Congress and Courts recognized warranting extensions of the Exclusive Periods as requested.

**C.     The Debtors Are Paying Their Bills as They Come Due.**

33.     As evidenced by their July 2013 [Docket No. 373] and August 2013 [Docket No. 529] Monthly Operating Reports, the Debtors have been paying their undisputed postpetition bills as they become due in the ordinary course of their business.  The Debtors have the ability to continue to pay their bills throughout these chapter 11 cases.  As with most publishers of educational material, the Debtors receive an out-sized proportion of their earnings during the academic year.  This seasonality results in the Debtors generating a cash surplus during the academic year.  And while emerging as expeditiously as possible is important, the Debtors have sufficient liquidity to continue to pay their bills during the requested exclusivity extension period.

34.      Thus, the requested extension of the Exclusive Periods will not jeopardize the rights of creditors and other parties who do business with the Debtors during these chapter 11 cases.

**D.     The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan.**

35.     As an initial matter, the Debtors have already filed a Plan and Disclosure Statement, both of which have been recently revised and supplemented.  In an effort to gain

wider support for the Plan, the Debtors have expended significant efforts to coordinate the ongoing Mediation.  The Debtors are at a critical stage in their chapter 11 cases.  Until mediation is complete and the Debtors along with the Parties have addressed and resolved the Mediation Issues, the Plan may need to be amended from time to time, to adjust for negotiated results. Indeed, the revised Plan and Disclosure Statement filed October 3, 2013, are the result of the Debtors' extensive negotiations with the First Lien Group and other parties in interest.  And while much work remains to be done, including completion of the anticipated Mediation, the Debtors have already demonstrated by their October 3, 2013 filings a reasonable prospect for achieving confirmation of a viable chapter 11 plan of reorganization.

### E.    Little Time Has Elapsed In These Chapter 11 Cases.

36.    This is the Debtors' *first* request for extension of the Exclusive Periods and comes just over three months after the Petition Date.  As previously stated, the Debtors have made significant strides forward thus far.  But, as would be expected given the scope of what must be achieved in these chapter 11 cases, much work remains.  The Debtors anticipate that, with the requested 137-day extension of the Exclusive Periods, they will be able to continue to move forward towards a successful chapter 11 plan and allow the Mediation process and Confirmation Schedule a chance to succeed.

### F.    The Debtors Are Not Pressuring Creditors to Submit to Any Reorganization Demands.

37.    The Debtors are not seeking an extension of their Exclusive Periods to pressure creditors.  To the contrary, the Debtors have worked constructively and in good faith with all of their stakeholders in the three months since the Petition Date and continue to do so.  In fact, as stated previously, several parties have requested to slow the pace of these chapter 11 cases.  The Debtors, in an effort to gain consensus have taken these concerns to heart, resulting in the

18

Mediation Schedule.  However, the Mediation and the Mediation Schedule are not isolated demonstrations of the Debtors' willingness to accommodate their creditors.  Throughout these chapter 11 cases, the Debtors have received discovery requests from several parties and have been as open, responsive, and cooperative as reasonably possible.[13]

38.    The request for extending the Exclusive Periods is not a negotiation tactic of itself, but rather a reflection of the fact that the Debtors and the Parties are in the very early stages of a lengthy mediation process pursuant to an agreed upon Mediation Schedule.  Moreover, the Debtors are merely acting in accordance with the milestones set forth in the Mediation Schedule and the Confirmation Schedule.  These milestones require two rounds of mediation that run over into 2014.  In addition, the Confirmation Schedule contemplates a hearing on plan confirmation beginning on February 24, 2014.  Thus, the requested extension of the Exclusive Periods will not harm any economic stakeholder and is properly aligned with the Mediation Schedule and the Confirmation Schedule.  Indeed, the Debtors intend to use this time to resolve the Mediation Issues and to develop and build consensus for the Plan.

### G.    The Mediation Issues Present Several Unresolved Contingencies.

39.    Courts have recognized the need to resolve important contingencies as justification for extending the Exclusive Periods.  *See, e.g.*, *Borders*, 460 B.R. at 826; *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006).  The Debtors have made substantial progress in the prosecution of these chapter 11 cases.  However, it is abundantly clear

---

[13]    As previously mentioned, to date, the Debtors have produced a total of 142,813 pages in response to 278 document requests from the Committee relating to dozens of categories of documents.  The Debtors have produced documents as soon as practicable and on a rolling basis.  As of September 27, 2013, the Debtors have made at least 24 separate productions.  In addition, the Debtors have worked quickly and cooperatively with the Committee to develop search terms and potential custodians for the collection of electronic discovery.  The Debtors also have provided the Creditors' Committee with electronic access and credentials to hundreds of additional documents in Debtors' confidential data room.  The Debtors have engaged in countless telephone conferences with the Committee's counsel to discuss the status of discovery, and have kept the Committee and other inquiring constituents updated regarding the Debtors' collection and production efforts.

that additional time in which to amend the Plan is necessary to allow the Debtors to address a number of key issues as previously stated, including, among others, (i) the Mediation Issues, (ii) the Adversary Proceedings, and (iii) the universe of claims asserted against the Debtors' estates upon the passing of the bar date.

40.     The Mediation Issues, in particular, present significant unresolved contingencies, which may require that further revisions be made to the Plan and Disclosure Statement on a rolling basis as each Mediation Issue is resolved.   Both the Mediation Schedule and the Confirmation Schedule recognize that work remains to be done, setting the final rounds of mediation for January 2014 and the hearing on confirmation for February 24, 2014.

41.     Moreover, as noted above, the Debtors have two pending Adversary Proceedings regarding the Disputed Copyrights and the Disputed Cash.   And as the parties have asserted on several occasions, the Debtors need additional time to resolve the Mediation Issues.[14]

42.     Finally, Debtors have thousands of creditors and are parties to thousands executory contracts.   Thus, is it expected that numerous claims will be filed by the Bar Date. The resolution of this important contingency will require much of the Debtors' time to ascertain the nature and the extent of each and every claim and various creditors that may have to be dealt with under the Plan (recognizing that not all claims filed before the Bar Date will likely be resolved by the February 2014 confirmation hearing).   Accordingly, the Mediation Issues, along with the Adversary Proceedings and the prospective claims asserted against the Debtor, represent substantial unresolved contingencies constituting "cause" to extend the Exclusivity Periods.

43.     Based on the foregoing, the nine-factor analysis applied by courts in this District and Circuit clearly weighs in favor of extending the Exclusive Periods by at least 137 days.

---

[14]   *See supra* notes 5-6 and accompanying text.

KE 28022250.12

44.     Courts in this jurisdiction and this Circuit routinely granted similar relief.  *See, e.g.*, *In re the Brooklyn Hospital Center*, Case No. 05-26990 (Bankr. E.D.N.Y. Jan. 23, 2006) (granting initial extension of approximately 180 days); *In re AMR Corp.*, Case No. 11-15463 (Bankr S.D.N.Y. Mar. 22, 2012) (granting initial extension of approximately 180 days); *In re Frontier Airlines Holdings, Inc.*, Case No. 08-11298 (RDD) (Bankr. S.D.N.Y. Aug. 1, 2008) (granting initial extension of 180 days); *In re Calpine Corp.*, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Apr. 11, 2006) (granting initial extension of approximately 250 days); *In re Delphi Corp.*, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Jan. 6, 2006) (granting initial extension of approximately 180 days); *see also In re Pilgrim's Pride Corp.*, Case No. 08-45664 (DML) (Bankr. N.D. Tex. Mar. 26, 2009) (granting initial extension of approximately 180 days).

45.     Accordingly, the Debtors respectfully request that the Court grant the relief requested herein and extend the Debtors' Exclusive Periods by 137 days until March 15, 2014 and May 15, 2014, respectively, without prejudice to the Debtors' rights to seek additional extensions of their Exclusive Periods if it becomes necessary.

## Motion Practice

46.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Motion.   Accordingly, the Debtors submit that this Motion satisfies Local Bankruptcy Rule 9013(a).

## Notice

47.     The Debtors have provided notice of this motion to:   (a) the United States Trustee for Region 2; (b) the counsel to the Committee; (c) counsel to the agent under the Debtors' prepetition senior secured credit facility; (d) the indenture trustees under the Debtors' prepetition secured first lien notes, secured second lien notes, senior unsecured notes, senior PIK notes, and

21

senior subordinated discount notes; (e) counsel to the ad hoc group of holders of certain first lien claims; (f) the United States Attorney for the Eastern District of New York; (g) the Internal Revenue Service; and (h) any parties entitled to receive notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

**No Prior Request**

48.    No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

KE 28022250.12

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this Court (a) enter an order, substantially in the form annexed hereto as **Exhibit A**, granting the relief requested herein and (b) grant such other and further relief as is just and proper.

Brooklyn, New York
Dated:  October 10, 2013

/s/ Jonathan S. Henes
Jonathan S. Henes
Christopher Marcus
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

- and -

James H.M. Sprayregen
Ross M. Kwasteniet (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CENGAGE LEARNING, INC., *et al.*, | ) | Case No. 13-44106 (ESS) |
|  | ) | Case No. 13-44107 (ESS) |
|  | ) | Case No. 13-44105 (ESS) |
|  | ) | Case No. 13-44108 (ESS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**ORDER EXTENDING THE EXCLUSIVE PERIODS**
**DURING WHICH ONLY THE DEBTORS MAY FILE**
**A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

Upon the Motion (the "***Motion***") of the Debtors, for entry of an order (this "***Order***"), as debtors and debtors in possession (collectively, the "***Debtors***") extending by 137 days the exclusive periods during which only the Debtors may file a chapter 11 plan and solicit acceptances thereof; and this Court having found that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. § 1408; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and notice of the Motion appearing adequate and appropriate under the circumstances; and this Court having found that no other or further notice need be provided; and this Court having reviewed the Motion and having heard statements in support of the Motion at a hearing held before this Court (the "***Hearing***"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and this Court having found that the relief requested in the Motion is necessary to prevent immediate and irreparable harm; and any objections to the

relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefore, it is hereby ORDERED:

1.  The Motion is granted to the extent provided herein.

2.  The Exclusive Filing Period is hereby extended through and including March 15, 2014, and the Exclusive Solicitation Period is hereby extended through and including May 14, 2014.

3.  This Order is without prejudice to the Debtors' ability to seek further extensions of the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

4.  The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

5.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

6.  The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

7.  This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.